# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,[1]<br><br>Debtors,<br><br>SHAMEEKA IEN on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSCARE CORPORATION, TRANSCARE NEW YORK, INC., TRANSCARE ML, INC., TC AMBULANCE GROUP, INC., TRANSCARE MANAGEMENT SERVICES, INC., TCBA AMBULANCE, INC., TC BILLING AND SERVICES CORPORATION, TRANSCARE WESTCHESTER, INC., TRANSCARE MARYLAND, INC., TC AMBULANCE NORTH, INC. AND TRANSCARE HARFORD COUNTY, INC., LYNN TILTON, ARK CLO 2001-1 LIMITED, ARK INVESTMENT PARTNERS II, L.P., PATRIARCH PARTNERS, LLC, and PATRIARCH PARTNERS III, LLC,<br><br>Defendants. | Bankr. Case No. 16-10407-SMB<br>Chapter 7<br>Joint Administration Pending<br><br><br>**ADVERSARY CLASS ACTION COMPLAINT**<br><br>Adv. Case No. -_____-___ |

Plaintiff Shameeka Ien ("Plaintiff") alleges on behalf of herself and a class of similarly situated former employees of TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland,

---

[1] The Debtors consist of TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc. and TransCare Harford County, Inc.

Inc., TC Ambulance North, Inc. and TransCare Harford County, Inc. ("TransCare" or "Debtors") by way of her Class Action Complaint against Debtors and non-debtors, parent-employer Lynn Tilton, ARK CLO 2001-1 Limited, ARK Investment Partners II, L.P., Patriarch Partners, LLC, and Patriarch Partners III, LLC (together with the Debtors, "Defendants"), as follows:

## NATURE OF THE ACTION

1. The Plaintiff and the putative class were peremptorily terminated from their jobs and benefits, including health insurance, without prior warning, beginning on or about February 24, 2016.

2. The Plaintiff brings this action on behalf of herself, and the other similarly situated former employees who worked for TransCare and who were terminated without cause, as part of, or as the result of, mass layoffs or plant closings ordered by Defendants on or about February 24, 2016 and within thirty (30) days of that date, who were not provided 60 days advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, and 90 days advance written notice of their terminations by Defendants, as required by the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act") New York Labor Law ("NYLL") § 860 *et seq.* (collectively, the "WARN Acts").

3. Plaintiff and all similarly situated employees seek to recover up to 60 days wages and benefits, pursuant to 29 U.S.C. § 2104 and NYLL § 860-(G)(2), from Defendants.

4. Plaintiff and all similarly situated employees also seek to recover unpaid wages, including accrued vacation amounts for work performed after February 13, 2016 until on or about February 24, 2016, for which they were not compensated, under the payment of wages laws of New York, Pennsylvania, and Maryland.

2

5.     Plaintiff's claims, as well as the claims of all similarly situated employees, are entitled to administrative priority status pursuant to the United States Bankruptcy Code § 503(b)(1)(A) or, alternatively, wage priority status, under 11 U.S.C. § 507(a)(4) and (5).

6.     Because TransCare was on information and belief, *inter alia*, owned by Patriarch Partners, LLC and its subsidiaries ("Patriarch") shared common directors and/or officers with Patriarch, was under the de facto control of Patriarch, and its operations were dependent on Patriarch, Patriarch was the employer (as that term is defined in the WARN Acts) of Plaintiff and the similarly situated terminated employees during the relevant time period and was responsible for giving them notice pursuant to the WARN Acts.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this adversary pursuant to 28 U.S.C. §§ 157, 1331, 1334 and 1367 and 29 U.S.C. § 2104(a)(5).

8.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409, 29 U.S.C. § 2104(a)(5), and NYLL § 860-G(7).

10.    The Court has jurisdiction over the Defendants because they did business in this District and a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

## THE PARTIES

*Plaintiff*

11.    Plaintiff Shameeka Ien was employed by Defendants as a staff accountant and worked at the Defendant's facility located at 1 Metrotech Center, Brooklyn, New York (the

3

"Brooklyn Facility") until her termination as part of mass layoffs and/or plant closings that began on or about February 24, 2016.

*<u>Defendants</u>*

12. Upon information and belief, at all relevant times, TransCare Corporation was a Delaware corporation, which operated from its headquarters at 1 Metrotech Center, Brooklyn, New York. TransCare was an ambulance service provider. It operated and maintained additional facilities including facilities located in New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, and Washington D.C. (together with the Brooklyn Facility, the "Facilities").

