## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,[1] | Bankr. Case No. 16-10407-SMB<br>Chapter 7<br>(Jointly Administered) |
| SHAMEEKA IEN on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>TRANSCARE CORPORATION, TRANSCARE NEW YORK, INC., TRANSCARE ML, INC., TC AMBULANCE GROUP, INC., TRANSCARE MANAGEMENT SERVICES, INC., TCBA AMBULANCE, INC., TC BILLING AND SERVICES CORPORATION, TRANSCARE WESTCHESTER, INC., TRANSCARE MARYLAND, INC., TC AMBULANCE NORTH, INC. AND TRANSCARE HARFORD COUNTY, INC., LYNN TILTON, ARK CLO 2001-1 LIMITED, ARK INVESTMENT PARTNERS II, L.P., PATRIARCH PARTNERS, LLC, and PATRIARCH PARTNERS III, LLC,<br><br>            Defendants. | Adv. Case No. 16−01033−SMB+3 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## UNOPPOSED MOTION FOR CLASS CERTIFICATION AND OTHER RELIEF

---

[1] The debtors consist of TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc., TransCare Harford County, Inc., TransCare Pennsylvania, Inc., TC Ambulance Corporation and TC Hudson Valley Ambulance Corporation (collectively, the "Debtors")

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

PROPOSED CLASS DEFINITIONS ........................................................................... 3

ARGUMENT ................................................................................................................. 4

I.      WARN Claims are Especially Appropriate for Class Certification .................................... 4

II.     Class Certification is Appropriate at this Time and in a Bankruptcy Case ........................ 6

III.    Merits Based Inquiries are Limited at this Stage ................................................................. 6

IV.     Formation of Subclasses is Appropriate ............................................................................... 7

V.      The Proposed Classes Satisfy the Requirements of Rule 23 ............................................... 8

        A.      The Proposed Classes Meets the Requirements of Fed. R. Civ. P. 23(a) .............. 8

                1.  The Numerosity Requirement is Satisfied ......................................................... 8

                2.  Questions of Law and Fact Are Common to All Members of the Proposed
                Classes and ......................................................................................................... 10

                3.  The Claims of the Class Representative are Typical of the Classes ............... 10

                4.  Plaintiff Will Fairly and Adequately Protect the Interests of the Classes ...... 12

        B.      The Proposed Classes Meet the Requirements of Rule 23(b)(3) ......................... 14

VI.     The Court Should Appoint the Undersigned Class Counsel .............................................. 19

VII.    The Court Should Appoint Plaintiff as Class Representative ............................................. 19

VIII.   The Form and Manner of Service of Notice are Proper ..................................................... 19

CONCLUSION ............................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re ABMD Ltd.*,
  439 B.R. 475 (Bankr. S.D. Ohio 2010) ..................................................................5

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..............................................................................................8, 13

*Amgen v. Connecticut Retirement Plans and Trust Funds*,
  133 S.Ct. 1184 (2013) ............................................................................................6

*In re APA Transp Corp. Consol. Litig.*,
  No. Civ. 02-3480 WGB, 2005 WL 3077916 (D.N.J. Nov. 16, 2005) .....................5

*Applegate v. Formed Fiber Technologies, LLC*,
  No. 10–CV–00473–GZS, 2012 WL 3065542 (D. Me. July 27, 2012) ....................4

*Armstrong v. Davis*,
  275 F.3d 849, 868-69 (9th Cir. 2001) ...................................................................11

*Belote v. Rivet Software, Inc.*,
  No. 12-CV-02792-WYD-MJW, 2013 WL 2317243 (D. Colo. May 28, 2013) .......5

*Bennett v. Schmidt*,
  153 F.3d 516 (7th Cir. 1998) .................................................................................6

*Bledsoe v. Emery Worldwide Airlines*,
  258 F. Supp. 2d 780 (S.D. Ohio 2003) .................................................................5

*Bourlas v. Davis Law Associates*,
  237 F.R.D. 345, 352 (E.D.N.Y. 2006) ..................................................................13

*Cashman v. Dolce International/Hartford, Inc.*,
  225 F.R.D. 73 (D. Conn. 2004) ................................................................5, 8, 9, 10

*Conn v. Dewey & LeBoeuf LLP*,
  487 B.R. 169 (Bankr. S.D.N.Y. 2013) ..................................................................5

*In re Connaught Grp., Ltd.*,
  491 B.R. 88 (Bankr. S.D.N.Y. 2013) ....................................................................5, 6

*Cruz v. Robert Abbey, Inc.*,
  778 F. Supp. 605 (E.D.N.Y. 1991) .......................................................................5

*In re Drexel Burnham Lambert*
  *group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992) ........................................................13

*Eisen v. Carlisle & Jacquelin,*
  391 F.2d 555, 562 (2d Cir. 1968), cert. denied, 417 U.S. 156 (1974) ....................................13

*Etzelsberger v. Fisker Automotive, Inc.,*
  300 F.R.D. 378 (C.D. Cal. 2013) ..................................................................11, 16

*Finnan v. L.F. Rothschild & Co.,*
  726 F. Supp. 460 (S.D.N.Y. 1989)......................................................................5

*General Tel. Co. v. Falcon,*
  457 U.S. 147 (1982)........................................................................................11

*Grimmer v. Lord, Day & Lord,*
  937 F. Supp. 255 (S.D.N.Y. 1996)......................................................................5

*Grunin v. International House of Pancakes,*
  513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S. Ct. 124 (1975)............................20

*Guippone v. BH S & B Holdings LLC,*
  09 Civ. 1029(CM), 2011 WL 1345041 (S.D.N.Y. Mar. 30, 2011) ........................................5, 8