13. Upon information and belief, at all relevant times ARK CLO 2001-1 Limited was an entity incorporated under the laws of the Cayman Islands and was wholly owned or almost wholly owned by Patriarch Partners III, LLC.

14. Upon information and belief, at all relevant times Ark Investment Partners II, L.P. was a limited partnership that was wholly owned by Patriarch Partners III, LLC.

15. Upon information and belief, at all relevant times Patriarch Partners III, LLC was owned directly or indirectly by Patriarch Partners, LLC.

16. Upon information and belief at all relevant times, Patriarch Partners III, LLC was incorporated in Delaware and maintained its headquarters at 1 Broadway, 5th Floor, New York, New York.

17. Upon information and belief at all relevant times, Patriarch Partners, LLC was incorporated in Delaware and maintained headquarters at 1 Broadway, 5th Floor, New York, New York.

18. Lynn Tilton ("Tilton") is the founder of Patriarch Partners, LLC and is its Principal and CEO.

19. Upon information and belief, Defendants comprise a business enterprise that together operated as a single employer.

20. Upon information and belief, Defendants were a joint employer of Plaintiff and its other employees.

21. Until on or about February 24, 2016, the Plaintiff and all similarly situated employees were employed by Defendants and worked at or reported to one of Defendants' locations.

22. On or about February 24, 2016, Defendants informed their employees that they were terminated.

23. Defendants did not provide Plaintiff or the similarly situated employees with any notice of their termination prior to informing them that they had been terminated.

## SINGLE EMPLOYER ALLEGATIONS

24. Patriarch Partners, LLC, is an investment firm with investments in more than 75 companies across 14 industry sectors.

25. As described in detail below, Tilton and Patriarch owned and controlled TransCare and were a single and/or joint employer with TransCare.

### Common Ownership

26. TransCare Corporation operated as an integrated entity with the other Debtors and is their 100% owner, either directly or indirectly.

5

27. TransCare Corporation is owned largely by defendant ARK CLO 2001-1 Limited (55.2% of shares), defendant ARK Investment Partners II, L.P. (5.57% of shares), and indirectly by Credit Suisse Asset Management (25.4% of shares owned through subsidiaries).

28. In turn, on information and belief, Patriarch Partners III, LLC owns 60.7% of TransCare Corporation indirectly through its 100% or close to 100% ownership of ARK CLO 2001-1 Limited and ARK Investment Partners II, L.P.

29. Upon information and belief, ARK CLO 2001-1, Limited is managed by Patriarch Partners II, LLC, which in turn is managed by Lynn Tilton.

30. On information and belief, Patriarch Partners LLC owns a controlling percentage of Patriarch Partners III, LLC.

## Common Directors and Officers

31. Lynn Tilton served as the lone director for all of the TransCare Debtors.

32. In fact, upon information and belief, during the relevant time period, Ms. Tilton was a director, officer, or manager of each of Defendants excluding herself.

## De Facto Control

33. Patriarch Partners, LLC describes itself as a vertically integrated enterprise.

34. On its website it indicates that its operations involve "more than oversight – Patriarch has a wealth of leaders who effectively manage change, build value and who generate additional platform efficiencies through in-house talent acquisition, legal, technology and design innovation, marketing and communications, insurance, and supply chain management."

35. Per the website, Patriarch "was built upon a proprietary patented financial model designed to **manage** and monetize the distressed portfolios of financial institutions." (Emphasis added).

6

36. Likewise, the website indicates that Patriarch often operates its portfolio companies in "[c]hallenging conditions" which "often mean the need to improve operations from the ground up; the situations require equal concentration and adeptness between financial engineering and **operational execution**." (Emphasis added).

37. In January of 2016, Patriarch terminated TransCare's CEO.

38. On information and belief, at the time of the terminations, TransCare did not have an independent CEO function outside of Patriarch's control over it.

39. On information and belief, soon after terminating TransCare's CEO, Patriarch was advertising the CEO position on its own website.

40. Patriarch installed Peter Wolf as its hand-picked COO for TransCare and Mr. Wolf was the COO during the relevant time period.

41. Patriarch Managing Directors W. Randall Jones, Jean Luc Pelissier and John Harrington, and Patriarch Investment and Credit Professional Michael Greenberg, oversaw operations and finances of TransCare, including control over the timing and payment of amounts to venders and creditors.

42. Patriarch also installed Carl Marks advisory group in the CFO function for TransCare.

43. On information and belief, Patriarch rather than Carl Marks ultimately controlled the CFO function of TransCare.

44. On information and belief, Patriarch installed a Chief Operating Officer, Peter Wolf, who, in that role, worked on creating a new leasing venture for Patriarch's new ambulance business in the final weeks of TransCare's existence.