*In re Initial Pub. Offerings Sec. Litig.,*
  471 F.3d (2d Cir. 2006)....................................................................................7

*Jones v. Kayser-Roth Hosiery,*
  748 F. Supp. 1276 (E.D. Tenn. 1990) ....................................................................5

*Jurcev v. Central Community Hospital,*
  7 F.3d 618 (7th Cir. 1993) ................................................................................5

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*
  *Inc.,*
  244 F.3d 1152 (9th Cir. 2001) ..........................................................................18

*Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp.,*
  993 F.2d 11 (2d Cir.1993)..................................................................................7

Marisol A. ex.rel. v. Guliani, 126 F.3d 372, 378 (2d Cir. 1997) ....................................13

*In re Mercedes Benz Tele Aid Contract Litigation,*
  257 F.R.D. 46 (D.N.J. 2009)..............................................................................18

*In re MF Glob. Inc.,*
  512 B.R. 757 (Bankr. S.D.N.Y. 2014) ..........................................................5, 6, 18

*Morano v. BMW of North America, LLC,*
    928 F. Supp. 2d 826 (D.N.J. 2013) ..................................................................6

*Moreno v. DFG Foods, LLC,*
    No. 02 C 4019, 2003 WL 21183903 (N.D. Ill. May 21, 2003) ..............................................10

*Nolan v. Reliant Equity Investors, LLC,*
    3:08–CV–62, 2009 WL 2461008 (N.D. W.Va. Aug. 10, 2009)..........................................15

*Patrowicz v. TransamericaHomeFirst, Inc.,*
    359 F. Supp. 2d 140 (D. Conn. 2005)..................................................................20

*In re PE Corp. Securities Litig.,*
    228 F.R.D. 102 (D. Conn. 2005).........................................................................15

*Pearson v. Component Technology Corp.,*
    247 F.3d 471 (3d Cir. 2001)...............................................................................5

*In re Pfizer Inc. Sec. Litig.,*
    282 F.R.D. 38 (S.D.N.Y. 2012) .........................................................................7

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985).................................................................................15, 18

*In re Protected Vehicles, Inc.,*
    397 B.R. 339 (Bankr. D.S.C. 2008) ....................................................................18

*In re Partsearch Technologies, Inc.,*
    453 B.R. 84 (Bankr. S.D.N.Y. 2011) .............................................................9, 13, 16

*In re Quigley Co., Inc.,*
    676 F.3d 45 (2d Cir. 2012)..............................................................................18

*Ramos v. SimplexGrinnell LP,*
    796 F.Supp.2d 346 (E.D.N.Y. 2011) ...................................................................14

*Reyes v. Greater Texas Finishing Corp.,*
    19 F. Supp. 2d 709 (W.D. Tex. 1998).....................................................................5

*Robidoux v. Celani,*
    987 F.2d 931 (2d Cir.1993)..............................................................................7, 9

*Roquet v. Arthur Anderson, LLP,*
    No. 02 C 2689, 2003 WL 21994019 (N.D. Ill. Aug.18, 2003)............................................10

*In re Sumitomo Copper Litig.,*
    194 F.R.D. 480 (S.D.N.Y. 2000) .......................................................................15

*In re TransCare Corp*,
  2016 WL 3079805 (Bankr. S.D.N.Y. May 23, 2016) ............................................ 2, 13, 14, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) ........................................................ 7, 14

*Wal-Mart Stores, Inc., v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust
  Litig.)*,
  280 F.3d 124 (2d Cir. 2001) ........................................................................ 14

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1983) ......................................................................... 20

*Young v. Fortis Plastics, LLC*,
  294 F.R.D. 128 (N.D. Ind. 2013) ................................................................... 4

**Statutes**

11 U.S.C. § 503(b)(1)(A) ............................................................................. 3

29 U.S.C. § 2101(a)(1) ............................................................................... 4

29 U.S.C. § 2101(a)(5) ............................................................................... 3

29 U.S.C. § 2101 *et seq.* ...................................................................... *passim*

29 U.S.C. § 2102(a) .................................................................................. 4

29 U.S.C. § 2104 ..................................................................................... 4

29 U.S.C. § 2104(a)(5) ............................................................................... 4

New York Labor Law § 860 *et seq.* ............................................................ *passim*

**Other Authorities**

Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009) ................................................. 7

Fed. R. Bankr. P. 7023 ............................................................................... 1

Fed. R. Civ. P. 23 ........................................................................... 1, 6, 8, 11

Fed. R. Civ. P. 23(a) ......................................................................... 2, 8, 14

Fed. R. Civ. P. 23(a)(1) ........................................................................ 8, 10

Fed. R. Civ. P. 23(a)(2) ........................................................................... 10

Fed. R. Civ. P. 23(a)(3) ........................................................................... 10

Fed. R. Civ. P. 23(a)(4) .................................................................................12, 13

Fed. R. Civ. P. 23(b) ...........................................................................................8

Fed. R. Civ. P. 23(b)(3) ............................................................................ *passim*

Fed. R. Civ. P. 23(b)(3)(A)-(D) ........................................................................16

Fed. R. Civ. P. 23(c)(1)(A) .................................................................................6

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................20, 21

Fed. R. Civ. P. 23(c)(3) ....................................................................................20

Fed. R. Civ. P. 23(c)(5) .....................................................................................7

Fed. R. Civ. P. 23(g)(1)(A) ..............................................................................13

## INTRODUCTION

On behalf of herself and the putative class of terminated employees, Plaintiff submits this motion for class certification pursuant to Fed. R. Civ. P. 23 and Fed. R. Bankr. P. 7023.