7

45. On information and belief, TransCare paid, in addition to management fees to Patriarch, approximately $400,000 in interest each month, which Patriarch demanded be paid ahead of other financial obligations including payroll.

46. During the time period leading up to the terminations, Patriarch infused capital into TransCare to cover payroll and other expenses and then paid itself back in the form of interest out of TransCare funds.

47. On information and belief, Patriarch Partners and Tilton made a decision to place TransCare into bankruptcy and shift the business into a new ambulance business called Transcendence, which included creating a new leasing entity to lease vehicles to the reconstituted entity. That plan however did not come to fruition.

48. On information and belief, Tilton and Patriarch made the decision not to fund the payroll that had been accruing since February 14, 2016, with full knowledge that TransCare had insufficient funds to make payroll, and was unable to obtain such funds from any source.

49. The decision of Tilton and Patriarch to withhold funds to pay employees forced the immediate shutdown of the NYC 911, NYC Core business, and the Westchester and Maryland divisions on or about February 24, 2016, and then the shutting down of the Hudson Valley and Pittsburgh divisions of TransCare, and its Paratransit operations in New York, which, together, entailed the termination of the approximately 1,700 employees of TransCare, and caused the filing of the Chapter 7 petition.

**Unity of Personnel Policies**

50. On information and belief, it is Patriarch's practice to consolidate the employee health care and retirement benefits of its portfolio companies.

16-01033-smb    Doc 1    Filed 03/01/16    Entered 03/01/16 21:14:20    Main Document
                                      Pg 9 of 20


**Dependency of Operations**

51. On information and belief, Debtors were dependent on Patriarch for operating funds either directly or through financing arranged by Patriarch.

52. While Patriarch's capital infusions on which payroll and the viability of the company depended were characterized in part as loans, Partriach was the entrepreneurial owner and operator of TransCare.

53. TransCare depended on and paid Patriarch to provide it with financial and operational management.

54. Patriarch did not provide TransCare the ability to be independent and obtain funding or become viable on its own.

55. On information and belief, the terminations complained of were undertaken as the direct result of a decision by Patriarch to cease funding Debtors or cease obtaining funding for the Debtors.

**FEDERAL WARN CLASS ALLEGATIONS**

56. Plaintiff brings the First Claim for Relief for violation of 29 U.S.C. § 2101 *et seq.*, on her own behalf and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of Defendants' Facilities and were terminated without cause on or about February 24, 2016 and within 30 days of that date, or was terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about February 24, 2016, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

57. The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, it is estimated to exceed 100, and the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

58. On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in the books and records of Defendants.

59. On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

60. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

   (a) whether the members of the WARN Class were employees of the Defendants who worked at or reported to Defendants' Facilities;

   (b) whether Defendants, unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Acts;

   (c) whether Defendants' unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act; and

   (d) whether Defendants' as a single employer violated the WARN Acts.

61. The Plaintiff's claims are typical of those of the WARN Class. The Plaintiff, like other WARN Class members, worked at or reported to one of Defendants' Facilities and were terminated without cause on or about February 24, 2016, due to the mass layoffs and/or plant closings ordered by Defendants.

62. At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until they decided to order a mass layoffs or plant closings at the Facilities.

63. The Plaintiff will fairly and adequately protect the interests of the WARN Class. The Plaintiff has retained counsel competent and experienced in complex class actions, including the WARN Acts and employment litigation.

64. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation, where individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

65. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

66. Plaintiff intends to send notice to all members of the WARN Class to the extent required by Rule 23.

## **NEW YORK WARN ACT CLASS ALLEGATIONS**

67.     The Plaintiff brings the Second Claim for Relief for violation of NYLL § 860 *et seq.*, on behalf of herself and a class of similarly situated persons pursuant to NYLL § 860-G (7) and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of Defendants' Facilities and were terminated without cause on or about February 24, 2016, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about February 24, 2016, and who are affected employees, within the meaning of NYLL § 860-A (1),(4) and(6) (the "NY WARN Class").

68.     The persons in the NY WARN Class identified above ("NY WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

69.     On information and belief, Defendants employed 50 employees within New York State as of the time notice was first required to be given. On information and belief, Defendants terminated at least 25 full-time employees, within 30 or 90 days of December 5, 2015, from Facilities in New York State.

70.     On information and belief, the identity of the members of the class and the recent residence address of each of the NY WARN Class Members is contained in the books and records of Defendants.