## BACKGROUND

Plaintiff Shameeka Ien ("Plaintiff") was a staff accountant employed by TransCare.[2] She commenced this case on March 1, 2016. She alleges that on or about February 24, 2016, TransCare terminated her employment and that of approximately 1700 individuals without giving them 60 days' advance notice as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act") and 90 days' notice as required by the New York Labor Law § 860 *et seq*. ("NY WARN Act") as to those employees who worked at or reported to a facility in New York. (D.I. 1 (Complaint)).

Plaintiff alleges that Transcare and the Patriarch Defendants (excluding Ms. Tilton)[3] are all liable under the WARN Act and NY WARN Act for the termination of herself and all similarly situated employees without notice because they were the employees' WARN Act "employer." (¶¶ 6, 25, 78-100).[4] While the Patriarch Defendants and Lynn Tilton have agreed not to oppose this motion, they expressly reserve all defenses, including that they did not employ the Class Members.

Plaintiff also alleges that she and the other similarly situated employees were not paid all of their wages owed upon termination in violation of various state laws and that the Defendants are all liable to herself and the putative class for failure to pay these wages. (¶¶ 4, 25, 101-114).

---

[2] "TransCare" refers to all of the Debtors that are named in the complaint. The Debtors' estates are being jointly administered under case no. 16-10407. Salvatore LaMonica is the Chapter 7 Trustee of the Debtors' estates (the "Trustee").

[3] "Patriarch Defendants" refers to the non-Debtor defendants.

[4] Citations to paragraph numbers refer to the Complaint unless otherwise indicated.

Plaintiff further alleges that the WARN Act and NY WARN Act classes[5] meet the requirements of Rule 23(a) because: there are common questions of law and fact that are applicable to all members of the Classes; the Classes are so numerous as to render joinder of all members impracticable; Plaintiff's claims are typical of the claims of the other Class Members; and Plaintiff will fairly and adequately protect and represent the interests of the Classes.  Plaintiff further alleges that she has the time and the resources to prosecute this action, and that she has retained counsel who have extensive experience in matters involving employment class actions and the WARN Act. (¶¶ 56-63, 67-74).

Plaintiff alleges that the proposed WARN Act and NY WARN Act classes meet the requirements of Rule 23(b)(3) because the questions of law and fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of WARN Act litigation, where an individual Plaintiff and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.  (¶¶ 64-65, 75-77).

On June 6, 2016, on Plaintiff's motion and after settlement of an order, the Court appointed the undersigned counsel as interim class counsel and dismissed another substantially similar action filed in this Court as duplicative of this suit.  (D.I. 22, 25) (*In re TransCare Corp*, 2016 WL 3079805 (Bankr. S.D.N.Y. May 23, 2016)).

On April 22, 2016, the Patriarch Defendants filed their Answer to the Complaint.  (D.I. 18).  On June 3, 2016, the Trustee, on behalf of the Debtors' estates, filed an Answer to the Complaint.  (D.I. 24).  The Patriarch Defendants and the Trustee generally deny the allegations

---

[5] Plaintiff requests a WARN Act Class be certified with a NY WARN Act sub-class as well as an unpaid Wage Class as described below.

and assert several defenses and affirmative defenses, including that the Patriarch Defendants did not employ the Plaintiff or the Class Members and therefore have no liability under the WARN Act or the NY WARN Act, that unforeseeable business circumstances prevented them from giving Plaintiff and the Class Members required notice, that any obligation to give 60 days' notice was reduced because Defendants actively sought capital or business that would have postponed or prevented the layoffs, and that Defendants had a good faith and reasonable belief their actions were lawful. The Trustee also disputes that any portion of Plaintiff's claims or the putative class members' claims are entitled to administrative expense priority status pursuant to 11 U.S.C. § 503(b)(1)(A).

Now, Plaintiff seeks an order: (a) certifying a WARN class and New York State WARN sub-class and an unpaid wages class; (b) appointing Outten & Golden LLP as Class Counsel; (c) appointing Plaintiff as Class Representative; (d) approving the form and manner of Notice to the Class; and (e) granting any other appropriate relief.

In support of her motion, Plaintiff submits this memorandum of law along with her supporting declaration and that of René S. Roupinian ("Roupinian Dec."), as well as a proposed notice to the class and proposed order which are attached hereto as Exhibits A-D, respectively.

## PROPOSED CLASS DEFINITIONS

The proposed Class and Sub-Class definitions are as follows:

**WARN Class**: All persons who worked at or reported to a Facility of Debtors who (1) were terminated without cause on or about February 24, 2016 or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by Debtors covered by the Worker Adjustment and Retraining Notification ("WARN") Act on or about February 24, 2016, and (2) are affected employees within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

3

**New York State WARN Sub-Class**:   All persons who worked at or reported to a Facility of Debtors in New York State who (1) were terminated without cause on or about February 24, 2016, or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by Debtors covered by the New York State Worker Adjustment and Retraining Notification ("NY WARN") Act on or about February 24, 2016, and (2) are affected employees within the meaning of NYLL § 860-A (1),(4) and(6) (the "NY WARN Sub-Class").

**Wage Class**: All persons who were employed by Debtors and terminated on or about February 24, 2016 and were not paid the wage amounts to which they are entitled under the laws of the state in which they worked.

## ARGUMENT

### I.    WARN Claims are Especially Appropriate for Class Certification

The WARN Act provides a rather simple mandate: before instituting a "plant closing" or "mass layoff," an employer must provide sixty days' written notice to employees and to relevant local government entities. *See* 29 U.S.C. § 2102(a).  A covered employer is one that employs at least 100 full-time employees.  *See* 29 U.S.C. § 2101(a)(1).