71.     On information and belief, the rate of pay and benefits that were being paid by Defendants to each NY WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

72. Common questions of law and fact exist as to members of the NY WARN Class, including, but not limited to, the following:

    (a) whether the members of the NY WARN Class were employees of the Defendants who worked in a covered site of employment of Defendants;

    (b) whether Defendants, unlawfully terminated the employment of the members of the NY WARN Class without cause on their part and without giving them 90 days advance written notice in violation of the NY WARN Act; and

    (c) whether Defendants unlawfully failed to pay the NY WARN Class members 60 days wages and benefits as required by the WARN Acts.

    (d) whether Defendants as a single employer violated the WARN Act.

73. The Plaintiff's claims are typical of those of the NY WARN Class. The Plaintiff, like other NY WARN Class members, worked at or reported to Defendants' New York Facilities and was terminated on or about February 24, 2016, due to the termination of the Facilities ordered by Defendants.

74. The Plaintiff will fairly and adequately protect the interests of the NY WARN Class. The Plaintiff has retained counsel competent and experienced in complex class actions on behalf of employees, including the WARN Act, state laws similar to WARN, and employment litigation.

75. Class certification of these Claims is appropriate under Fed.R. Civ.P. 23(b)(3) because questions of law and fact common to the NY WARN Class predominate over any questions affecting only individual members of the NY WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of NY WARN Class Act litigation, where individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate

13

defendant, and damages suffered by individual NY WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

76. Concentrating all the potential litigation concerning the NY WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the NY WARN Act rights of all the members of the Class.

77. Plaintiff intends to send notice to all members of the NY WARN Class to the extent required by Rule 23.

## CLAIMS FOR RELIEF

### First Cause of Action: Federal WARN Act
### (against all Defendants except Tilton)

78. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

79. At all relevant times, Defendants employed as many as 1700 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

80. At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a) and continued to operate as a business until it decided to order a mass layoffs or plant closings at the Facilities.

81. At all relevant times, Plaintiff and the other similarly situated former employees were employees of Defendants as that term is defined by 29 U.S.C. §2101.

82. On or about February 24, 2016, the Defendants ordered a mass layoff or plant closing at the Facilities, as that term is defined by 29 U.S.C. § 210l(a)(2).

14

83. The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty –three percent of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

84. The Plaintiff and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

85. The Plaintiff and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

86. Defendants were required by the WARN Act to give the Plaintiff and the Class Members at least 60 days advance written notice of their terminations.

87. Defendants failed to give the Plaintiff and the Class members written notice that complied with the requirements of the WARN Act.

88. The Plaintiff, and each of the Class Members are, "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

89. Defendants failed to pay the Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to provide employee benefits including health insurance, for 60 days from and after the dates of their respective terminations.

90. Inasmuch as the Plaintiff and each of the Class Members seek back-pay attributable to a period of time after the filing of the Defendants' bankruptcy petition and which arose as the result of the Defendants' violation of federal law, Plaintiff's and the Class Members'

15

claims against Defendants are entitled to first priority administrative expense status pursuant to 11 U.S.C. § 503(b)(l)(A), or alternatively, priority treatment pursuant to 11 U.S.C. § 507(a)(4) or (5), and the remainder as a general unsecured claim.

91. The relief sought in this proceeding is predominately equitable in nature.

## Second Cause of Action: New York WARN Act
### (against all Defendants except Tilton)

92. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93. At all relevant times, Defendants were an individual or private business entity defined as "employer" under the NY WARN Act and continued to operate as a business until they decided to order a mass layoff or plant closing at the Facilities as defined by § 860-A(3),(4).

94. On or about February 29, 2016, the Defendants ordered a mass layoff and/or plant closing at its Facilities as defined by § 860-A(3),(4).

95. The New York Plaintiff and the New York Class Members suffered a termination of employment as defined by § 860-A(2)(C) having been terminated by Defendants without cause on their part.

96. Defendants were required by the NY WARN Act to give the New York Plaintiff and New York Class Members at least 90 days advance written notice of their terminations pursuant to § 860-B.

97. Defendants failed to give the NY Plaintiff and New York Class Members written notice that complied with the requirements of the NY WARN Act.

98. Defendants failed to pay the NY Plaintiff and each of the New York Class Members their respective wages, salary, commissions, bonuses, health and life insurance premiums, accrued holiday pay and accrued vacation for 60 days following their respective

16

terminations, and benefits including health and life insurance coverage, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period.