The WARN Act provides a cause of action for any employee who suffers a covered employment loss without having received the statutorily-required notice. *See* 29 U.S.C. § 2104. Notably, Congress gave WARN Act plaintiffs the right to bring representative actions to enforce the Act: "A person seeking to enforce such liability … may sue either for such person or for other persons similarly situated, or both, in any district court of the United States…."  29 U.S.C. § 2104(a)(5); *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134 (N.D. Ind. 2013) ("The WARN Act indicates that class treatment may be appropriate in this type of litigation, providing that a person may sue 'for other persons similarly situated.'"); *Applegate v. Formed Fiber Technologies, LLC*, No. 10–CV–00473–GZS, 2012 WL 3065542, at *3 (D. Me. July 27, 2012) (indicating same).

4

WARN Act claims have been recognized by Courts in this District as being "particularly amenable to class litigation." *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989); *In re Connaught Grp., Ltd.*, 491 B.R. 88, 93-94 (Bankr. S.D.N.Y. 2013); *Guippone v. BH S & B Holdings LLC*, 09 Civ. 1029(CM), 2011 WL 1345041, at *2 (S.D.N.Y. Mar. 30, 2011); *Conn v. Dewey & LeBoeuf LLP*, 487 B.R. 169, 179 n. 8 (Bankr. S.D.N.Y. 2013) (collecting cases); *Grimmer v. Lord, Day & Lord*, 937 F. Supp. 255 (S.D.N.Y. 1996) ("[T]he WARN Act provisions lend themselves to class action because they provide for limited recovery.").

Outside this District, Courts also have routinely granted class certification in WARN Act cases. *See, e.g., Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001) (former employees brought representative WARN action on behalf of other employees against employer's parent/lender); *Cashman v. Dolce International/Hartford, Inc.*, 225 F.R.D. 73 (D. Conn. 2004); *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605 (E.D.N.Y. 1991); *In re APA Transp Corp. Consol. Litig.*, No. Civ. 02-3480 WGB, 2005 WL 3077916 (D.N.J. Nov. 16, 2005) (same); *In re ABMD Ltd.*, 439 B.R. 475 (Bankr. S.D. Ohio 2010); *Belote v. Rivet Software, Inc*., No. 12-CV-02792-WYD-MJW, 2013 WL 2317243 (D. Colo. May 28, 2013); *Jurcev v. Central Community Hospital*, 7 F.3d 618 (7th Cir. 1993); *Jones v. Kayser-Roth Hosiery*, 748 F. Supp. 1276 (E.D. Tenn. 1990); *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780 (S.D. Ohio 2003); *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Tex. 1998). (*See also*, Exhibit B, Roupinian Dec., ¶¶ 20, 24) (listing cases).

Unpaid wages and related claims can also be efficiently prosecuted as a class claim. *See In re MF Glob. Inc.*, 512 B.R. 757 (Bankr. S.D.N.Y. 2014) (overruling objection to class claim for unpaid accrued vacation time and directing plaintiffs to file motion for class certification).

## II.    Class Certification is Appropriate at this Time and in a Bankruptcy Case

The proper time for the court to consider class certification is early in the case – indeed, it is mandated.  *See Fed*. R. Civ. P. 23(c)(1)(A) ("At an *early practicable time* after a person sues or is sued as a class representative the court *must* determine by order whether to certify the action as a class action.") (emphasis added).  *See also Morano v. BMW of North America, LLC*, 928 F. Supp. 2d 826 (D.N.J. 2013) (noting same).

Deciding class certification early lets the parties know what is at stake in the case.  *See Bennett v. Schmidt*, 153 F.3d 516, 520 (7th Cir. 1998) ("Everyone (including the putative class members) is entitled to know promptly whose interests are on the line.")  Rule 23(c)'s purpose is to give a clear definition of the parameters of the class, to outline the claims involved in the class action, and to apprise the defendant of its potential liability as soon as practicable.

A denial of class certification, on the other hand, invites a "multiplicity of activity" that "Rule 23 was designed to avoid" and jeopardizes the efficient and orderly administration of the estate by *inter alia*, opening up the possibility that a new bar date will be needed for WARN claimants.  *In re MF Global Inc*., 512 B.R. 757, 764-65 (Bankr. S.D.N.Y. 2014) ("The principal consideration must be the effect of the class certification on the administration of the estate.") (quoting *The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.),* 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013)).

## III.    Merits Based Inquiries are Limited at this Stage

Merits-based inquiries are very limited at the class certification stage.  *See Amgen v. Connecticut Retirement Plans and Trust Funds,* 133 S.Ct. 1184, 1194-1195 (2013) (indicating that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied" and

citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.____, ____, 131 S.Ct. 2541, 2556, n.6, 180

L.Ed.2d 374 (2011) for the proposition that "a district court has no 'authority to conduct a

preliminary inquiry into the merits of a suit' at class certification unless it is necessary 'to

determine the propriety of certification.'")).  *See also*, *In re Initial Pub. Offerings Sec. Litig.*, 471

F.3d at 41 (2d Cir. 2006).

A defendant's contention that a plaintiff and the class cannot prove some element of their

case does not mean that class certification cannot be granted.  Rather, when "'the concern about

the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—

[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should

engage that question as a matter of summary judgment, not class certification.'" *Tyson Foods,

Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047, 194 L. Ed. 2d 124 (2016) (quoting Nagareda, Class

Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009).