99. Inasmuch as the Plaintiff and each of the Class Members seek back-pay attributable to a period of time after the filing of the Defendants' bankruptcy petition and which arose as the result of the Defendants' violation of state law, Plaintiff's and the Class Members' claims against Defendants are entitled to first priority administrative expense status pursuant to 11 U.S.C. § 503(b)(l)(A), or alternatively priority treatment pursuant to 11 U.S.C. § 507(a)(4) or (5), and the remainder as a general unsecured claim.

100. The relief sought in this proceeding is predominately equitable in nature.

### Third Cause of Action: Unpaid Wages - New York
### (against all Defendants)

101. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102. Plaintiff and the New York Class Members were employees of the Defendants who employed them directly or as joint employers.

103. Defendants willfully failed to pay wages owed to Plaintiff and the New York Class Members by the next regular pay day, in violation of NYLL § 191.

104. As a result of Defendants' violations of the NYLL, Plaintiff and the New York Class Members are entitled to recover from Defendants, jointly and severally, the full amount of wages owed to them, liquidated damages, reasonable attorneys' fees, the costs of the action, and pre-judgment and post-judgment interest.

105. Pursuant to New York Business Corporation Law § 630, Plaintiff will also seek to satisfy any judgment in this action against TransCare Corporation's 10 largest shareholders,

which include ARK CLO 2001-1 Limited, ARK Investment Partners II, L.P., and subsidiaries of Credit Suisse Asset Management.

106.    Plaintiff and the New York Class's unpaid wage claim is entitled to priority status treatment pursuant to 11 U.S.C. § 507(a)(4) and/or (5).

### Fourth Cause of Action: Unpaid Wages - Pennsylvania
### (against all Defendants)

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

108.    The Plaintiff on behalf of similarly-situated employees who worked at or reported to Defendants' facilities in Pennsylvania seeks payment for all unpaid wages in violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*.

109.    Because salary and wage payments were not paid when payment was due, Plaintiff seeks all rights and remedies for the protection and enforcement of the unpaid salary or wages.

110.    This claim is entitled to priority status treatment pursuant to 11 U.S.C. § 507(a)(4) and/or (5).

### Fifth Cause of Action: Unpaid Wages - Maryland
### (against all Defendants)

111.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

112.    The Plaintiff on behalf of similarly-situated employees who worked at or reported to Defendants' facilities in Maryland seeks payment for all unpaid wages in violation of Md. Code Ann., Lab. & Empl. § 3-505.

113. Because salary and wage payments were not paid when payment was due, Plaintiff seeks three times the unpaid wages, reasonable counsel fees, and other costs pursuant to Md. Code Ann., Lab. & Empl. § 3-507.2, as well as all other rights and remedies for the protection and enforcement of the unpaid salary or wages.

114. This claim is entitled to priority status treatment pursuant to 11 U.S.C. § 507(a)(4) and/or (5).

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants, jointly and severally:

A. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and 29 U.S.C. § 2104(a)(5), Plaintiff and the other similarly situated former employees constitute a single class;

B. Designation of the Plaintiff as Class Representative;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of the Plaintiff and each of the "affected employees" equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, health and life insurance, and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Acts, 29 U.S.C. § 2104(a)(1)(4) and NYLL § 860-G(7).

E. A judgment in favor of the Plaintiff and each of the "affected employees" for payment of accrued unpaid wages and vacation time, applicable liquidated damages

and/or treble damages, and attorneys' fees and costs pursuant to NYLL §§ 191 and 198, 43 P.S. § 260.1, *et seq*., and Md. Code Ann., Lab. & Empl. §§ 3-505 and 3-507.2

F. Interest as allowed by law on the amounts owed under the preceding paragraphs;

G. Treatment of all damage claims as first priority administrative expense pursuant to 11 U.S.C. § 503(b)(l)(A), or alternatively priority status pursuant to 11 U.S.C. § 507(a)(4) or (5) and the remainder as a general unsecured claim.

H. Plaintiff's reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurred in prosecuting this action, as authorized by the WARN Acts, 29 U.S.C. § 2104(a)(6) and NYLL § 860-G(7);

I. An allowed administrative-expense priority claim under 11 U.S.C. § 503 for the reasonable attorneys' fees and the costs and disbursements that the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

J. Such other and further relief as this Court may deem just and proper.

Dated: March 1, 2016

Respectfully submitted,

By: /s/ René S. Roupinian
Jack A. Raisner
René S. Roupinian
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Email: jar@outtengolden.com
Email: rsr@outtengolden.com

*Attorneys for Plaintiff and the putative Class*

20