## IV.    Formation of Subclasses is Appropriate

The Complaint speaks of a single WARN Act class of employees and a separate New

York State WARN Act class.  (¶¶ 56, 67).   Plaintiff's proposed definitions, above at page 3,

seek to certify the New York WARN Act class as a sub-class of the federal class.   The Court has

authority to do this because it "is not bound by the class definition proposed in the complaint,"

*Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993).  Rather, it "is empowered under [Rule

23(c)(5)] to carve out an appropriate class—including the construction of subclasses," *Lundquist

v. Sec. Pac. Auto. Fin. Servs. Corp.,* 993 F.2d 11, 14 (2d Cir.1993); *In re Pfizer Inc. Sec. Litig.*,

282 F.R.D. 38, 54 (S.D.N.Y. 2012).

Here, Plaintiff's proposed federal WARN class with a New York WARN subclass makes

sense**,** because its members have New York and federal claims which overlap.  The proposed

definitions include a separate class for the unpaid wage claims.  The three state wages laws

encompassed by this class are nearly identical, and any accounting for distributions by state can

be easily managed without separate sub-classification.

### V.    The Proposed Classes Satisfy the Requirements of Rule 23

Class certification requires a two-step inquiry.  First, Plaintiff must satisfy the four

prerequisites of Fed. R. Civ. P. 23(a), then at least one of the subsections of Rule 23(b). Here

Plaintiff satisfies the subsection 23(a) requirements and those of subsection 23(b)(3).

### A.    The Proposed Classes Meets the Requirements of Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(a) provides as follows:

**Prerequisites to a Class Action.** One or more members of a class may sue or be sued as
representative parties on behalf of all only if (1) the class is so numerous that joinder of
all members is impracticable, (2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or
defenses of the class, and (4) the representative parties will fairly and adequately protect
the interest of the class.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Boiled down, Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3)

typicality; and (4) adequacy of representation.

### 1.  The Numerosity Requirement is Satisfied

Federal Rule of Civil Procedure 23(a)(1), requires that the class sought to be certified be

"so numerous that joinder of all members is impracticable."  *Cashman v. Dolce Int'l/Hartford*,

225 F.R.D. 73, 91 (D. Conn. 2004) (finding numerosity for class of 117 former employees);

*Guippone v. BH S&B Holdings LLC,* 2011 WL 1345041, at *4 (S.D.N.Y. Mar. 30, 2011)

("[j]oinder need not be impossible") (citing *Grimmer v. Lord, Day & Lord,* 937 F.Supp. 255

(S.D.N.Y. 1996)).  No specific number is needed to maintain a class action, but Courts in the

Second Circuit presume that joinder is impracticable where the prospective class consists of 40

members or more.  *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993); *In re Partsearch Technologies, Inc.*, 453 B.R. 84, 93-94 (Bankr. S.D.N.Y. 2011) (holding 192 WARN class members sufficiently large to make joinder impracticable).

Where, as here, the members of the proposed class have limited financial resources and the size of their individual claims make individual suits financially unfeasible, those factors cut in favor of a determination that the numerosity requirement has been satisfied.  *See Cashman v. Dolce International/Hartford*, 225 F.R.D. at 91.  Individually, the class members' claims are negative value claims because the cost of litigating each one separately exceeds the potential recovery.  Solo WARN actions are neither economical nor feasible.  Hence, WARN claims are virtually never brought absent a class action.  "[P]roceeding individually would likely be impractical for individual members because each holds a relatively small claim.  In such circumstances, as with those before the Court, 'the class action device is frequently superior to individual actions.'"  *In re Partsearch Technologies, Inc.*, 453 B.R. at 97 (certifying WARN class Action) (quoting *In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 WL 4025873, at *6 (Bankr. M.D. Fla. Sept. 27, 2010)).

Here, Plaintiff has a WARN claim for an estimated $7,000 not including benefits.  (Ien Dec. ¶ 12).  Her unpaid wages claim is estimated to be on the order of $1,600 not including accrued but unused paid time off.  (*Id.*)  Because of the small size of her claim, her current financial situation, and the cost of attorneys' fees, she is unable to pursue her claim as a sole litigant.  (*Id.*)  She also believes that the other former employees of TransCare who were terminated on or about February 24, 2016 are similarly situated and unable to pursue their rights under the WARN Act and for unpaid wages and paid time off except through a class action.  (*Id.*)

The proposed class includes approximately 1700 former employees of TransCare.

Joinder of that number of litigants is entirely impracticable.  Moreover, neither Plaintiff nor those

similarly situated would be able to pursue their claims as sole litigants because they would be

negative value claims if brought alone.  Accordingly, Plaintiff satisfies the numerosity

requirement of Fed. R. Civ. P. 23(a)(1).

**2. Questions of Law and Fact Are Common to All Members of the Proposed Classes
and**
**3. The Claims of the Class Representative are Typical of the Classes**

The commonality requirement requires the existence of at least one question of law or

fact common to the Class. Fed. R. Civ. P. 23(a)(2).  It is so similar to the typicality requirement

that they are often combined.  Typicality requires that the "claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

"The commonality and typicality requirements are fairly easily met in an action brought under

the WARN Act."  *Cashman*, 225 F.R.D. at 92.

The commonality factor is satisfied if there is "at least one issue common to the class,"

and the typicality factor is usually satisfied when "the representative plaintiffs are subject to the

same policies as the putative class members." *Cashman*, 225 F.R.D. at 91. Typicality is satisfied

when each class member's claim arises from the same course of events, and each class member

makes similar legal arguments to prove the defendant's liability.  *Id.* (citing *Presser v. Key Food*

*Stores Co-op., Inc.*, 218 F.R.D. 53, 58 (E.D.N.Y. 2003) (finding that a WARN Act plaintiff met

the commonality and typicality requirements)); *Roquet v. Arthur Anderson*, *LLP*, No. 02 C 2689,

2003 WL 21994019, at *2 (N.D. Ill. Aug.18, 2003) (same); *Moreno v. DFG Foods, LLC*, No. 02

C 4019, 2003 WL 21183903, at *7–9 (N.D. Ill. May 21, 2003) (same).

Typicality should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.  See Armstrong v. Davis, 275 F.3d 849, 868-69 (9th Cir. 2001).

In cases where the plaintiff shares a common issue with the proposed class, "'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'"  *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)) (alteration in original).

The Court in *Etzelsberger v. Fisker Automotive, Inc.*, 300 F.R.D. 378 (C.D. Cal. 2013), found "common questions as to whether Fisker is a 'covered employer' for purposes of the WARN Acts and whether the … terminations were done in connection with a mass layoff or resulted from a plant closing" and that Fisker's "affirmative defenses … present questions of fact and law common to all class members."  *Id.* at 383.  Plaintiff here suffered the same type of injury as the rest of the Class and her claims have the "same essential characteristics as the claims of the class at large."  *Id.*

Here, the Plaintiff claims that she and the other Class Members were terminated as part of a common plan stemming from TransCare's decision to terminate the putative class members. Additionally, the factual and legal questions stem from a common core of facts regarding Defendants' actions and a common core of legal issues regarding every Class Member's rights, as follows: whether (a) TransCare employed more than 100 employees; (b) all the Class Members are protected by the WARN Act; (c) the Class Members were employees of TransCare who worked at or reported to the Facilities; (d) TransCare discharged the Class Members within 30 days of February 24, 2016 in connection with mass layoffs or plant closings or as their

reasonably foreseeable result; (e) the Class Members were "affected employees"; (f) TransCare terminated the employment of the Class Members without cause; (g) TransCare terminated the employment of the Class Members without giving them at least 60 days' prior written notice as required by the WARN Act; (h) TransCare failed to pay the Class Members 60 days' wages and benefits; (i) TransCare failed to pay the Class Members all of their wages owed upon termination; (j) Defendants were a "single employer" under the WARN Act and should be held jointly and severally liable to the Class; and (k) whether TransCare's notice obligations were reduced or eliminated because the layoffs were caused by unforeseen business circumstances and/or because they were seeking capital or business that if obtained would have allowed for the avoidance or postponement of the layoffs.

All of these legal and factual issues are common to the Class. These common questions far exceed the requirement of a single common question of law or fact. Thus, the proposed Class satisfies commonality.

The terminations of Plaintiff and the putative Class Members resulted from the same course of events that led to their termination on or about February 24, 2016. Hence, they all suffered the same type of injury. Defendants' failure to comply with the requirements of the WARN Act represents a single course of conduct resulting in injury to all Class Members, including Plaintiff. The legal theory upon which Plaintiff proceeds and the defenses which Defendants seek to prove make her typical of the Class. Thus, Plaintiff satisfies the typicality requirement.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the Classes

Federal Rule of Civil Procedure 23(a)(4) provides that a class action is maintainable only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R.

Civ. P. 23(a)(4).  This element requires a two-step analysis. First, the court must determine

whether the named class representatives have interests that "are free from conflicts of interest

with the class they seek to represent." *Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997).

Second, the court must find that the class would be represented by qualified counsel. *Bourlas v.*

*Davis Law Associates,* 237 F.R.D. 345, 352 (E.D.N.Y. 2006); *Marisol A. ex.re. v. Guliani,* 126

F.3d 372, 378 (2d Cir. 1997); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d

Cir. 1992); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), cert. denied, 417

U.S. 156 (1974).

The first element of Rule 23(a)(4) is met in this case because, as set forth above, there is

no divergence between the interests of the proposed Class Representative and the Class.  Here,

they all have a united, unqualified interest in proving Plaintiff's allegations that the WARN Act

was violated, that Defendants were a "single employer" under the WARN Act, and that

Defendants did not pay them all of their wages owed upon termination.  Plaintiff worked at one

of Transcare's facilities in New York, accordingly she is a member of the New York WARN Act

sub-class.  There is no reason to suspect the class representative has filed this suit for an ulterior

motive or that, as a former employee of Transcare who was terminated in good standing, she is

not an honest and trustworthy person. *See In re Partsearch Tech., Inc.*, 453 B.R. 84, 95 (Bankr.

S.D.N.Y. 2011).

The second element of Rule 23(a)(4) is met because Plaintiff's counsel are "qualified,

experienced and generally able to conduct the proposed litigation." *Eisen*, 391 F.2d at 562.  The

Court has appointed Outten & Golden as interim class counsel.  In appointing interim class

counsel, the Court "generally considers the same factors used in determining the adequacy of

class counsel upon certification under Rule 23(g)(1)(A)." *In re TransCare*, 2016 WL 3079805,

at *7 (citing *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y.2008). In its

decision determining that Outten & Golden should be appointed interim class counsel, the Court

found that "Outten & Golden has extensive experience in litigating WARN Act class actions,"

"this experience includes WARN Act class action litigation in bankruptcy court," "the firm is

able to commit substantial resources to representing the class," and "the firm has done significant

work in identifying and investigating potential claims in the action." *In re TransCare*, 2016 WL

3079805, at *7-8. *See also* Exhibit B, Roupinian Dec. ¶ 19. Accordingly, Outten & Golden will

adequately protect the interests of the classes.

For all the foregoing reasons, all four prerequisites of Rule 23(a) for Class certification

are met by the proposed class.

### B.     The Proposed Classes Meet the Requirements of Rule 23(b)(3)

Class Certification is proper under Rule 23(b)(3) where "the questions of law or fact

common to the members of the class predominate over any questions affecting only individual

members, and … a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." *Ramos v. SimplexGrinnell LP,* 796 F.Supp.2d 346, 359

(E.D.N.Y. 2011). "The 'predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.

Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997));

*Wal-Mart Stores, Inc., v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.),* 280

F.3d 124, 136 (2d Cir. 2001).

"When 'one or more of the central issues in the action are common to the class and can

be said to predominate, the action may be considered proper under Rule 23(b)(3) even though

other important matters will have to be tried separately, such as damages or some affirmative

defenses peculiar to some individual class members.'" *Tyson Foods*, 136 S. Ct. at 1045 (quoting

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d

ed. 2005)); *Nolan*, 2009 WL 2461008, at *4 (predominance satisfied because "the computation

of damages following a ruling in favor of the class is largely a mechanical task") (citation

omitted).

Generally, "[i]f the liability issue is common to the class, common questions are held to

predominate over individual ones." *Nolan v. Reliant Equity Investors, LLC*, 3:08–CV–62, 2009

WL 2461008, at *5 (N.D. W.Va. Aug. 10, 2009) (in WARN case, common issues predominate

because of three questions: "First, whether AB & C Group was subject to the requirements of the

WARN Act. Second, whether the appropriate WARN notice was given. Third, whether the

defendants are legally liable for the alleged violation.").

Considerations of judicial economy and efficiency are of high importance in determining

superiority and, where, as here, determination of the common, predominant issues shared by the

Class Members will dispose of the matter, class certification should be ordered. *In re Sumitomo

Copper Litig.,* 194 F.R.D. 480 (S.D.N.Y. 2000); *In re PE Corp. Securities Litig.*, 228 F.R.D. 102,

110 (D. Conn. 2005) (efficiency and superiority requirement of Rule 23(b)(3) is satisfied where

there is only one principal issue in the case).  A class action is the superior method of resolving

this dispute because many of the claims are small, making individual lawsuits impracticable.

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

In addition to the above criteria, Fed. R. Civ. P. 23(b)(3) sets forth four factors to guide

the court's determination as to whether a class action is superior and whether issues of fact and

law common to class members predominate over individual matters.  They are:

(A) the interest of members of the class in individually controlling the prosecution or
defense of separate actions; (B) the extent and nature of any litigation concerning the

15

controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3); *See also In re Partsearch Technologies, Inc.*, 453 B.R. at 97 (finding "[t]he

factors enumerated in Rule 23(b)(3)(A)-(D) also support certification.").

In *In re Partsearch Technologies, Inc.,* 453 B.R. 84 (Bankr. S.D.N.Y. 2011), the court

certified a WARN class for settlement purposes finding, *inter alia*, predominance and

commonality, stating:

> The Settlement Class is suited to proceed as a class under Rule 23(b)(3). For the reasons previously discussed, questions of law or fact common to the Settlement Class predominate over questions affecting only individual members. The action involves 192 claimants who are asserting claims based on common facts and under the same legal theory. The Debtor even concedes in the Settlement that all of the Class Members were subject to the same circumstances surrounding their termination. The Settlement Class is also superior to other methods of resolving the controversy because individually adjudicating each of these substantially similar claims would be impracticable and consume significant judicial resources. Moreover, proceeding individually would likely be impractical for individual members because each holds a relatively small claim. In such circumstances, as with those before the Court, the class action device is frequently superior to individual actions.

453 B.R. at 96 (citations and quotation marks omitted).

Similarly, in *Etzelsberger v. Fisker Automotive, Inc.*, 300 F.R.D. 378, 384 (C.D. Cal.

2013), the Court found that predominance was "clearly satisfied" by the WARN claims,

indicating:

> Litigation of this case will focus primarily on whether Fisker is a covered employer under the WARN Act, whether the terminations were related to plant closings or mass layoffs, whether Fisker provided notice to terminated employees, and whether Fisker otherwise provided adequate compensation. There is no evidence or indication that potential class members were treated uniquely with respect to any of these issues. Indeed, it appears that each class member was treated in the same or similar manner pursuant to a common plan implemented by Fisker. Additionally, Fisker could potentially defeat the claims of the entire class if it proves that it was actively seeking capital that would have allowed it to avoid or postpone a plant closing, it was a faltering company, ... or it acted in good faith and had reasonable grounds for believing that it was not acting in violation of [WARN].

16

The same type of analysis shows predominance is met here.  The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  The major factual and legal questions facing the class include whether Defendants are covered employers under the WARN Act, whether the terminations were related to plant closings or mass layoffs, whether Defendants provided notice to terminated employees, whether Defendants otherwise provided adequate compensation, whether Defendants can be treated as a single employer for WARN Act purposes, and whether Defendants can defeat the claims of the entire class if they prove that they were actively seeking capital that would have allowed them to avoid or postpone a plant closing and the faltering company defense applies, or that they acted in good faith and had reasonable grounds for believing that they were not acting in violation of the WARN Act.  Each of these questions applies to the class as a whole.  While the question of damages will have to be calculated on an individual basis, they are predicated on a finding of liability, and the calculation of such damages would be largely mechanical and formulaic.

Likewise, with respect to the Wage Class, the question of whether the Class Members were paid all of the wages owed to them is a common question that applies to the class as a whole and predominates over any other question relating to individual Class Members.

Here, concentrating the WARN and wage litigation in a class action will avoid multiple suits and assist in efficient administration of the estate.  The difficulties in managing this litigation as a class action are few: the Class Members can be easily identified; the potential liability of Defendants can be readily calculated; and there is only one combined course of conduct – that of Defendants – to examine and adjudicate.  Although other plaintiffs have filed suits, this court dismissed the only related suit pending before it and there are no other suits seeking the same relief against the Debtors.  Moreover, the bankruptcy proceedings are the most

appropriate forum for resolution of the identical claim against the non-debtor defendants because it will impact the estate.  *See, e.g., In re Quigley Co., Inc.*, 676 F.3d 45, 57-58 (2d Cir. 2012).

A class action is the superior method of resolving a WARN dispute because many of the claims are quite small, making individual lawsuits impracticable.  *See In re Protected Vehicles, Inc.*, 397 B.R. 339, 436 (Bankr. D.S.C. 2008) (certifying WARN claim in chapter 7 case); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (WARN claim "easily satisfie[s]" superiority requirement of Rule 23(b)(3)) (citing *Phillips Petroleum Co*. v. *Shutts,* 472 U.S. 797, 809 (1985)); *In re Mercedes Benz Tele Aid Contract Litigation,* 257 F.R.D. 46, 63 (D.N.J. 2009) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (citing *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (internal quotations omitted)).

A class action may also be the superior method for resolving unpaid wage-type claims against an estate.  *See In re MF Glob. Inc.*, 512 B.R. 757, 765 (Bankr. S.D.N.Y. 2014) ("under the circumstances of this case, allowing the Thielmann Claim [for unpaid vacation] to proceed as a class claim will result in the most expeditious administration of the estate."

A class action is a superior method of adjudicating Plaintiff's and the proposed class's claims.  It is clearly in the interest of judicial economy and efficiency to consolidate as many as 1700 potential claims into a single action, which will allow the myriad common questions of law

and fact to be determined in one fell swoop, rather than by consideration in a haphazard and piecemeal fashion.  Finally, it is superior for Plaintiff and the proposed class to litigate this action as a class because their claims would not be economically viable if brought independently.  For the foregoing reasons, Plaintiffs have satisfied both prongs of Rule 23(b)(3), predominance and superiority, and the class should be certified.

## VI.    The Court Should Appoint the Undersigned Class Counsel

As shown in the Roupinian Declaration and described above, Plaintiff's counsel has been actively and diligently prosecuting this action, expending attorney and paralegal time in furtherance of the litigation.  Moreover, Plaintiff is being represented by attorneys who are highly experienced in class action litigation and experienced in prosecuting WARN Act claims, having been appointed Class Counsel in over 80 WARN actions.  (*See* Exhibit B); *In re TransCare*, 2016 WL 3079805, at *7-8.

## VII.    The Court Should Appoint Plaintiff as Class Representative

Plaintiff has been diligent in pursuing the class claim and has worked with counsel in initiating and prosecuting the action; she has no conflict of interest with other Class Members, and has and will fairly and adequately represent the interests of the Classes.  Plaintiff has been actively involved in prosecuting this case and will continue to do so.  (*See* Ien Dec. ¶ 13).  For these reasons, Plaintiff's counsel asks that Shameeka Ien be appointed Class Representative for each of the Classes.

## VIII. The Form and Manner of Service of Notice are Proper

Plaintiff further submits that service of the proposed Notice of Class Action by First Class Mail, postage prepaid, to each member of the Classes at the member's last known address

as shown in the Debtors' records is the best notice practicable under all the circumstances.  (The

proposed Notice is attached hereto as Exhibit C.)

Fed. R. Civ. P. 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the

Court must determine the best notice practicable under the circumstances, including individual

notice to potential class members, and that the notice must concisely and clearly state in plain,

easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues or defenses,
- that a class member may enter an appearance through counsel if the member so desired,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Rule 23(c)(2)(B). *See also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1983).

Although no rigid standards govern the form and contents of the notice, "notice by mail is

sufficient if it is reasonably calculated to apprise the interested parties of the pendency of the

action and affords them an opportunity to object. *Id.*  Individual mailings to each class member's

last known address are appropriate. *Id.*; *Grunin v. International House of Pancakes*, 513 F.2d

114, 122 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S. Ct. 124 (1975) (quoting *Philadelphia*

*Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378

(E.D. Pa. 1970), *aff'd sub nom*, *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3rd Cir.

1971)); *Patrowicz v. TransamericaHomeFirst, Inc.*, 359 F. Supp. 2d 140, 153 (D. Conn. 2005).

Here, the contents of the proposed Notice are sufficient.  The Notice summarizes in plain

language the nature of the pending WARN Act and unpaid wages litigation and apprises the

proposed Classes, among other things, of the Class definitions, of the claims, issues and

defenses, that complete information regarding the action is available upon request from Class

20

Counsel, that any Class Member may opt-out of the Classes, that if they do not opt-out, they will be bound by any judgment or settlement in the litigation, and that if they do not opt-out, they may appear by their own counsel.  In short, the proposed Notice satisfies all the requirements of Rule 23(c)(2)(B).

The names and addresses of all the putative Class Members are contained in Debtors' records.  Once Plaintiff has been provided with a class list and the addresses of the Class Members, Plaintiff's counsel will mail the Notice of Class Action by First Class Mail, postage prepaid, to the last known address of each of the Class Members so that they will have at least 30 days from the date of the mailing to object to Class certification and to opt-out of the Class. Plainly, this is the best practicable notice under the circumstances.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court enter the Proposed Order (Exhibit D) granting her Unopposed Motion for Class Certification and Related Relief.

Dated: September 23, 2016

Respectfully submitted,

By: /s/ Jack A. Raisner
Jack A. Raisner
René S. Roupinian
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000

*Attorneys for Plaintiff and the putative class*