## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*<br>TRANSCARE CORPORATION, *et al.*,[1]<br><div align="right">Debtors.</div> | Chapter 7<br>Case No. 16−10407 (SMB)<br>(Jointly Administered) |
| SHAMEEKA IEN on behalf of herself and all others similarly situated,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br><br>TRANSCARE CORPORATION, TRANSCARE NEW YORK, INC., TRANSCARE ML, INC., TC AMBULANCE GROUP, INC., TRANSCARE MANAGEMENT SERVICES, INC., TCBA AMBULANCE, INC., TC BILLING AND SERVICES CORPORATION, TRANSCARE WESTCHESTER, INC., TRANSCARE MARYLAND, INC., TC AMBULANCE NORTH, INC. AND TRANSCARE HARFORD COUNTY, INC., LYNN TILTON, ARK CLO 2001-1 LIMITED, ARK INVESTMENT PARTNERS II, L.P., PATRIARCH PARTNERS, LLC, and PATRIARCH PARTNERS III, LLC,<br><br><div align="center">Defendants.</div> | Adv. Proc. No. 16−01033-smb |

## NON-DEBTOR DEFENDANTS' REPLY STATEMENT OF UNDISPUTED FACTS
## PURSUANT TO LOCAL BANKRUPTCY RULE 7056-1
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Non-Debtor Defendants Ark CLO 2001-1 Limited ("Ark CLO"), Ark Investment Partners

II, L.P. ("AIP II"), Patriarch Partners, LLC ("Patriarch Partners"), Patriarch Partners III, LLC

("Patriarch III," collectively "Non-Debtor Entity Defendants") and Lynn Tilton ("Tilton," together

---

[1] The Debtor Defendants are TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc., TransCare Harford County, Inc., TransCare Pennsylvania, Inc., TC Ambulance Corporation and TC Hudson Valley Ambulance Corporation (collectively, the "Debtors," "Debtor Defendants," or "TransCare").

with the Non-Debtor Entity Defendants referred to as "Non-Debtor Defendants"), pursuant to Local Bankruptcy Rule 7056-1, hereby respond and submit this Reply Statement of Facts in further support of Non-Debtor Defendants' Motion for Summary Judgment.[2]

As an initial matter, Plaintiffs' Response to Non-Debtor Defendants' Local Bankruptcy Rule 7056-1 Statement of Undisputed Material Facts ("Non-Debtor Defendants' SOF") should be stricken in its entirety as Plaintiffs failed to comply with Local Rule 7056-1, which requires the opposing party to proffer a factual statement supported by underlying admissible evidence. Local Bankr. R. 7056-1(d); *In re Basic Food Grp., LLC*, No. 15-10892 (JLG), 2018 WL 5805943, at *6 (Bankr. S.D.N.Y. Oct. 31, 2018) (rejecting and deciding not to consider paragraphs in a statement of facts that were not supported with citations to admissible evidence and/or contained impermissible legal argument). Here, Plaintiffs do not dispute the stated facts but instead provide unsupported argument to challenge the proffered undisputed fact, and/or offer statements that are unsupported by any evidence or the evidence cited. In sum, Plaintiffs' Response is an incoherent mess that does not comply with the Rules of Federal Bankruptcy Procedure with the hope of implying a dispute of fact where no dispute actually exists.[3]

For ease of review by the Court, Plaintiffs do not dispute the following 43 material facts set forth in Non-Debtor Defendants' SOF: 1, 2, 5, 6, 7, 12, 15, 23, 24, 25, 28, 29, 31, 37, 41, 42,

---

[2] Non-Debtor Defendants object to Plaintiffs' constant use of the term "Patriarch," a term which is not defined in Plaintiffs' Responses to Non-Debtor Defendants' SOF. To the extent Plaintiffs intend to adopt the definition of "Patriarch" reflected in footnote 2 of their Memorandum in Support of their Motion for Partial Summary Judgment, Non-Debtor Defendants object on grounds that Plaintiffs inappropriately group together the Non-Debtor Defendants in a way that makes it impossible to understand which Non-Debtor Defendant is being accused of what. With the exception of Ark CLO (which does not exist and has never existed), each of the remaining Non-Debtor Defendants in this litigation is a wholly separate legal entity or individual, and, at the summary judgment stage, it is Plaintiffs' burden to clearly set forth each undisputed fact as to each Non-Debtor Defendant.

[3] Many of Plaintiffs' responses fail to create a dispute of fact for multiple reasons, as the Court will note in the overlapping categories below.

47, 48, 49, 50, 51, 52, 59, 60, 61, 65, 66, 67, 70, 71, 72, 74, 75, 76, 79, 80, 81, 84, 93, 94, 95, 96, and 97.

The following 49 material facts stated in Non-Debtor Defendants' SOF are also undisputed because Plaintiffs do not dispute the fact itself, merely offer improper argument, "clarifications" or "implications": 3, 4, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19, 20, 26, 33, 34, 36, 38, 39, 40, 43, 44, 45, 46, 53, 54, 55, 56, 57, 62, 63, 64, 68, 69, 73, 77, 78, 82, 83, 85, 86, 87, 88, 89, 90, 91, 92, 98, 99.

The following 52 additional material facts set forth in Non-Debtor Defendants' SOF are undisputed because Plaintiffs do not cite to any evidence in support of their purported dispute, cite to evidence that does in fact create a dispute of fact, and/or rely on hearsay evidence: 4, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 26, 27, 30, 32, 33, 34, 35, 38, 39, 40, 45, 46, 53, 54, 55, 56, 57, 58, 62, 63, 64, 68, 69, 73, 77, 78, 82, 83, 85, 86, 87, 88, 89, 90, 91, 92, 98, 99.

The following two (2) additional material facts set forth in Non-Debtor Defendants' SOF are undisputed because Plaintiffs claim to dispute them but then include the exact same fact almost *verbatim* as part of a new fact in their own Additional Statement of Facts: 43 (repeated at Plaintiffs' ASOF No. 187), and 72 (repeated at Plaintiffs' ASOF No. 225).[4]

In total, *all 99 out of 99 Paragraphs of Material Facts in Non-Debtor Defendants' SOF are undisputed*. Non-Debtor Defendants have **bolded Plaintiffs' specific responses** where they do not actually dispute the stated fact.

---

[4] Plaintiffs also unnecessarily repeat almost verbatim, without any notes or qualifications, several more of Non-Debtor Defendants' SOF paragraphs again in their own Statement of Additional Facts, despite noting them as "undisputed" in their response. *See e.g.*, SOF Nos. 59, 60, and 81, repeated at ASOF Nos. 105, 203; SOF No. 72 repeated at ASOF No. 225; and SOF No. 80 repeated at ASOF No. 236.

It is important to also note that Plaintiffs mis-numbered their responses starting at Non-Debtor Defendants' SOF No. 44. As a result, Non-Debtor Defendants' paragraph 45 has been numbered by Plaintiffs as paragraph 44, and so on. In this Reply, Non-Debtor Defendants maintained the correct, original numbering in set forth in their SOF; however, any references or cross-references within Plaintiffs' Opposition Brief and Response to Non-Debtor Defendants' SOF after paragraph 43 are one number off, and those references and cross-references should be adjusted accordingly.

### NON-DEBTOR DFENDANTS' SPECIFIC REPLY STATEMENTS TO PLAINTIFFS' RESPONSES AND COUNTERSTATEMENTS[5]

The following sets forth first the specific assertions in Non-Debtor Defendants' SOF, followed by Plaintiffs' response to each assertion, and, where applicable, then Non-Debtor Defendants reply, which is shaded in gray for ease of reference.

## I. TRANSCARE'S MANAGEMENT AND DAY-TO-DAY OPERATIONS

1. TransCare Corporation is a Delaware corporation and had its principal place of business in Brooklyn, New York. (*In re TransCare Corporation*, 16-10407-smb, Dkt. No. 4.) TransCare Corporation, by and through its subsidiaries, provided ambulance and paratransit transportation services and life support services in New York, Pennsylvania and Maryland. (*In re TransCare Corporation*, 16-01033-smb, Dkt. No. 1, ¶ 12; Dkt. No. 18, ¶ 12.)

Plaintiffs' Response: **UNDISPUTED**

---

[5] Non-Debtor Defendants have repeated Plaintiffs' responses verbatim, including citations, and have made no corrections with respect to spelling, grammar, typographical errors, or any other error in syntax. Non-Debtor Defendants do not offer any admission by virtue of repeating Plaintiffs' responses verbatim.

2.      TransCare's subsidiaries were comprised of the following Delaware corporations: (i) TransCare New York, Inc., (ii) TransCare ML, Inc., (iii) TC Ambulance Group, Inc., (iv) TransCare Management Services, Inc., (v) TCBA Ambulance, Inc., (vi) TC Billing and Services Corporation, (vii) TransCare Westchester, Inc., (viii) TransCare Maryland, Inc., (ix) TC Ambulance North, Inc., (x) TransCare Harford County, Inc., (xi) TransCare Pennsylvania, Inc., (xii) TC Ambulance Corporation and (xiii) TC Hudson Valley Ambulance Corporation.  (*In re TransCare Corporation*, 16-10407-smb, Dkt. No. 1.)

Plaintiffs' Response:  **UNDISPUTED**

3.      In the months leading up to TransCare's February 24, 2016 Chapter 7 bankruptcy filing, TransCare's executive Management Team included Vice President of Performance Excellence Glen Youngblood ("Youngblood"); Chief Operating Officer Peter Wolf ("Wolf"); Vice President of Transit Services Tom Fuchs ("Fuchs"); Chief Executive Officer Glenn Leland ("Leland"); and Chief Financial Officer Mark Bonilla ("Bonilla").[6] (Declaration of Nicole A. Eichberger ("Eichberger Decl."), Ex. P, PPTC00005903 (Wolf); Ex. Q, PPTC00027975 (Fuchs); Ex. R, PPTC00021315 (Youngblood); Ex. K, Husson Dep. Tr. (*LaMonica v. Tilton*., Adv. Proc. No. 18-01021) 51:6-13 (Bonilla); Ex. M, Leland Tr. 41:7-10; 80:20-81:2) (Bonilla/Leland).)

Plaintiffs' Response:  DISPUTED IN PART

This paragraph is disputed because it is misleading as to the time period during which the listed individuals were employed by TransCare. **Glenn Leland was terminated on January 8, 2016.**  *See* Exhibit 1 (*LaMonica v. Tilton*, 18-1021-smb, Doc. 85 Joint Pretrial

---

[6] After Bonilla resigned in 2015, he continued to serve as a consultant to TransCare for several months thereafter. (Eichberger Decl., Ex. C, Husson Dep. Tr. 50:6-51:13; Ex. T, TRANSCARE00205383.)

Order ("JPTO") 18-01021- smb, Stipulated Facts ¶¶ 24-25). **Mark Bonilla served as TransCare's Chief Financial Officer from on or about April 14, 2014 through on or about September 29, 2015. After resigning in September 2015, Bonilla served as a consultant to TransCare through on or about January 8, 2016.** *See id.*

> **REPLY:** Non-Debtor Defendants' SOF No. 3 is **undisputed**. Plaintiffs' immaterial clarification is also **undisputed** by Non-Debtor Defendants.

4.     TransCare's organizational structure included regional vice presidents, who were responsible for operations and business management, and line managers, who handled the day-to-day operations. (Eichberger Decl., Ex. G, Landeck Dep. Tr. 43:12-23; Ex. A, Tilton Dep. Tr. 156:24-157:12.)

Plaintiffs' Response: DISPUTED IN PART

This statement is disputed to the extent it suggests that TransCare's employees handled all of the day to day management and operations of TransCare. Patriarch employees such as Greenberg and Pelissier were involved in day to day decision making including decisions with respect to the payment of accounts payable, which they directed on a granular level and stretching accounts as far as they could go without paying, "if the supplier pushed back and it created an operational issue, to switch suppliers, but not to pay the bills." This was described as the "Patriarch Way." Exhibit 2 (Leland Dep. Tr. I 59:12-23). Michael Greenberg would come to TransCare's offices "at least several times a week . . . and he specifically identified which vendors [TransCare] could pay. . . . He would come up with his own conclusion as to which ones to pay and not." *Id.* (144:13-145:17). Greenberg even directed Leland not to pay the end of year payroll taxes. *Id.* (662:7-8).

Pelissier's role was "to be the interface between certain operating companies and Lynn [Tilton]" and Leland "dealt with [Leland] most directly on a day-to-day basis." Leland

reported "to or through [Pelissier]" and had "inconsistent direct communication with Lynn Tilton" *Id.* (46:11-25). Pelissier himself indicated that his role was to "advise the management team." Exhibit 3 (Pelissier Dep. Tr. 14:3-6). As part of his role, Pelissier also visited TransCare's customers on TransCare's behalf. (Pelissier 92:1-23).

Leland understood that he "had to follow Mr. Pelissier's guidance" as well as the instructions of Randy Jones. Exhibit 2 (Leland Dep. Tr. I 47:2-25). He also had to follow the instructions of Brian Stephen, and Michael Greenberg. *Id.* (49:12-51:20). Greenberg and Pelissier had to approve Leland's presentations before he could even show them to TransCare's board of Lynn Tilton. Exhibit 2 (Leland Dep. Tr. I 74:13-18).

Lynn Tilton herself would weigh in on operational decisions such as purchasing and selling individual vehicles and medical devices. Exhibit 4 (Greenberg Dep. Tr. 147:10-21); Exhibit 2 (Leland Dep. Tr. I 81-82); Exhibit E (PPTC00002265).

Further, Patriarch employee John Pothin "would direct the portfolio companies on HR initiative." He communicated regularly with TransCare's HR department and directed them on HR decisionmaking and had also had a hand in drafting TransCare's HR policies. Exhibit 2 (Leland Dep. Tr. II 666:8-667:16; 729:10-18).

Patriarch employee Brian Stephen reviewed all TransCare legal contracts. Leland Dep. Tr. I: 51:7-20. He advised Leland that he needed the approval of the Board before entering into any substantive discussions about sales of TransCare. Exhibit 5 (Stephen Dep. Tr. 86:6-9.)

Greenberg and Pelissier often worked from TransCare's offices and Mr. Pelissier would sit in Leland's office to work. This occurred on an almost daily basis towards the end of

Leland's tenure when TransCare was close to shutting down.  Exhibit 7 (Leland Dep. Tr. II 724:16-725:8).

Wells Fargo's John Husson testified that "TransCare's operating team, the management team was not adequately empowered to make decisions" and "every single meaningful" and even "insignificant decisions ran straight up the pole to the board," i.e., Lynn Tilton, "[s]o all the decisions relative to most everything, things that your would think were mundane, had to be approved by her." Exhibit 8 (Husson Dep. Tr. I 43:2:16).  This level of control was not seen in Wells Fargo's other clients and "it was a constant complaint that we received directly from the managers of her companies that they just couldn't do anything" it "all circled back to her [Lynn Tilton]" *Id.*  (44:3-23).

> **REPLY:**  Non-Debtor Defendants' SOF No. 4 is **undisputed**.  Plaintiffs' lengthy arguments, inadmissible hearsay,[7] unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to the SOF No. 4.  It is undisputed that Jean Luc Pelissier was a Patriarch Partners Management Group employee.  (Non-Debtor Defendants' SOF No. 18.)  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 4.

5.   Named Plaintiff Shameeka Ien ("Ien") began working for TransCare in June 2013.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 35:10-36:19.)

Plaintiffs' Response:  **UNDISPUTED**

6.   During her employment with TransCare, Ien received directives from the CFO of TransCare and worked on a daily basis with other TransCare employees.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 11:19-21, 46:23-47:7, 53:2-13, 70:4-7.)  Ien did not receive instruction directly or indirectly from any of the Non-Debtor Defendants, nor did she communicate with any of them.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 28:18-31:22.)

---

[7] *See, e.g.,* Declaration of Nicole Eichberger ("Eichberger Decl."), Ex. TTT, Leland Tr., 685:6-686:19 (admitting that he (Leland) did not have personal knowledge of whether Pothin was involved in drafting HR policies at TransCare).

Plaintiffs' Response: **UNDISPUTED**

7.   Ien received her paystubs from TransCare. (Eichberger Decl., Ex. D Ien Dep. Tr. 60:4-61:20; 62:9-11; Ex. S, P000022-23.)

Plaintiffs' Response: **UNDISPUTED**

8.   Ien, as well as employees of TransCare's finance, payroll, billing, and customer service departments, continued to work for TransCare after certain subsidiaries of TransCare filed for Chapter 7 bankruptcy on February 24, 2016. (Eichberger Decl., Ex. D, Ien Dep. Tr. 36:22-39:8.) Ien ceased to work for TransCare in or about the first week of March 2016. (*Id.* 36:22-37:2.)

Plaintiffs' Response: DISPUTED

The Chapter 7 Trustee testified that only two to three employees remained at TransCare to assist him – Wells Fargo hired certain former employees in order to assist them in collecting receivables. (LaMonica I 30:19-31:21; 33:3-6; 35:19-36:19)

> **REPLY:** Non-Debtor Defendants' SOF No. 8 is **undisputed**. Plaintiffs' inadmissible hearsay, mischaracterized testimony, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 8. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 8.

9.   Ien collected her final paycheck from Anasha Ally, an employee of TransCare, in the lobby of the TransCare office building in March 2016. (*Id.* 78:24-79:22.)

Plaintiffs' Response: DISPUTED IN PART

While **Ms. Ien did testify that she collected a paycheck from Anasha Ally in March**, there is no documentary evidence that Ms. Ien collected a *TransCare* paycheck in March of 2016 as is implied. Rather, Ms. Ien's records reflect that her last TransCare paycheck was received February 19, 2016. Exhibit 9 (P000160-72). Her gross pay of $5,653.83 reflected on her 2016 W-2 from TransCare, Exhibit 10 (P000176), is identical to the year

to date pay amount reflected on her February 19, 2016 paystub. Exhibit 11 (P000023).

Ms. Ien began other employment in March of 2016 for which she received subsequent

paychecks commencing March 31, 2016. *See* Exhibit 12 (Ien Dep. Tr. 83-84); Exhibit 9

(P000160-172).

> **REPLY:** Non-Debtor Defendants' SOF No. 9 is **undisputed**. Plaintiffs'
> extraneous unsupported statements and implications are impermissible under
> Local Rule 7056-1 and immaterial to SOF No. 9.[8] Discovery has closed, and
> Plaintiffs have produced no evidence to dispute SOF No. 9.

10.    Ien's 2016 W-2 was issued by Debtor Defendant TransCare New York, Inc. (Eichberger

Decl., Ex. U, P000176; Ex. F, LaMonica Dep. Tr. 45:18-46:6.)

Plaintiffs' Response: DISPUTED IN PART

The evidence shows that **Ien received *a* 2016 W-2 issued by TransCare New York, Inc.**

It does not show that it was the only W-2 she received for 2016 as may be implied.

> **REPLY:** Non-Debtor Defendants' SOF No. 10 is **undisputed**. Plaintiffs'
> extraneous unsupported statements and implications are impermissible under
> Local Rule 7056-1 and immaterial to SOF No. 10. Discovery has closed, and
> Plaintiffs have produced no evidence to dispute SOF No. 10.

## II.    TRANSCARE AND NON-DEBTOR ENTITY DEFENDANTS

11.    Tilton's business model is to acquire companies that are on the brink of liquidation, provide

them with funding (in the form of secured loans) to support current operations, and then

restructure them, increasing their value for future sale or for long-term continued

operations. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 53:16-54:15.)

Plaintiffs' Response: DISPUTED IN PART

---

[8] Plaintiffs' employment by non-parties is not relevant. Further, Plaintiff's Exhibit 9 is inadmissible evidence to
support Plaintiffs' assertions, as it contains no identifying information and has never been verified or authenticated;
therefore, it should be stricken. *See*, *e.g., In re Indesco Int'l, Inc*., 451 B.R. 274, 307 (Bankr. S.D.N.Y. 2011).

Ms. Tilton's testimony provides only a partial picture of her business model which also includes, for example, collecting interest and management fees from companies even when they cannot afford to pay payroll *See* ¶¶ 118; 127; 132; 135; 136; 154; 170. Moreover, her business model includes unusually close control over the operations of portfolio companies. *See* ¶¶ 4,13. Additionally, as part of her business model, TransCare paid Patriarch entities interest payments, agency fees, and advisory fees. Exhibit 4 (Greenberg Dep. Tr. 38:13-15.). A representative diagram of Ms. Tilton's business model is included in this submission. Exhibit 13.

> **REPLY:** Non-Debtor Defendants' SOF No. 11 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 11.[9] Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 11.

12.   During the calendar year 2015 through February 24, 2016, Tilton served as TransCare's sole Director. (Eichberger Decl., Ex. O, Transcript of Hearing re: 341 Meeting (*In re TransCare Corporation*, 16-10407-smb) (the "341 Tr."), 6:13-20, 8:1-4; Ex. I, Stephen Dep. Tr. 25:17-21; Declaration of Lynn Tilton ("Tilton Decl.") ¶ 1.)

Plaintiffs' Response: **UNDISPUTED**

13.   TransCare adopted an "Authority Matrix" pursuant to which certain major decisions were required to be approved by TransCare's sole Director; other decisions involving the ordinary course operations and day-to-day decision management were made by TransCare's Management Team. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 22:8-23:2;

---

[9] Further, Plaintiffs' Exhibit 13 is inadmissible evidence as it is a demonstrative exhibit that was not produced in discovery and has never been verified or authenticated. *See, e.g., Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 AJN, 2015 WL 1402049, at *21 (S.D.N.Y. Mar. 25, 2015)).

146:6-21; Ex. H, Pelissier Dep. Tr. 43:21-45:16; Ex. V, TRANSCARE00024172-24175; Ex. M, Leland Dep. Tr. 673: 2-674:12.)

<u>Plaintiffs' Response</u>:  DISPUTED IN PART

**It is undisputed that Tilton put in place an Authority Matrix.**  However, it is disputed that only major decisions had to be made by the director according to the Authority Matrix. Rather, as is evident from the document and the testimony of Glenn Leland, Ms. Tilton and Patriarch employees controlled minute details of TransCare's operations.  *See* ¶ 4.

**The Authority Matrix required authority of the Board to undertake any layoff that "could reasonably be expected to require analysis under the federal WARN or similar state or local laws."** (Eichberger Decl., Ex. V).

The Authority Matrix dramatically constrained the ability of TransCare's executives including its CEO to make day-to-day moves for the operations of the business as described below.

Leland had to consult with Patriarch employees to even determine what authority he was left with under the authority matrix and it "created a mechanism whether it was inability to take independent action, constant dialogue about minor details" where Leland could not take independent action.  Exhibit 2 (Leland Dep. Tr. I 107:18-108:6).  CEO Glenn Leland had substantial experience as an executive in the ambulance industry and had served at the c-level in numerous companies.  *Id*. (10-40).

He characterized the involvement of Ms. Tilton in decision making as unique in his experience because in his experience at prior ambulance companies and as a C-level executive, he had never seen a company run by a "single board member that isn't communicative with management" and he had not experienced a situation where he was

not allowed "to understand the lending structure of the organization. Exhibit 7 (Leland Dep. Tr. II 595:9-596:2). Additionally, he complained at the time that "[m]any company's management would be expected to manage details and propose the solutions but it is different at Patriarch" because Ms. Tilton had a "very directive style." *Id.* (600:14-601:13). Leland was required to follow the instructions of Patriarch's employees as if "anything that any of us [Patriarch employees] told us it's as though Lynn Tilton is telling us" even though he could not tell when they actually even had a discussion with her beforehand about that topic and it was his belief that they would direct him even when they had not discussed the issue with Ms. Tilton. "[I]t was hard to tell what had been communicated to Ms. Tilton and specifically was as though she was saying it through them, and what was their judgment or decision about what to say. Because they used the power of representing her on a continual basis." *Id.* (668:14-672:8).

When communicating with Lynn Tilton, Patriarch employees did not distinguish between her roles other than inferring the role she was acting in from the content of the conversation. Ms. Tilton did not identify what role she was acting in in her communications other than those times when board approval was explicitly being sought. Exhibit 4 (Greenberg Dep. Tr. 35:16-25; 214:18-216:19.)

However, TransCare's Board did not typically speak through resolutions. Rather it was almost always verbal communications. Exhibit 7 (Leland II 724:6-15).

At one point when Leland was seeking to sell TransCare assets to improve the company's future performance, Ms. Tilton told Leland not to try to sell her "expletive company" and threw him out of her office. Exhibit 2 (Leland I 97:13-98:20).

When Leland submitted his resignation letter he did so because he felt that every plan he was submitting was being rejected and he didn't have the power to do anything. Exhibit 7 (Leland Dep. Tr. II 664:22:666:6).

There was never a designated executive or approved plan under the Authority Matrix (which would have allowed more control on the TransCare management level as opposed to requiring Director approval of actions). Exhibit 2 (Leland Dep. Tr. I 79:25-80-6). Because of this "every decision went to the board because there was no authority to carry out any decisions. There was -- there were 11 separate plans submitted by [Leland's] administration, none of which were either approved or rejected." *Id.* (84:9-16).

Despite Ms. Tilton's insistence on involvement in all sorts of decision making at TransCare, she did not hold formal board meetings. Exhibit 6 (Stephen Dep. Tr. 69:21-70:2.) She only allowed the CEO to interact with her "at her request" and Pelissier told Leland that he "was not to not to directly communicate with Lynn Tilton under any circumstance, for us to communicate with him, and that she would let me know if she wanted to talk or e-mail or have me come to a meeting." Exhibit 2 (Leland Dep. Tr. I 82:14-83:25).

Wells Fargo's John Husson testified that management "had to go to the Board for any type of approvals" and it became an "exercise in frustration and futility" for management and the bank. Exhibit 8 (Husson Dep. Tr. II 21:18-22:15).

Additionally, by the time Carl Marks Advisory Group ("Carl Marks") came on board, "the company didn't [] have a C-suite of executives filling the role . . . of oversight and management of the company." The company only had a single officer at that time and it was Mr. Wolf who was not qualified for the role. Landeck Dep. Tr. 40:4-44:5. Carl Marks

was told by Patriarch that "JL [Pelissier] was assuming those [CEO] responsibilities with or without portfolio." Exhibit 14 (PPTC00017877).

> **REPLY:** Non-Debtor Defendants' SOF No. 13 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 13. The Authority Matrix, attached as Ex. V to Non-Debtor Defendants' SOF, speaks for itself and is the best evidence as to its content. It is undisputed that Jean Luc Pelissier was a Patriarch Partners Management Group employee. (Non-Debtor Defendants' SOF No. 18.) Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 13.

A.     **Patriarch Partners Supported Tilton in Her Role as TransCare's Sole Director and Served as Collateral Manager for Certain Lenders.**

14.     Tilton is the CEO of Patriarch Partners and was the CEO during the Statutory Periods. (Tilton Decl. ¶ 1.) Patriarch Partners supported Tilton in her role as TransCare's sole Director. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 10:5-8.)

Plaintiffs' Response: DISPUTED IN PART

**It is undisputed that Tilton was the CEO of Patriarch Partners during the relevant period.**

It is disputed that Patriarch Partners supported Tilton in her role as TransCare's sole director. In fact, Patriarch Partners employees did far more than merely support Lynn Tilton as director and it was difficult for TransCare employees to determine if Patriarch employees were acting of their own accord or following specific instructions of Ms. Tilton when. *See* ¶ 4.

> **REPLY:** Non-Debtor Defendants' SOF No. 14 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their prior response to SOF No. 4), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 14.[10] Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 14.

---

[10] Further, Plaintiffs' final sentence is incomplete.

15.     In addition, Patriarch Partners performed collateral management duties and functions for certain secured lenders to TransCare including Zohar CDO 2003-1, Limited, Zohar II 2005-1 Limited, and Zohar III Limited (collectively, the "Zohar Funds").[11] (Tilton Decl. ¶ 9.)   As part of these collateral management duties, Patriarch Partners monitored and managed certain secured loans made to TransCare, including, but not limited to, the loans made by the Zohar Funds.  (*Id.*; Eichberger Decl., Ex. O, 341 Tr. 50:17-51:6.)

Plaintiffs' Response:  **UNDISPUTED**

16.     Patriarch Partners does not own any equity in TransCare and is not TransCare's corporate parent.  (Eichberger Decl., Ex. O, 341 Tr. 26:19-27:19; *In re TransCare Corporation, et al.*, Case No. 16-10407, Dkt. No. 132.)

Plaintiffs' Response:  DISPUTED IN PART

        Although **Patriarch Partners did not technically own TransCare**, Lynn Tilton was the ultimate owner of both TransCare and Patriarch Partners.  *See* ¶¶ 100-103.   Further, TransCare and Patriarch Partners held themselves out as being in a parent subsidiary relationship and that is how it was referred to within TransCare.  Patriarch employees and Lynn Tilton told Leland that they were the sole equity owner of TransCare.  Exhibit 2 (Leland Dep. Tr. I 41:5-42:13.  The MTA and other customers "referred to Patriarch Partners as TransCare's Parent" and TransCare typically referred to Patriarch Partners in that way.  *Id.* (87:19-88:19).

        **REPLY:**  Non-Debtor Defendants' SOF No. 16 is **undisputed**.  Plaintiffs' lengthy arguments,[12] inadmissible hearsay, unsupported statements and implications are

---

[11] Patriarch Partners resigned as a collateral manager of the Zohar Funds as of March 3, 2016.  (Dk. 111, Tilton Decl. ¶ 9.)

[12] Plaintiffs' impermissible legal argument in response to Non-Debtor Defendants' SOF No. 16 is also wrong as a matter of law.  As set forth in Non-Debtor Defendants' Reply Brief in Support of Their Motion for Summary

impermissible under Local Rule 7056-1 and immaterial to SOF No. 16. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 16.

17.  Certain Patriarch Partners employees were responsible for supporting Tilton in her role as TransCare's sole Director, as well as her roles at other companies (Eichberger Decl., Ex. A, Tilton Dep. Tr. 10:5-8, 15:24-16:3), including the following individuals:

a.  Brian Stephen ("Stephen"), Senior Director, Legal (Eichberger Decl., Ex. I, Stephen Dep. Tr. 8:14-9:8.)  Stephen provided advice and counsel to the Board of TransCare.  (*Id.* 22:6-16, 30:11-14, 52:3-12.)

b.  Michael Greenberg ("Greenberg"), Director of Portfolio Management. (Eichberger Decl., Ex. B, Greenberg Dep. Tr. 10:18-23, 12:15-13:7; Ex. C, Husson Dep. Tr. 93:22-24, 112:3-9.)

c.  W. Randall "Randy" Jones ("Jones"), Managing Director. (Eichberger Decl., Ex. E, Jones Dep. Tr. 62:11-16; 78:4-17, 90:11-24.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed above ¶¶ 4, 13 Patriarch employees did more than simply support Tilton in her role as TransCare's sole director.

REPLY:  Non-Debtor Defendants' SOF No. 17 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 4, 13), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 17.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 17.

18.  Tilton was also supported by Jean Luc Pelissier, an employee of non-party Patriarch Partners Management Group, LLC ("PPMG").  PPMG and TransCare were parties to a Management Services Agreement pursuant to which PPMG provided various services to

_____

Judgment, as a matter of law, there is no such thing as a "constructive parent." *See Protectoseal Co. v. Barancik,* No. 72 C 0079, 1993 WL 376636, at *4 (N.D. Ill. Sept. 3, 1993), *aff'd*, 23 F.3d 1184 (7th Cir. 1994).

TransCare.  (Eichberger Decl. H, Pelissier Dep. Tr. 11:15-12:13; Ex. W, PPTC00003305-21.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed above ¶¶ 4,13, Patriarch employees did more than simply support Tilton in her role as TransCare's sole director.

> **REPLY:** Non-Debtor Defendants' SOF No. 18 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 4, 13), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 18.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 18.

19.  Certain Patriarch Partners employees also supported Tilton in her role as TransCare's sole Director in the hiring of high level executives such as the CEO and CFO.  (Eichberger Decl., Ex. E, Jones Dep. Tr. 22:7-23:21.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed above ¶¶ 4,13, Patriarch employees did more than simply support Tilton in her role as TransCare's sole director and Patriarch employee John Pothin directed TransCare's HR on a regular basis and was involved in drafting HR policies at TransCare.

> **REPLY:** Non-Debtor Defendants' SOF No. 19 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 4, 13), inadmissible hearsay,[13] unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 19.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 19.

20.  Some of these Patriarch Partners employees also supported Tilton with respect to collateral manager duties, which included managing the loans made to TransCare and other "portfolio companies" by various investment vehicles owned and managed by Tilton.

---

[13] *See, e.g.,* Eichberger Decl., Ex. TTT, Leland Tr., 685:6-686:19 (admitting that he (Leland) did not have personal knowledge of whether Pothin was involved in drafting HR policies at TransCare).

(Eichberger Decl., Ex. O, 341 Tr. 29:1-3; 51:5-7; Ex. L, Greenberg Dep. Tr. (*LaMonica v. Tilton.*, Adv. Proc. No. 18-01021) 54:23-55:8; Ex. N, Whalen Dep. Tr. 8:15-10:5; 97:19-100:24.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed above ¶¶ 4,13 Patriarch employees did more than simply support Tilton in her role as TransCare's sole director.  Plaintiff further disputes this statement as it is vague to the extent it implies that Patriarch employees served this role in support of Ms. Tilton as Director of TransCare.  Support for Ms. Tilton in this role would clearly not have been in her role as Director of TransCare as the purpose was to manage the loans made to TransCare by Ms. Tilton as the lender, not the recipient.

> **REPLY:**  Non-Debtor Defendants' SOF No. 20 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 4, 13), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 20.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 20.

21.   Patriarch Partners had no role in negotiating TransCare's collective bargaining agreements, did not draft or otherwise develop employee handbooks or employment policies for TransCare, and did not process payroll for TransCare.  Patriarch Partners had its own bank accounts, tax returns, tax ID numbers, and auditing and accounting processes, and did not share any of them with TransCare.  (Tilton Decl. ¶ 8.)

Plaintiffs' Response:  DISPUTED

As indicated in response to ¶ 4, there is evidence that Pothin, a Patriarch employee, was involved in developing TransCare's HR policies and the operations of TransCare's HR.

> **REPLY:**  Non-Debtor Defendants' SOF No. 21 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their prior response to SOF No. 4),

> inadmissible hearsay,[14] unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 21. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 21.

22.     Neither Ien nor any member of the WARN Class, NY WARN Sub-Class, or the Wage Class received a pay stub from Patriarch Partners. (Eichberger Decl., Ex. D, Ien Dep. Tr. 60:4-61:20, 62:9-11; Ex. S, P000022-23.)

Plaintiffs' Response:  DISPUTED

The evidence presented does not support the proposition that none of the class members ever received a pay stub from Patriarch Partners.

> **REPLY:**  Non-Debtor Defendants' SOF No. 22 is **undisputed**. Plaintiffs' unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 22. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 22.

### B.     AIP II Provided Occasional Secured Loans to TransCare.

23.     AIP II is one of Tilton's personal investment funds; Tilton served as its manager. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 10:2-3.)

Plaintiffs' Response:  **UNDISPUTED**

24.     AIP II made secured loans to TransCare. (*See id.* 10:2-4, 11:21-12:2.)

Plaintiffs' Response:  **UNDISPUTED**

25.     AIP II had no employees. (Tilton Decl. ¶ 6.)

Plaintiffs' Response:  **UNDISPUTED**

26.     AIP II has a *de minimis* equity interest, approximately 5.6%, in TransCare. (Joint Pretrial Order, ¶, 9 (*LaMonica v. Tilton*, Adv. Proc. No. 18-01021), Dkt. No. 85.)

Plaintiffs' Response:  DISPUTED IN PART

---

[14] *See, e.g.,* Eichberger Decl., Ex. TTT, Leland Tr., 685:6-686:19 (admitting that he (Leland) did not have personal knowledge of whether Pothin was involved in drafting HR policies at TransCare).

Plaintiff disputes Patriarch's characterization of the equity interest as *de minimis*. That is not a statement of fact.

> **REPLY:** Non-Debtor Defendants' SOF No. 26 is **undisputed**. Plaintiffs are wrong; pursuant to Rule 7007.1 of the Federal Rules of Bankruptcy Procedure, a corporation that is party to an adversary proceeding need only identify any corporation that directly or indirectly owns 10% or more of any class of the corporation's equity interest and anything less than 10% is considered *de minimis*. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 26.

27. Ien never communicated with anyone from AIP II. (Eichberger Decl., Ex. D, Ien Dep. Tr. 28:18-31:22.) Neither Ien nor any member of the WARN Class, NY WARN Sub-Class, or the Wage Class received a pay stub from AIP II. (Eichberger Decl., Ex. D, Ien Dep. Tr. 28:18-31:22, 62:21-23; Ex. S, P000022- 23.)

Plaintiffs' Response: DISPUTED

The evidence presented does not support the proposition that none of the class members ever received a pay stub from Patriarch Partners. Moreover, in the cited testimony, Ms. Ien only indicated that she was not sure if she ever communicated with anyone from AIP II, not that she had not had such communications.

> **REPLY:** Non-Debtor Defendants' SOF No. 27 is **undisputed**. Plaintiffs' unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 27.[15] Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 27.

**C.     TransCare Had No Relationship with Patriarch III During the Statutory Class Periods.**

---

[15] Here, and throughout their response, Plaintiffs attempt to argue what can and cannot be imputed to the stipulated class and subclasses. Plaintiffs moved for class certification with Ien as the sole class representative. Dkt. 46. During discovery any evidence produced or provided by Ien was not just on behalf of herself but the class and subclasses as a whole. Further, Non-Debtor Defendants propounded discovery on Ien, requesting all evidence in her position and that of the class and subclasses. Plaintiffs produced a mere 198 pages of documents, and tellingly none of them are cited in support of their responses to Non-Debtor Defendants' SOF No. 27.

28.     Patriarch III was previously the collateral manager for AIP II when it was a private investment fund with outside investors, but no longer functions in that, or any other, role. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 10:5-14, 16:4-8.)  Tilton served as manager of Patriarch III.  (Tilton Decl. ¶ 1.)

Plaintiffs' Response:  **UNDISPUTED**

29.     During the Statutory Class Periods, Patriarch III was, and still is, a limited partner in AIP II.  (Dkt. No. 16.)

Plaintiffs' Response:  **UNDISPUTED**

30.     Patriarch III had no relationship with TransCare in 2015 or 2016. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 16:4-8.)

Plaintiffs' Response:  DISPUTED

As indicated above in ¶¶ 23 and 29, AIP II owned a portion of TransCare and Patriarch III was, and still is, a limited partner in AIP II.  Accordingly, based on the undisputed facts, it does not follow that Patriarch III had no relationship to TransCare.

> **REPLY:**  Non-Debtor Defendants' SOF No. 30 is **undisputed**.  Plaintiffs' unsupported statements (including the incorporation of their prior responses to SOF Nos. 23 and 29), and implications, *i.e.*, Patriarch III had a *de minimis* indirect interest in TransCare, are impermissible under Local Rule 7056-1 and immaterial to SOF No. 30.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 30.

31.     Patriarch III had no employees.  (Tilton Decl. ¶ 7.)

Plaintiffs' Response:  **UNDISPUTED**

32.     Ien never communicated with anyone from Patriarch III.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 28:18-31:22.)  Neither Ien nor any member of the WARN Class, NY WARN Sub-Class, or the Wage Class received a pay stub from Patriarch III.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 28:18-31:22, 62:12-17; Ex. S, P000022- 23.)

<u>Plaintiffs' Response</u>:  DISPUTED

The evidence presented does not support the proposition that none of the class members ever received a pay stub from Patriarch III.  Moreover, in the cited testimony, Ms. Ien only indicated that she was not sure if she ever communicated with anyone from Patriarch Partners III, not that she had not had such communications.

> **REPLY:**   Non-Debtor Defendants' SOF No. 32 is **undisputed**.   Plaintiffs' unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 32.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 32.[16]

### D.    There Is No Entity Called "Ark CLO 2001-1, Limited."

33.    Ark CLO never existed and could not have had any relationship with TransCare or any of the Non-Debtor Defendants and/or Debtor Defendants.  (Tilton Decl. ¶¶ 3-5.)

<u>Plaintiffs' Response</u>:  DISPUTED IN PART

As noted below, Patriarch and Ms. Tilton and ARK CLO have been on notice from the inception of this lawsuit that ARK CLO was a defendant.  The mere fact of a scrivener's error in the Complaint does not eliminate ARK CLO from the lawsuit.

> **REPLY:**  Non-Debtor Defendants' SOF No. 33 is **undisputed**.   Plaintiffs' unsupported legal arguments are impermissible under Local Rule 7056-1 and immaterial to SOF No. 33.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 33 and have not sought to amend their Complaint in accordance with the Federal and Local Bankruptcy Rules.

34.    Since they filed their Answer (Dkt. No. 18), Non-Debtor Defendants have repeatedly informed Plaintiffs that Ark CLO never existed.  (Eichberger Decl., Ex. X, Non-Debtor Defendants' Responses to Plaintiffs' First Set of Interrogatories; *see, e.g.*, Dkt. Nos. 15, 18, 30, 60, 62, 64, 65, 68, 72, 86 n.1.)

---

[16] *See* fn. 15, *supra*.

<u>Plaintiffs' Response</u>:  DISPUTED IN PART

Defendants have routinely identified that ARK CLO was merely misnamed in the Complaint as ARK CLO 2001-1 LIMITED when it should have been named as ARK CLO 2000-1 LIMITED.  Accordingly, Defendants clearly had knowledge of the entity that was subject to this suite.

> **REPLY:**  Non-Debtor Defendants' SOF No. 34 is **undisputed**.  Plaintiffs' unsupported legal arguments are impermissible under Local Rule 7056-1 and immaterial to SOF No. 34.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 34 and have not sought to amend their Complaint in accordance with the Federal and Local Bankruptcy Rules.

35.    Ien never communicated with anyone from Ark CLO.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 62:18-20.)  Neither Ien nor any member of the WARN Class, NY WARN Sub-Class, or the Wage Class received a pay stub from Ark CLO.  (Eichberger Decl., Ex. D, Ien Dep. Tr. 62:18-20; Ex. S, P000022-23.)

<u>Plaintiffs' Response</u>:  DISPUTED

The evidence presented does not support the proposition that none of the class members ever received a pay stub from Ark CLO.  Moreover, in the cited testimony, Ms. Ien only indicated that she was not sure if she ever communicated with anyone from Ark CLO, not that she had not had such communications.

> **REPLY:**  Non-Debtor Defendants' SOF No. 35 is **undisputed**.  Plaintiffs' unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 35.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 35.[17]

---

[17] *See* fn. 15, *supra*.

III.    **THE RELATIONSHIP BETWEEN TRANSCARE AND ITS SENIOR LENDER, WELLS FARGO**

36.    Wells Fargo Bank, N.A. ("Wells Fargo") and TransCare entered into an asset-based lending ("ABL") agreement on or about October 13, 2006. (Eichberger Decl., Ex. Y, PPTC00020657-71.)

Plaintiffs' Response:  DISPUTED IN PART

This statement is only disputed because **the initial agreement was reached with Wells Fargo's predecessor Wachovia as reflected in the cited exhibit**.

> **REPLY:** Non-Debtor Defendants' SOF No. 36 is **undisputed**. Plaintiffs' immaterial additional information is **undisputed** by Non-Debtor Defendants.

37.    The ABL arrangement involved "an asset based loan for which the company could borrow against its inventory and receivables to use for working capital." (Eichberger Decl., Ex. A, Tilton Dep. Tr. 30:10-21; Ex. O, 341 Tr. 18:7-17.)

Plaintiffs' Response:  **UNDISPUTED**

38.    As the ABL lender, pursuant to terms of its credit agreement, Wells controlled the amount of cash available on a daily basis to TransCare. (Eichberger Decl., Ex. O, 341 Tr. 18:7-17; Ex. Z, PPTC00007436-47.)

Plaintiffs' Response:  DISPUTED

The availability of cash to TransCare was determined by a formula. Husson I 37:21-38:12.

> **REPLY:** Non-Debtor Defendants' SOF No. 38 is **undisputed**. Plaintiffs' reliance on inadmissible hearsay and mischaracterized[18] testimony is impermissible under Local Rule 7056-1 and immaterial to SOF No. 38. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 38.

---

[18] Plaintiffs mischaracterized the cited testimony. (*See* Eichberger Decl., Ex. UUU, Husson Tr., 39:19-41:10 (describing changes to the formula made unilaterally by Wells Fargo for unapplied cash made available by Wells Fargo).)

39. As part of the process of administering loans to borrower companies, including TransCare, Wells Fargo would work on a daily or weekly basis with executive management including CEOs and CFOs, to develop and acquire business plans and strategies and contribute to decisions related to retaining business advisors. (Eichberger Decl., Ex. C, Husson Dep. Tr. 109:18-111:12.)

Plaintiffs' Response: DISPUTED

As discussed above, ¶ 3, Leland and Bonilla were not employed by TransCare after on or about January 8, 2016. Mr. Husson testified that "when it came down to the wire at the end of December/January time frame our communication and our dialogue was primarily between ourselves, Mike Greenberg, Jean-Luc, and Lynn Tilton . . . there was really no senior officers left at the company towards the end." Exhibit 15 (Husson Dep. Tr. II 53:14-21). "[T]here was no management team, finance management team left at the end." Exhibit 8 (Husson Dep. Tr. I 122:13-123:8).

Further, Leland was not allowed to seek financing on his own even though he was the CEO. Only Patriarch Partners could seek financing for TransCare. Exhibit 2 (Leland Dep. Tr. I 76:16-78:23).

> **REPLY:** Non-Debtor Defendants' SOF No. 39 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their prior response to SOF No. 3), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 39. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 39.

40. TransCare's CEO and CFO had day-to-day communications with TransCare's primary contact at Wells Fargo. (Eichberger Decl., Ex. C, Husson Dep. Tr. 94:19-95:13.)

Plaintiffs' Response: DISPUTED IN PART

*See* Response to the preceding paragraph.

> **REPLY:** Non-Debtor Defendants' SOF No. 40 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 3, 39), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 40. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 40.

41.    The ABL agreement between Wells Fargo and TransCare was set to automatically renew on January 31, 2016. (Eichberger Decl., Ex. C, Husson Dep. Tr. 23:22-24:6; Ex. T, TRANSCARE00205383.)

Plaintiffs' Response:  **UNDISPUTED**

42.    On or about October 2, 2015, Wells Fargo issued a notice of intent to waive the automatic renewal of the ABL, and instead begin negotiating an entirely new agreement. (*Id.*)

Plaintiffs' Response:  **UNDISPUTED**

Plaintiff notes that the cited Exhibit T reflects that Wells Fargo needed to see a 2016 business plan before they would negotiate a new agreement.

> **REPLY:** Non-Debtor Defendants' SOF No. 42 is **undisputed**. Plaintiffs' note is impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 42. Ex. T to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 42.

43.    On December 22, 2015, Wells Fargo and TransCare entered into a "Forbearance Agreement and Amendment 12 to the Loan and Security Agreement" pursuant to which Wells Fargo agreed to forbear from exercising its rights and remedies under the Loan Agreement in connection with certain specified events of default. (Eichberger Decl., Ex. Y, PPTC00020657-71.)

Plaintiffs' Response:  DISPUTED IN PART

**Wells Fargo agreed to forbear from exercising its rights and remedies under the Loan Agreement in connection with certain specified events of default only until January 8, 2016.** *Id.* at 3.

**REPLY:** Non-Debtor Defendants' SOF No. 43 is **undisputed**. Plaintiffs' additional statement is immaterial to SOF No. 43 and **undisputed** by Non-Debtor Defendants. Ex. Y to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content. Further, Plaintiffs repeat this same fact in their own Statement of Additional Material Facts below, at ¶ 187. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 43.

## IV. EVENTS LEADING TO TRANSCARE'S CHAPTER 7 BANKRUPTCY

### A. TransCare Engages Carl Marks Advisors to Implement a Restructuring Plan, and TransCare's Lenders Continue to Provide Loans to It.

44. Wells Fargo demanded that TransCare retain a third party advisory firm acceptable to Wells Fargo in order to continue lending to TransCare. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 50:10-51:5.)

Plaintiffs' Response: DISPUTED IN PART

**It is not disputed that Wells Fargo made it a condition of further lending that TransCare retain a third party firm.** Husson testified that Lynn Tilton rejected the proposed advisors and instead requested that Carl Marks be approved, which it was. Exhibit 8 (Husson Dep. Tr. I 57:8-25).

**REPLY:** Non-Debtor Defendants' SOF No. 44 is **undisputed**. Plaintiffs' note is impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 44. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 44.

45. On or about January 7, 2016, with Wells Fargo's approval, TransCare retained the advisory firm of Carl Marks Advisors ("Carl Marks") to assist with the turnaround of TransCare. (Eichberger Decl., Ex. G, Landeck Dep. Tr. 9:5-15; Ex. AA, PPTC00020627-30; Ex. C, Husson Dep. Tr. 99:24-100:11, 101:6-16.)

Plaintiffs' Response: DISPUTED IN PART

Carl Marks served only as a CFO. *See* ¶ 46. Its initial task was to ensure the company would retain Workers Compensation insurance otherwise it could not continue to operate.

Exhibit 16 (Landeck Dep. Tr. 16:3-17). Carl Marks never served as the Chief Restructuring Officer for TransCare and it was not within Carl Marks' role to, e.g., calm customers or perform other CRO or CEO tasks – TransCare had no such executive. *Id.* (51:18-56:13).

> **REPLY:** Non-Debtor Defendants' SOF No. 45 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 46, which simply refers back to their response to SOF No. 45), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 45. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 45.

46. Carl Marks's objectives included establishing "a process to develop a strategic and operating plan for the business that would transform the business from what it was to something more successful." (Eichberger Decl., Ex. G, Landeck Dep. Tr. 23:3-12.)

Plaintiffs' Response:  DISPUTED IN PART

*See* response to preceding paragraph. Carl Marks did not serve as a CRO at any time.

> **REPLY:** Non-Debtor Defendants' SOF No. 46 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 46. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 46.

47. TransCare's formal agreement with Carl Marks Advisors (the "CM Agreement") provided for the provision of  various advisory services, including "providing and overseeing the implementation process of recommendations intended to manage, secure, [and] improve [TransCare's] financial performance and liquidity" and "[p]erform[ing the] normal duties of the position of TransCare CFO, including fulfilling reporting requirements of the Company's lenders; In conjunction with TransCare's CEO, oversee overall efforts to improve performance of the Company; Analyze the Company's financial and capital needs in detail . . . As necessary, refine the Company's 13-week cash flow forecasts to improve accuracy in forecasting liquidity." (Eichberger Decl., Ex. BB, PP-TRBK0043438-47; Ex. O, 341 Tr. 61:13-19.)

48. Under the CM Agreement, Carl Marks would "report directly to TransCare's Board of Directors . . . or its authorized representatives . . ." (Eichberger Decl., Ex. BB, PP-TRBK0043438-47.) The agreement further provided that Carl Marks "will provide Carl Landeck, a Managing Director to perform in the role of Interim Chief Financial Officer and provide the associated services therewith." (*Id.*)

Plaintiffs' Response: **UNDISPUTED**

49. Wells Fargo requested that TransCare provide budget plans from Carl Marks. (*See, e.g.,* Eichberger Decl., Ex. CC, PPTC00024869-72.)

Plaintiffs' Response: **UNDISPUTED**

50. During the period January 15, 2016, to January 29, 2016, Tilton authorized secured loans to TransCare from her personal investment vehicles, non-party Ark II CLO 2001-1 Limited ("Ark II") and Ark Angels II, LLC ("Ark Angels"). These lenders collectively loaned more than $2 million dollars to TransCare to support its operations. (Eichberger Decl., Ex. J, Tilton Dep. Tr. (*LaMonica v. Tilton.*, Adv. Proc. No. 18-01021) 256:16-260:3; Ex. DD, PP-TRBK0015413; Ex. EE, PP-TRBK004761516.)

Plaintiffs' Response: **UNDISPUTED**

51. On January 29, 2016, Wells Fargo and TransCare entered into another "Forbearance Agreement and Amendment No. 13 to the Loan and Security Agreement" with TransCare. (Eichberger Decl., Ex. Z, PPTC00007436-47).

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that **the Forbearance agreement was set to expire on February 5, 2016**. (Eichberger Decl., Ex. Z).

REPLY: Non-Debtor Defendants' SOF No. 51 is **undisputed**. Plaintiffs' additional statement is immaterial to SOF No. 51 and **undisputed** by Non-Debtor Defendants. Ex. Z to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.

**B.**     **Wells Fargo Agrees to Extend the ABL Agreement, and TransCare's Board, Management, Carl Marks and Wells Fargo Work on an Orderly Wind Down Plan.**

52.     On February 5, 2016, Wells Fargo and TransCare entered into another extension of the ABL, the "Forbearance Agreement and Amendment No. 14 to the Loan and Security Agreement." (Eichberger Decl., Ex. FF, WF00001360-70).

Plaintiffs' Response:  **UNDISPUTED**

Plaintiff notes that **the Forebearance agreement was set to expire on February 10, 2016**. (Eichberger Decl., Ex. FF).

REPLY: Non-Debtor Defendants' SOF No. 52 is **undisputed**. Plaintiffs' additional statement is immaterial to SOF No. 52 and **undisputed** by Non-Debtor Defendants. Ex. FF to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.

53.     Concurrently TransCare's sole Director, Patriarch Partners personnel who supported Tilton as TransCare's sole Director, the TransCare Management Team, Carl Marks and Wells Fargo worked together "on a day-to-day basis . . . on trying to analyze the company, contract by contract, entity by entity, to try to understand how to restructure it around the profitable contracts." (Eichberger Decl., Ex. O, 341 Tr. 36:15-37:10.) The purpose of the restructuring plan was to "to save as much of the company as possible, and to orderly unwind the unprofitable business." (Eichberger Decl., Ex. O, 341 Tr. 38:25-39:2.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed above, ¶¶ 4 and 13, Patriarch Partners personnel not only supported Ms. Tilton as TransCare's sole Director but also engaged in a variety of roles at TransCare.

Ms. Tilton stated intention of sav[ing] as much of the company as possible euphemistically describes a plan to also terminate all other employees. This statement is vague as to timing, but clearly her intentions evolved to terminate employees and not pay their wages as she ultimately filed a Chapter 7 and refused to pay wages that were already due. *See* ¶ 81.

> **REPLY:** Non-Debtor Defendants' SOF No. 53 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their prior responses to SOF Nos. 4, 13), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 53. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 53.

54. Wells Fargo, Carl Marks, TransCare, Tilton (in her capacity as TransCare's sole Director) and the Patriarch Partners employees assisting Tilton, participated in daily meetings and conducted extensive modeling in an effort to restructure TransCare. (Eichberger Decl., Ex. C, Husson Dep. Tr. 83:9-84:3, 120:21-122:7; Ex. G, Landeck Dep. Tr. 89:9-90:4; Ex. A, Tilton Dep. Tr. 76:21-77:8; 113:21-24.)

Plaintiffs' Response: DISPUTED IN PART

As discussed above, ¶¶ 4 and 13, Patriarch Partners personnel not only supported Ms. Tilton as TransCare's sole Director but also performed other tasks involving the direction of TransCare's operations. This statement is vague as to timing and the meaning of the word restructure. At some point, Ms. Tilton formed a plan to foreclose on TransCare's valuable assets (formed transcendence), and terminate the majority of TransCare employees without notice. *See* ¶¶ 81, 84.

> **REPLY:** Non-Debtor Defendants' SOF No. 54 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their prior response to SOF Nos. 4, 13), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 54. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 54.

55. Ultimately, Tilton developed a plan pursuant to which TransCare would be divided in two: (i) a new corporate entity would be formed, and would take over operation of certain

TransCare subsidiaries through an Article 9 foreclosure sale, and (ii) the remaining subsidiaries would be wound down in an orderly Chapter 11 bankruptcy. The entities in the new corporate entity were informally referred to as "NewCo," and the entities destined for bankruptcy and wind-down were informally referred to as "OldCo." (Eichberger Decl., Ex. A, Tilton Dep. Tr. 48:6-49:10; Ex. C, Husson Dep. Tr. 114:22-116:3.)

Plaintiffs' Response: DISPUTED IN PART

Husson testified that the situation "was very fluid and it was just a lot of stuff going on. . . .the plan was going to be to sell the company and then she did an abrupt change and she wanted to reorganize the company. . . [it] didn't seem that the financing needs [would] work. So then she decided to -- reorganize the company . . . through a bankruptcy . . . a decision was made by Patriarch . . . and do this transfer of assets from the company to Transcendence out of court." Exhibit 8 (Husson Dep. Tr. I 115:4-116:3)

The term orderly Chapter 11 is misleading as Carl Marks had developed a Chapter 11 plan that included terminations which would trigger WARN Act liability. Exhibit 17 (CM_TC2018_0009030). Further, Greenberg testified that the cost associated with a "full Chapter 11, just getting it through the Chapter 11 process was in the millions, and the feeling was that --that that cost and the time component would – wasn't the preferred option. Exhibit 4 (Greenberg Dep. Tr. 44:15-20).

> **REPLY:** Non-Debtor Defendants' SOF No. 55 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 55. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 55.

56. If NewCo could successfully commence operations, 700 TransCare jobs could be saved. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 69:14-25.)

Plaintiffs' Response: DISPUTED IN PART

This statement is misleading as it only presents half the picture. TransCare had 1800 employees.  *See* ¶ 241.  If 700 jobs were saved, 1100 would be eliminated.

> **REPLY:**  Non-Debtor Defendants' SOF No. 56 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of Plaintiffs' ASOF No. 241), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 56.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 56.

57.  Meanwhile, under the restructuring plan, the "911 and core business" would continue to operate as OldCo during a 90-day wind-down period in Chapter 11 Bankruptcy, until a full cessation of operations.  (Eichberger Decl., Ex. O, 341 Tr. 42:5-43:14; Ex. I, Stephen Dep. Tr. 116:25-118:7; Eichberger Decl., Ex. G, Landeck Dep. Tr. 124:23-125:24, 126:23-127:9; Ex. GG, CM_TC2018_0009030-33.)

Plaintiffs' Response:  DISPUTED IN PART

Landeck testified that the 90 day winddown period was contingent on there being DIP funding but nobody wanted to fund the DIP.  Absent DIP funding, there would be a winddown of 30 days.  Landeck 124:3-127:17.  This 30 day winddown planned by Carl Marks in the absence of funding included administrative WARN Act liability.  Exhibit 17 (CM_TC2018_0009030).

Husson confirmed that the problem with a long winddown was that the funding couldn't work out.  Exhibit 8 (Husson Dep. Tr. I 115:4-116:3).

On Febraury 9, 2016 Lynn Tilton emailed Kurt Marsden of Wells Fargo indicating that "[s]ince the payroll was blocked back in July, it has been a constant deterioration of customers, vendors and loss of employees.  I am trying to figure out if there is any path forward. . . . I know that John has continued to say you are willing to take the keys. . . we may just be at that point." Exhibit 18 (PPTC00024869 at 72).  Clearly Ms. Tilton was

contemplating filing a Chapter 7 and dumping all of TransCare at that point. Wells Fargo also noted that a forced wind down was one of the possibilities. *Id.* (at PPTC00024870)

Lynn Tilton wrote on February 15, 2016 that she would not fund a DIP and "no additional cash" would come from her and the parties she controlled. Exhibit 19 (CM_TC2018_0008781).

Husson also testified that Wells Fargo was not interested in funding anything other than a liquidation for OldCo. He indicated that it was Lynn Tilton's willingness to fund that would determine the nature of the bankruptcy. *See* ¶ 81.

> **REPLY:** Non-Debtor Defendants' SOF No. 57 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 57. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 57.

58.  The proposed 90-day wind-down period was intended to give OldCo employees "a chance to be picked up by others who would take those contracts, along with the ambulances," as well as allow a notice period for emergency customers and hospitals. (Eichberger Decl., Ex. A, Tilton Dep. Tr. 49:6-8.)

Plaintiffs' Response: DISPUTED

Planning reflects that the 90 day period was designed to collect receivables in an economical fashion. Exhibit 20 (PPTC00015671); Exhibit 21 (PPTC00027650 at 652).

As noted above, Carl Marks had planned a 30 day winddown in bankruptcy that included WARN Act liability triggering terminations of employees as the winddown was implemented. Exhibit 17 (CM_TC2018_0009030).

> **REPLY:** Non-Debtor Defendants' SOF No. 58 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 58. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 58.

59. On February 10, 2016, two new corporate entities were formed: Transcendence Transit, Inc. and Transcendence Transit II, Inc. (Eichberger Decl., Ex. HH, PPTC00014631-33; Ex. II, PPTC00025592-295; Ex. JJ, PP-TRBK0092232-34.)

Plaintiffs' Response: **UNDISPUTED**

60. Transcendence Transit, Inc. was formed to purchase from certain secured lenders of TransCare certain TransCare assets that were to be the subject of the Article 9 foreclosure sale, including TransCare's ambulance business subsidiaries operating in Pittsburgh and Hudson Valley, New York and the Access-A-Ride Paratransit Transportation Service Agreement between the MTA and TransCare New York, Inc., and (ii) Transcendence Transit II, Inc., a wholly-owned subsidiary of Transcendence Transit, Inc. was formed with the intention that it would assume the Access-a-Ride Paratransit Transportation Service Agreement and provide the services required under that agreement. (Joint Pretrial Order, *LaMonica v. Tilton*., Adv. Proc. No. 18-01021, Dkt. No. 85, ¶ 66(c); 113(d); 149; 155; 162.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff further notes that the "certain secured lenders" referenced were Tilton controlled entities such that Lynn Tilton was using her control to foreclose upon assets of TransCare and purchase those assets for Transcendence. *See* ¶¶ 205.

> **REPLY:** Non-Debtor Defendants' SOF No. 60 is **undisputed**. Plaintiffs' note is impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 60. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 60.

61. On that same day, Wells Fargo and TransCare agreed to enter into another "Forbearance Agreement and Amendment No. 15 to the Loan and Security Agreement." (Eichberger Decl., Ex. KK, PPTC00005859-69; Ex. LL, WF00001371-81.)

Plaintiffs' Response:  **UNDISPUTED**

Plaintiff notes that **the Forbearance Agreement was set to expire on February 11, 2016**.

> **REPLY:**  Non-Debtor Defendants' SOF No. 61 is **undisputed**.  Plaintiffs' additional statement is immaterial to SOF No. 61 and **undisputed** by Non-Debtor Defendants.  Exs. KK and LL to Non-Debtor Defendants' SOF speak for themselves and are the best evidence as to their content.

62.     Between on or about February 9 and 11, 2016, Carl Marks staff, Wells Fargo, and certain Patriarch Partners employees who were assisting Tilton, prepared, refined, and reviewed business models for both NewCo and the OldCo wind-down, working around the clock. (Eichberger Decl., Ex. O, 341 Tr. 54:1-15; Ex. C, Husson Dep. Tr. 83:9-84:3, Ex. MM, PP-TRBK0018166-69.)

Plaintiffs' Response:  DISPUTED IN PART

Plaintiff disputes this statement to the extent there is any implication that the Patriarch employees were assisting Tilton in her role as TransCare director alone.  Because Tilton was foreclosing on TransCare's assets on behalf of another entity and transferring those assets from TransCare to Transcedence which she controlled, *see* ¶ 104, Tilton and Patriarch employees were acting in the interest of those entities.

> **REPLY:** Non-Debtor Defendants' SOF No. 62 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of Plaintiffs' ASOF No. 104), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 62.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 62.

63.     Wells Fargo initially agreed to fund the OldCo wind-down pursuant to Chapter 11 of the Bankruptcy Code, if TransCare: (i) retained a Chief Restructuring Officer; and (ii) delivered to Wells Fargo by February 12, 2016 a wind-down budget that was acceptable to Wells Fargo.  As a further condition to providing wind-down funding Wells Fargo also required that TransCare's term loan lenders consent and agree to forbear from exercising

their rights and remedies against their first lien collateral on terms and conditions acceptable to Wells Fargo during the term of the extended financing agreements between Wells Fargo and TransCare.  (Eichberger Decl., Ex. NN, WF_TC_00005264-73.)

Plaintiffs' Response:  DISPUTED

The cited evidence does not reflect that Wells Fargo contemplated an OldCo/NewCo distinction and that OldCo would be wound down while NewCo would operate with assets that Tilton foreclosed on from OldCo.  Rather, one of the express terms is that "[t]he Term Loan lenders [i.e. Lynn Tilton and Patriarch entities and Credit Suisse] would need to consent and agree to forbear from exercising their rights and remedies" and "Term Loan Lenders may also be required to fund a portion of the budget." (*Id*. at WF_TC_00005273).

> **REPLY:**  Non-Debtor Defendants' SOF No. 63 is **undisputed**.  Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 63.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 63.

64.    Pursuant to the restructuring plan, TransCare intended to simultaneously (i) announce the orderly wind-down plan, and (ii) send notice to affected employees in accordance with the Worker Adjustment and Retraining Notification Act of 1988 ("WARN").  (Eichberger Decl., Ex. A, Tilton Dep. Tr. 140:12-22; Ex. B, Greenberg Dep. Tr. 96:17-24.)

Plaintiffs' Response:  DISPUTED

As indicated above, the term orderly wind down is vague and misleading.  Carl Marks had prepared a plan for a Chapter 11 wind down plan that included liability under the WARN Act.  *See* ¶ 56.

> **REPLY:**  Non-Debtor Defendants' SOF No. 64 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 56), inadmissible hearsay, unsupported statements and implications are impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 64.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 64.

65. On February 11, 2016, Wells Fargo and TransCare agreed to enter into another "Forbearance Agreement and Amendment No. 16 to the Loan and Security Agreement." (Eichberger Decl., Ex. OO, WF00001390-1400.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that **the Forbearance Agreement was set to end February 16, 2016**.

> **REPLY:** Non-Debtor Defendants' SOF No. 65 is **undisputed**. Plaintiffs' additional statement is immaterial to SOF No. 65 and **undisputed** by Non-Debtor Defendants. Ex. OO to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.

66. On February 14, 2016, Pelissier emailed a number of Patriarch personnel and TransCare executives concerning certain "action items" that would need to be reviewed with Tilton, including: (i) completing an Article 9 foreclosure; (ii) retaining bankruptcy counsel; (iii) establishing bank accounts for OldCo and NewCo; (iv) disseminating employment and benefits communications, including issuing WARN notices to all OldCo employees; and (v) securing insurance. (Eichberger Decl., Ex. PP, PP-TRBK0097614-22.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that no WARN notice was ever issued because Stephen directed that it be withheld. Ms. Tilton explained that she would not issue WARN notice because it would harm her interests in creating NewCo. *See* ¶ 223.

> **REPLY:** Non-Debtor Defendants' SOF No. 66 is **undisputed**. Plaintiffs' note, containing unsupported statements and implications are impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 66. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 66.

67. On February 16, 2016, Wells Fargo and TransCare agreed to enter into another "Forbearance Agreement and Amendment No. 17 to the Loan and Security Agreement." (Eichberger Decl., Ex. QQ, PPTC00005304-14.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that **the Forbearance Agreement was set to expire on February 19, 2016**.

> **REPLY:** Non-Debtor Defendants' SOF No. 67 is **undisputed**. Plaintiffs' additional statement is immaterial to SOF No. 67 and **undisputed** by Non-Debtor Defendants. Ex. QQ to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.

68. Tilton continued to communicate with Wells Fargo on February 16 and 17, 2016, concerning her team's work on plans for separating the TransCare business into a NewCo and OldCo, as well as providing Wells Fargo with various wind-down models. (Eichberger Decl., Ex. NN, WF_TC_00005264-73; Ex. RR, PP-TRBK0028179; Ex. SS, PPTC00024820-22; Ex. TT, PP-TRBK0052262.; Ex. UU, WF_TC_00004121-23; Ex. VV, PP-TRBK0097460.) Meanwhile, Carl Marks representatives Landeck and Mark Claster also reviewed and responded to proposed wind down models during this time. (Eichberger Decl., Ex. WW, CM_TC2018_0003083-87.)

Plaintiffs' Response: DISPUTED IN PART

The cited communications indicate that Ms. Tilton was not sure if she could even run Core and 911 for even 45/60 days. (Eichberger Decl., Ex RRR at PPTC00024821).

> **REPLY:** Non-Debtor Defendants' SOF No. 68 is **undisputed**. Plaintiffs' mischaracterization of Ex. RRR to Non-Debtor Defendants' SOF is impermissible pursuant to Local Rule 7056-1 and immaterial to SOF No. 68. Ex. RRR to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 68.

69. On February 18, 2016, Tilton spoke with Kurt Marsden of Wells Fargo. During the course of that conversation, Marsden informed her that Wells Fargo would like to find a joint solution to unwind TransCare "more gracefully," but that the company would continue on. (Eichberger Decl., Ex. XX, PP-TRBK0052107.)

Plaintiffs' Response: DISPUTED

This email actually states that the "company lives on another day." *Id.*

> **REPLY:** Non-Debtor Defendants' SOF No. 69 is **undisputed**. Plaintiffs' partial and inaccurate quote from Ex. XX to Non-Debtor Defendants' SOF is immaterial to SOF No. 69. Ex. XX to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 69.

70. On February 19, 2016, Tilton provided Wells Fargo with information about a potential Chief Restructuring Officer candidate. (Eichberger Decl., Ex. YY, PP-TRBK0074971-73.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that there is no evidence cited that TransCare ever retained a CRO.

> **REPLY:** Non-Debtor Defendants' SOF No. 70 is **undisputed**. Plaintiffs' unsupported note is impermissible under Local Rule 7056-1 and immaterial to SOF No. 70. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 70.

71. Later that same day, Wells Fargo circulated a draft term sheet and agreed to wire funds to cover $102,000 of critical needs and $450,000 to fund payroll. (Eichberger Decl., Ex. ZZ, WF_TC_00004187-90.)

Plaintiffs' Response: **UNDISPUTED.**

Plaintiff notes that the cited email chain also contains Tilton's statement "[l]et's hope we can stop the mass exodus of business" in reference to an earlier email in which she discussed the loss of two major contracts which she hoped to retain which she said "makes me highly concerned for the future." (Eichberger Decl., Ex. ZZ, WF_TC_00004187-90.)

> **REPLY:** Non-Debtor Defendants' SOF No. 71 is **undisputed**. Plaintiffs' partial quote from Ex. ZZ to Non-Debtor Defendants' SOF is immaterial to SOF No. 71. Ex. ZZ to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 71.

72. Wells Fargo's term sheet outlined the terms and conditions for the funding of a wind-down plan through May 31, 2016. The term sheet included a line item accounting for "Employee

WARN Notices." (Eichberger Decl., Ex. C, Husson Dep. Tr. 68:2-25; Ex. AAA, PPTC00011487-88.)

Plaintiffs' Response: **UNDISPUTED**

As noted, Carl Marks had been planning for a bankruptcy filing that would include WARN liability. *See* ¶ 56. WARN notice can be sent even if a full notice period is not given to the employees as a way to limit damages. Wells Fargo's counsel asked of Patriarch and TransCare bankruptcy counsel how long are employees to be paid in order not to incur WARN Act liability. Exhibit 22 (PP-TRBK0046279 at 280).

> **REPLY:** Non-Debtor Defendants' SOF No. 72 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 56), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 72. Furthermore, Plaintiffs repeat this same fact in their Statement of Additional Facts, ¶ 225, almost verbatim. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 72.

73. Between February 20-22, 2016, Tilton and the Patriarch team continued to work on models and shared the models with TransCare executives. (Eichberger Decl., Ex. BBB, PP-TRBK0044541-42; Ex. CCC, PPTRBK0052255-57; Ex. DDD, WF_TC_00000394-99.)

Plaintiffs' Response: DISPUTED IN PART

Patriarch only shared the model with with the TransCare employees so that they could use it to see the EBIDTA. Eichberger Decl. Ex. BBB. Tilton described it as a "***Patriarch proprietary model***" (Eichberger Decl. Ex. CCC (emphasis in original)).

> **REPLY:** Non-Debtor Defendants' SOF No. 73 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 73. Exs. BBB and CCC to Non-Debtor Defendants' SOF speak for themselves and are the best evidence as to their content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 73.

74. Tilton also continued to communicate regularly with Wells Fargo. (Eichberger Decl., Ex. CCC, PPTRBK0052255-57.)

Plaintiffs' Response: **UNDISPUTED**

75. Discussions between Tilton and Wells Fargo concerning models, term sheets and revised budgets continued throughout February 22, 2016. (Eichberger Decl., Ex. DDD, WF_TC_00000394-99, Ex. EEE, PP-TRBK0091126-29.)

Plaintiffs' Response: **UNDISPUTED**

Plaintiff notes that the cited evidence also includes Lynn Tilton stating that "every morning I am informed of new resignations and losses of contracts. It is difficult to motivate the team at this point and last week . . . it looked as if we were shutting down that evening." (Eichberger Decl., Ex. DDD).

Further, Wells Fargo indicated that "any ongoing funding decisions will be conditioned on receiving Patriarch's acknowledgement that that the terms/structure outlined in our Friday proposal are acceptable. We will also need to review the revised budget. *(Id.* at 396).

Further, Lynn Tilton states in the cited evidence Lynn Tilton indicates she will abandon Newco if things do not make sense to her and the current plan does not make sense. (Eichberger Decl., Ex. EEE).

> **REPLY:** Non-Debtor Defendants' SOF No. 75 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 75. Exs. DDD and EEE to Non-Debtor Defendants' SOF speak for themselves and are the best evidence as to their content. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 75.

76. The cash flow models for the 90-day wind-down period included line items accounting for WARN liability for the week ending May 13, 2016. (Eichberger Decl., Ex. FFF, PPTC00015671-72.)

Plaintiffs' Response:  **UNDISPUTED**

Plaintiff notes that this exhibit is dated February 15, 2016.  It is inserted non-chronologically – WARN notice was understood to be required.

> **REPLY:**  Non-Debtor Defendants' SOF No. 76 is **undisputed**.  Plaintiffs' unsupported statement and implication are impermissible under Local Rule 7056-1 and immaterial to SOF No. 76.  Ex. FFF to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 76.

### C.     Wells Fargo Unexpectedly Exits the ABL Arrangement.

77.     "Forbearance Agreement and Amendment No. 17 to the Loan and Security Agreement" expired on February 19, 2016.  Wells refused to extend the Agreement or enter into a further amendment.  Nevertheless, as described above, between February 20-22, 2016, Wells Fargo, Tilton and TransCare continued to have discussions regarding an orderly wind-down of TransCare.  (Eichberger Decl., Ex. QQ, PPTC00005304-14; Ex. O, 341 Tr. 42:18-23.)

Plaintiffs' Response:  DISPUTED IN PART

**It is not disputed that Wells Fargo refused to extend the forbearance.**  It is disputed that Wells Fargo's decision was in any way unexpected as reflected in the heading.  Further, Wells Fargo had put terms on continued funding.  *See* ¶ 74.

Further, as discussed in ¶ 81, at this point, Lynn Tilton was threatening Wells Fargo to file a liquidation and not an orderly winddown.

> **REPLY:**  Non-Debtor Defendants' SOF No. 77 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their responses to SOF Nos. 74, 81), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 78.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 78.

78.     These discussions continued on February 23, 2016.  (Eichberger Decl., Ex. O, 341 Tr. 42:18-23; Ex. HHH, PP-TRBK0051379-82.)

Plaintiffs' Response:  DISPUTED IN PART

As discussed in ¶ 81, at this point, Lynn Tilton was threatening Wells Fargo to file a

liquidation and not an orderly winddown.

> **REPLY:**  Non-Debtor Defendants' SOF No. 78 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 81), inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 78.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 78.

### D.    TransCare's Secured Lenders Issue a Notice of Default and Foreclose

79.    On February 24, 2016, several of TransCare's secured Lenders issued a Notice of Default

and Acceleration to TransCare.  (Eichberger Decl., Ex. III, PP-TRBK0043311-14.)

Plaintiffs' Response:  **UNDISPUTED**

Plaintiff notes that the entities that foreclosed on TransCare's assets were Tilton owned

and/or controlled entities as reflected by her signature for all of the entities on the cited

evidence.  (Eichberger Decl., Ex. III, PP-TRBK0043311-14.)

> **REPLY:**    Non-Debtor Defendants' SOF No. 79 is **undisputed**.    Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 79.  Ex. III to Non-Debtor Defendants' SOF speaks for itself and is the best evidence as to its content.    Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 79.

80.    That same day, TransCare and certain of its secured lenders executed a Notice of

Acceptance of Subject Collateral in Partial Satisfaction of Obligation.  (Eichberger Decl.,

Ex. JJJ, PP-TRBK0043305-14.)

Plaintiffs' Response:  **UNDISPUTED**

81.    Also on February 24, 2016, a Bill of Sale was executed pursuant to which Transcendence

Transit Inc. purchased certain former TransCare assets.  (Eichberger Decl., Ex. KKK,

PPTC00025607-12.)

Plaintiffs' Response:  **UNDISPUTED**

### E.    TransCare Files for Chapter 7 Bankruptcy.

82.    On the evening of February 24, 2016, notwithstanding its prior agreement to fund a wind

down pursuant to Chapter 11 of the Bankruptcy Code, it became clear to Tilton that Wells

Fargo "would no longer fund any additional money . . . unless it was a Chapter 7, but they

would fund a wind-down plan in a Chapter 7."  (Eichberger Decl., Ex. A, Tilton Dep. Tr.

78:11-16, 82:11-83:9.)

Plaintiffs' Response:  DISPUTED

Counsel for Wells Fargo advised the Court that Wells Fargo stopped funding because there

was no more availability under the asset based loan.  He indicated that prior to the

bankruptcy filing, Wells Fargo had conversations with counsel to Ms. Tilton in which

Tilton/NewCo refused.

**Once the negotiations fell apart, the next day, Lynn Tilton filed for Chapter 7. Exhibit**

**23 *(In Re TransCare*, 16-10407-smb, Doc. 29 pp. 27-30).**

As early as January 6, 2016, Lynn Tilton had written that if Wells Fargo put pressure on

her she would give them the "keys." Exhibit 24 (PPTC00027016 at 017).  On February 18,

2016, TransCare executed a Chapter 7 engagement letter with Curtis Mallet referencing its

previous chapter 11 engagement letter.  Exhibit 25 (PP-TRBK0047617).  On February 19,

2016, Lynn Tilton sent an email to Wells Fargo indicating she would not continue to work

with them.  Exhibit 26 (PP-TRBK0028097).  On February 21, 2017, she emailed that she

"had not heard back from the senior executives at Wells so my guess is that conversation

is over.  Exhibit 27 (PP- TRBK0051536).  Wells Fargo emailed on February 22 to indicate

that it would only continue to fund if Patriarch acknowledged the terms and structure of

46

Wells Fargo's proposal of February 19 (for ongoing funding and issuance of WARN notice). Exhibit 28 (PP-TRBK0044475). Lynn Tilton wrote in an email on February 23, 2016 at 4:02 PM that "we are freeing ourselves from Wells" at 4:34 she noted that "[t]his is a new company with no Wells. This is our attempt to manage the company better." Exhibit 29 (PPTC00027454). Finally on February 23, 2016 she wrote to Helfat and Fiorillo, Wells Fargo counsel, that "[t]his is heading into a Chapter 7 with a trustee and all parties will be out of control . . . the hiring of 700 people reduces the damages of this liquidation." Exhibit 30 (PP-TRBK0051379).

Husson testified that Wells Fargo understood a Chapter 7 filing to mean a liquidation. That the bank "knew we were going to have to liquidate in a Chapter 7 and we would have to, obviously, see who the trustee was or work with the trustee in some way to come up with a compensate plan and move forward, and that's what we did." Exhibit 8 (Husson Dep. Tr. I 81:19-24).

Wells Fargo had been planning for an in court restructuring. Their "belief was that they [Patriarch] were going to take certain assets of the company, profitable contract, MTA, . . .two or three contracts that were profitable, there were a handful of others that were not profitable. They were going to . . . separate the businesses in the bankruptcy -- in a bankruptcy, they were going to separate the businesses, and they were going to reorganize around NEWCO, and then they were going to dispose of; i.e., liquidate out of OLDCO. That was -- that was -- that was the contemplated plan. But it was going to be achieved in a Chapter 11, and it was going to be blessed by a bankruptcy judge, so on and so forth." Exhibit 15 (Husson Dep. Tr. II 75:24-76:18).

Wells Fargo did not want a process with an Article 9 foreclosure outside of bankruptcy. Husson testified that "we, my lawyers, were frightened of it, they didn't want anything to do with it, they thought it was just -- it was just something that was going to possibly result in all types of legal issues that could have caused problems for everybody, and it would be tangled and embroiled. Their strong recollection was -- they found it very objectionable. They found the whole thing very objectionable. And that my understanding was that term sheet that you -- that I just looked at was in furtherance of something that would happen inside of bankruptcy versus outside of bankruptcy." *Id.* (120:6-24).

Husson had advised that this out of court process was a bad idea as well. He was "dismissive" of it as a possible plan because it was "a crazy idea, they're trying -- trying to do this, it doesn't make sense, people are going to go crazy, you got notice provisions, you just can't do this outside of a bankruptcy, you've got all these issues to deal with. And they were – they didn't give the consideration, from my conversation, any light of day." *Id.* (124:22-125:21).

Wells Fargo was surprised by the Article 9 foreclosure on TransCare's assets and the fact that "the companies were filed and we found out about it, it was sort of done unilaterally . . . without any discussion of consideration give to us." The foreclosure was "a default under [their] agreement" and Wells Fargo did not give consent to it. *Id.* (82:3-83:8)

Critically, Husson indicated that if Lynn Tilton wasn't going to put in significant additional funding, then "the options within the bankruptcy were going to be self determined. In other words, if she was going to put in [a] million dollars and the company was going to have a runway, then perhaps we could have a discussion regarding a 363 sale" otherwise Wells would "self fund the liquidation" Exhibit 8 (Husson Dep. Tr. I 62:7-63:5).

Contrary to Ms. Tilton's testimony that Wells Fargo promised to fund a Chapter 7 winddown, on February 22, 2016 there was a call between Wells Fargo and Lynn Tilton and other Patriarch and TransCare employees during which it was discussed that $10 million would need to be put in and Wells Fargo would not fund that. Lynn Tilton advised that her relationship with Wells Fargo was over and she became hostile. Wells Fargo indicated that it was Lynn Tilton's obligation to make payroll and she disagreed. *Id.* (75; 77-80:25).

As noted, Wells Fargo understood that a Chapter 7 would mean a liquidation. *Id.* (81:19-24). Wells Fargo "funded the lion's share of the liquidation." Things were disorganized because, TransCare had been closed as a "a cold shut and there weren't too many people and that they had left trucks all over New York City" *Id.* (84:7-25).

Greenberg testified consistently that Wells Fargo had indicated that it "was not going to fund the final paycheck." Exhibit 4 (Greenberg Dep. Tr. 54:13-18). Husson also indicated that he did not remember any discussion regarding a proposal that "Wells Fargo pick up the payroll expense for the period ending February 26th, which was the end of at least one full payroll week" and that he would have recalled if that discussion took place. Exhibit 8 (Husson Dep. Tr. I 86:4-87:5). Wells Fargo, as an asset based lender, did not view itself as being required to extend cash to meet TransCare's payroll when TransCare did not have availability under the ABL formula. Exhibit 8 (Husson Dep. Tr. I 41:11-42:5.)

Carl Marks indicated that the filing of a Chapter 7 "was a surprise with respect to timing." Exhibit 16 (Landeck Dep. Tr. 137). Landeck also noted that the fact that there was no DIP financing available is what determined that there would be a Chapter 7 filing. *Id.* (134:13-135:12). After the filing of Chapter 7, Landeck testified that Wells Fargo and counsel

representing Lynn Tilton's interests met with the Trustee regarding the possibility of a 5 week plan to keep funding the Chapter 7 entities but could not come to a deal. *Id*. (140:21 -142:17). Once the parties could not come to an agreement, the Trustee begin the process of pulling ambulances off the streets. *Id.* (146:17-147:14).

Ultimately, during discussions after the filing, Wells Fargo was willing to fund some of the payroll for continuing operations of the then-filed debtors but ultimately, Patriarch and Lynn Tilton were unwilling to fund the full remaining amount and a $200,000 gap could not be closed. This caused the Trustee to shut down the Debtors' operations. Exhibit 31 (LaMonica Dep. Tr. II 24:2-25:10).

> **REPLY:** Non-Debtor Defendants' SOF No. 82 is **undisputed**. Plaintiffs' lengthy arguments, inadmissible hearsay,[19] unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 82. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 82.[20]

83. Based on Wells Fargo's representation that it would fund a wind down pursuant to Chapter 7, Tilton, "as the director of TransCare . . . authorized the company to file for a Chapter 7." (Eichberger Decl., Ex. A, Tilton Dep. Tr. 82:11-83:9; Ex. G, Landeck Dep. Tr. 137:11-15; Ex. C, Husson Dep. Tr. 81:2-24.)

Plaintiffs' Response: **DISPUTED**

*See* response to the preceding paragraph.

> **REPLY:** Non-Debtor Defendants' SOF No. 83 is **undisputed**. Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 82), inadmissible hearsay,[21] unsupported statements and implications are

---

[19] Plaintiffs' inadmissible hearsay evidence includes Plaintiffs' Exhibit 23, which is a transcript of a legal argument by Jonathan Helfat of Otterbourg, PC, counsel for Wells Fargo, and not deposition testimony. Plaintiffs' Exhibit 25 is an email regarding an engagement letter, but does not include the engagement letter itself.

[20] Plaintiffs' second sentence is incomplete.

[21] Notably, Plaintiffs' incorporation of their response to Non-Debtor Defendants' SOF No. 82 includes a citation Plaintiffs' Ex. 31, which is excerpted deposition testimony by LaMonica. In that excerpt, LaMonica testified that that

impermissible under Local Rule 7056-1 and immaterial to SOF No. 83. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 83.

84. On the evening of February 24, 2016, certain TransCare entities filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. (*In re TransCare Corporation, et al.*, Case No. 16-10407, Dkt. No. 1.)

Plaintiffs' Response: **UNDISPUTED**

85. As a result of Wells Fargo's sudden alteration to the initial orderly wind-down plan, TransCare was unable to send the WARN notices as originally planned. (*See* Eichberger Decl., Ex. A, Tilton Dep. Tr. 140:17-141:2.)

Plaintiffs' Response: DISPUTED

*See* response to paragraph 81 regarding the dispute as to whether Wells Fargo altered anything that impacted the decision on whether to file a sudden Chapter 7.

Additionally, WARN notice was not issued because Stephen and Tilton directed that they be withheld to protect Tilton and Patriarch's interests in starting NewCo, i.e., Transcendence. *See* ¶ 78.

As noted, Wells Fargo including sending WARN notice as a condition of their continued funding. *See* ¶ 224.

Moreover, Leland had requested to notify employees months earlier when WARN notice would have been more timely. *See* ¶ 151; 156. Patriarch directed Leland not to notify employees. Exhibit 7 (Leland Dep. Tr. II 647:2-5; 657:8-24).

Further, Patriarch and Tilton had drafted and contemplated sending WARN notice but elected not to well in advance of the ultimate terminations.

---

Wells Fargo was willing to fund the wind-down, at least partially, but ultimately an agreement on terms could not be reached, which is consistent with Non-Debtor Defendants' SOF No. 83. (*Id.*)

On February 8, 2016, Patriarch employee John Pothin circulated a "Downsizing Checklist" document that included a reference to the WARN Act.  Exhibit 32 (PP-TRBK 109705)

On February 12, 2016, Mr. Pothin circulated an email to other Patriarch employees attaching draft WARN notices. Exhibit 33 (PP-TRBK0099124).

On February 14, 2016, Patriarch employee and attorney Kevin Dell discussed the notice and indicated that "there should be input from outside counsel." Exhibit 34 (PP-TRBK0099106).

On February 16, 2016, Mr. Dell circulated a revised version of the WARN notice.  Exhibit 35 (PP-TRBK 0112379)

On February 17, 2016, Mr. Dell re-circulated draft WARN notices.  Exhibit 36 (PP-TRBK0099067)

On February 17, 2016, TransCare's bankruptcy counsel advised Patriarch employee and attorney Brian Stephen to send WARN notice, indicating that "it makes sense to provide WARN Notices to the employees ASAP." Exhibit 37 (PP-TRBK0094315)

Stephen ignored counsel's advice.  Instead he indicated that we "are prepared to issue the appropriate notices once we have more clarity on the timing of our plan going forward." *Id.*  He further noted that "once we provide notice, customers will continue to flee." *Id.*

Lynn Tilton indicated at 10:53 a.m. on February 19, 2016 that she would not send notice to TransCare's employees at that time because in her view, "[n]otice cannot be given prior to a foreclosure on NEWCO or there will be no NEWCO." Exhibit 38 (PP-TRBK0047828)

> **REPLY:**  Non-Debtor Defendants' SOF No. 85 is **undisputed**.  Plaintiffs' lengthy arguments, inadmissible hearsay,[22] unsupported statements and implications are

---

[22] Plaintiffs rely in part on deposition testimony provided by Leland.  However, Plaintiffs' earlier response to Non-Debtor Defendants' SOF No. 3 states that Leland was not employed in any capacity by TransCare at the time of the

impermissible under Local Rule 7056-1 and immaterial to SOF No. 85. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 85.

86.     That same day, after Tilton's review and approval, the TransCare Management Team distributed to certain employees communications on behalf of TransCare management. Plaintiff and the Trustee produced communications that were distributed: (i) to certain employees of the TransCare entities that were going to be wound down; and (ii) to certain employees who were intended to become employees of the Transcendence entities. (Eichberger Decl., Ex. LLL, P000094; Ex. MMM, TRANSCARE00231835; Ex. NNN, TRANSCARE00231836; Ex. OOO, TRANSCARE00231839; Ex. PPP, PP-TRBK0107389.)

Plaintiffs' Response:  DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees. Further, it does not reflect that Ms. Tilton approved or directed that the messages be drafted and sent, only that she indicated that "it reads fine but it is awfully sad." (Eichberger Decl., Ex. PPP).   Additionally, the employee communications were drafted by a Patriarch employee, Randy Jones who instructed TransCare to disseminate them.   Exhibit 39 (PPTC00012384-85); Exhibit 40 (PPTC00012386)

**REPLY:**   Non-Debtor Defendants' SOF No. 86 is **undisputed**.   Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 86. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 86.[23]

---

fact set forth in Non-Debtor Defendants' SOF No. 85, which makes Plaintiffs' attempt to create a dispute of fact on hearsay evidence even more incredulous.

[23] *See* fn. 15, *supra*.

87. Patriarch Partners did not make the decision to issue the employee communications on February 24, 2016, and any assistance that Patriarch employees provided in drafting the communications was in their capacity as advisors to Tilton, TransCare's sole Director. (Eichberger Decl., Ex. E, Jones Dep. Tr. 6:13-24, 7:3-8, 7:17-25.)

Plaintiffs' Response:  DISPUTED

The cited evidence does not demonstrate that the specific messages at issue themselves were directed and approved by Lynn Tilton.  Further, the cited evidence doesn't demonstrate that the Patriarch employees involved were acting in their capacity as advisors to Lynn Tilton as director of TransCare.

> **REPLY:**  Non-Debtor Defendants' SOF No. 87 is **undisputed**.  Plaintiffs' unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 87.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 87.

88. The communications to the employees of the Chapter 7 wind-down entities stated that: (i) TransCare had "formed a new company, Transcendence Transit, Inc., that will acquire [its] stronger performing ambulance business divisions in Pittsburgh and the Hudson Valley . . . [and] save 700 jobs;" (ii) "aside from the name of the new legal entity, nothing changes operationally for the businesses in Pittsburgh and the Hudson Valley;" and (iii) a separate entity named Transcendence Transit II, Inc. was created for TransCare's paratransit business.  (Eichberger Decl., Ex. LLL, P000094; Ex. MMM, TRANSCARE00231835; Ex. OOO, TRANSCARE00231839.)

Plaintiffs' Response:  DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.

> **REPLY:**  Non-Debtor Defendants' SOF No. 88 is **undisputed**.  Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are

impermissible under Local Rule 7056-1 and immaterial to SOF No. 88. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 88.[24]

89.  The communication also stated that "as a result of a decision by [TransCare's] senior lender to cease providing additional funding, the remaining operations (NYC, 911, Core, Westchester and Maryland) . . . are being forced into liquidation under Chapter 7 of the Bankruptcy Code." The communication explained that "[t]he operations associated with these businesses will discontinue starting today and responsibility for their remaining assets will be transferred to the custody of a court-appointed trustee." (Eichberger Decl., Ex. LLL, P000094; Ex. MMM, TRANSCARE00231835; Ex. OOO, TRANSCARE00231839.)

Plaintiffs' Response:  DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.

> **REPLY:**  Non-Debtor Defendants' SOF No. 89 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 89. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 89.[25]

90.  The communication informed employees that TransCare "expect[ed] the appointed trustee to be able to provide [employees] with further direction and answers to . . . questions in the days ahead." (Eichberger Decl., Ex. LLL, P000094; Ex. MMM, TRANSCARE00231835; Ex. OOO, TRANSCARE00231839.)

Plaintiffs' Response:  DISPUTED IN PART

---

[24] *See* fn. 15, *supra*.

[25] *See* fn. 15, *supra*.

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.

> **REPLY:** Non-Debtor Defendants' SOF No. 90 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 90. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 90.[26]

91.     In the communication to the employees that were intended to move to Transcendence pursuant to the restructuring plan, Youngblood explained that the formation of Transcendence Transit II, Inc. "changes nothing for our transit employees except that their employment is being transferred to this new entity – same jobs, same compensation, same benefits." Youngblood noted that these employees "will receive a new employment letter from [their] manager within the next 24 hours reflecting this change." (Eichberger Decl., Ex. NNN, TRANSCARE00231836.)

Plaintiffs' Response: DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.

> **REPLY:** Non-Debtor Defendants' SOF No. 91 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 91. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 91.

92.     Later that day, Youngblood sent an update to TransCare employees in New York City that reiterated the details of the restructuring plan. He indicated that Transcendence Transit II would be acquiring TransCare's paratransit business and "[n]o positions in this business will be eliminated as a result, and all employees of the paratransit business will be employed by this new legal entity." He also reiterated TransCare Management Team's

---

[26] *See* fn. 15, *supra.*

disappointment that the TransCare Management Team "[c]ould not save all the business units and jobs." (Eichberger Decl., Ex. QQQ, TRANSCARE00231840.)

Plaintiffs' Response: DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.

> **REPLY:** Non-Debtor Defendants' SOF No. 92 is **undisputed**. Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 92. Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 92.[27]

93. In his update, Youngblood emphasized that "the NYC 911, NYC Core, Westchester and Maryland businesses . . . **have NOT been immediately shut down.** Tomorrow certain assets of TransCare will be in the hands of a court-appointed trustee who we expect will have the needed runway to effect an orderly wind down." (*Id.*)

Plaintiffs' Response: **UNDISPUTED**

## F. Events after TransCare Files for Chapter 7 Bankruptcy on February 24, 2016

94. Notwithstanding the Chapter 7 filing, Tilton continued to negotiate with Wells Fargo over the funding of TransCare payroll. (Eichberger Decl., Ex. RRR, TRANSCARE00225051.)

Plaintiffs' Response: **UNDISPUTED**

95. The day after the Chapter 7 filings, February 25, 2016, Salvatore LaMonica ("LaMonica") was appointed as the interim Chapter 7 Trustee in the bankruptcy proceeding. (*In re TransCare Corporation, et al.*, Case No. 16-10407.)

Plaintiffs' Response: **UNDISPUTED**

---

[27] *See* fn. 15, *supra.*

96. At 9:03 p.m. on February 25, 2016, the Trustee emailed Linda Riffkin of the Office of the US Trustee: "Believe it or not negotiations to fund the payroll have started up again." (Eichberger Decl., Ex. RRR, TRANSCARE00225051.) At 9:30 p.m., the Trustee notified Riffkin that negotiations were "[n]ot really going well. Looks like it is going down. We r [sic] notifying FDNY." (*Id.*)

Plaintiffs' Response: **UNDISPUTED**

97. On February 26, 2016 at 7:10 a.m., the Trustee informed Riffkin that TransCare had been shut down:

> "Linda. FYI. **Despite some last minute negotiations we were unable to get commitments for funding payroll. We then arranged for the shutdown**, contacted NYPD and the relevant hospitals. Getting. Arranging for a security company to watch the locations for at least a short time and securing any narcotics etc." (*Id.*) (emphasis added).

Plaintiffs' Response: **UNDISPUTED**

98. On February 26, 2016, the employees intended to be "NewCo Employees" received the following email from Fuchs:

> This is a sad day for all of us who have loved and respected the work of TransCare employees. We were excited to have the opportunity to begin anew with our Hudson Valley, Pittsburg [sic], and Para-transit divisions in a new company to preserve 700 jobs. Unfortunately, today Wells Fargo, the Carl Marks restructuring firm and the Trustee of the bankrupt estate have decided not to fund payroll for last week's payroll obligation. This is particularly distressing given Wells Fargo's previous commitment to fund a proper wind down plan upon which we agree to file for Chapter 7 bankruptcy protection. Regrettably, the Trustee disputes our claims to the assets that were foreclosed on this week. This prevents our ability to operate these three divisions. Consequently, we simply cannot effectively serve our customers and communities with these restrictions. We are devastated by today's decisions, but unfortunately our hands are tied. This means we must cease our operations immediately. Please secure your vehicles and operations and await further instruction from the court appointed Trustee." (Eichberger Decl., Ex. SSS, PP000132.)

<u>Plaintiffs' Response</u>:  DISPUTED IN PART

The cited evidence does not demonstrate that the cited communications were actually distributed to all relevant employees.  Stephen advised Lynn Tilton of the communication after the fact.  Exhibit 41 (PP-TRBK0099009).

> **REPLY:**  Non-Debtor Defendants' SOF No. 98 is **undisputed**.  Plaintiffs' arguments, inadmissible hearsay, unsupported statements and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 98.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 98.[28]

99.  The Trustee and Wells Fargo entered into an arrangement pursuant to which Wells Fargo would continue to fund payroll for certain employees of TransCare after the bankruptcy filing.  (Eichberger Decl., Ex. F, LaMonica Dep. Tr. 35:11-36:20.)

<u>Plaintiffs' Response</u>:  **DISPUTED IN PART**

The employees were not TransCare employees.  Wells Fargo independently retained them. *See* ¶ 8.

> **REPLY:**  Non-Debtor Defendants' SOF No. 99 is **undisputed**.  Plaintiffs' lengthy arguments (including the incorporation of their response to SOF No. 8), inadmissible hearsay, extraneous facts and implications are impermissible under Local Rule 7056-1 and immaterial to SOF No. 99.  Discovery has closed, and Plaintiffs have produced no evidence to dispute SOF No. 99.[29]

### NON-DEBTOR DEFENDANTS' RESPONSE TO PLAINTIFFS' ADDITIONAL MATERIAL FACTS[30]

Set forth herein are Non-Debtor Defendants' response to Plaintiffs' statement of additional material facts.  As an initial matter, the Court should strike the following 84 additional facts offered

---

[28] *See* fn. 15, *supra*.

[29] The Trustee likewise disputed Non-Debtor Defendants' SOF No. 99, offering a clarification of the cited testimony that Wells Fargo directly paid several employees, and those employees were not employed by the estate.  (Dkt. 119, ¶ 99).  To the extent this actually is a dispute, rather than a simple re-wording, it is immaterial.

[30] Non-Debtor Defendants have repeated Plaintiffs' numbered facts verbatim, including citations, and have made no corrections with respect to spelling, grammar, typographical errors, or any other error in syntax.  Therefore, to the extent Plaintiffs' numbered facts reference deposition transcripts by numeral I or numeral II, those references are Plaintiffs' shorthand to the deposition taken in the instant adversary proceeding ("I") and the Trustee's adversary

by Plaintiffs because they do not comply with Local Rule 7056-1 as they are not supported by any record evidence whatsoever or the evidence provided is inadmissible hearsay, mischaracterizes evidence, or does not support the proffered statement: SOF Nos. 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 129, 132, 133, 134, 135, 136, 138, 142, 144, 146, 147, 148, 149, 152, 153, 155, 158, 161, 163, 164, 165, 166, 169, 170, 171, 174, 184, 185, 187, 190, 193, 195, 196, 198, 201, 204, 205, 206, 208, 209, 210, 211, 212, 213, 214, 217, 218, 225, 227, 231, 232, 241, 243, 244, 245, 246, 247, 248, 250, 251, 254, 257, 258, 259, 260. *See In re Basic Food Grp.,* 2018 WL 5805943, at *6 (rejecting and deciding not to consider paragraphs in a statement of facts that were not supported with citations to admissible evidence and/or contained impermissible legal impediment).

Further, Plaintiffs improperly continue Non-Debtor Defendants' numbering to give the impression that Non-Debtor Defendants have adopted these additional, purported facts when in fact they do not. As noted above, Plaintiffs also have mis-numbered their response altogether, as they did not number their response to Non-Debtor Defendants' SOF No. 44, leading the remaining paragraphs to be one number off. Further complicating the review, Plaintiffs often provided purported facts in non-chronological order (for example, Plaintiffs' paragraph 173 concerns events on January 6, 2016, paragraph 174 has no date, and then paragraph 175 discusses purported facts that occurred all the way back in February 5, 2015). Non-Debtor Defendants have identified Plaintiffs' additional facts as: "Plaintiffs' ASOF No." followed by Non-Debtor Defendants' Response.

---

proceeding ("II"), *LaMonica v. Tilton*, 16-10407-smb. Non-Debtor Defendants do not offer any admission by virtue of repeating Plaintiffs' numbered facts verbatim.

Finally, out of the 160 Additional Material Facts Plaintiffs have appended to the bottom of Non-Debtor Defendants' SOF, only **57** are actually cited to by Plaintiffs in their Opposition: Plaintiffs' ASOF Nos. 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 114, 115, 118, 119, 126, 132, 133, 135, 142, 146, 147, 148, 149, 151, 152, 155, 157, 158, 159, 161, 164, 167, 184, 192, 202, 204, 205, 206, 207, 209, 210, 220, 224, 225, 231, 232, 237, 238, 248, 251, 252, 255, 256, 258, and 260.   The remaining **103** facts, therefore, are neither material nor relevant to Non-Debtor Defendants' Motion or Plaintiffs' Opposition, because are not used to support any legal argument.   These facts should also be stricken, to include: ASOF Nos. 100, 113, 116, 117, 120, 121, 122, 123, 124, 125, 127, 128, 129, 130, 131, 134, 136, 137, 138, 139, 140, 141, 143, 144, 145, 150, 153, 154, 156, 160, 162, 163, 165, 166, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 185, 186, 187, 188, 189, 190, 191, 193, 194, 195, 196, 197, 198, 199, 200, 201, 203, 208, 211, 212, 213, 214, 215, 216, 217, 218, 219, 221, 222, 223, 226, 227, 228, 229, 230, 233, 234, 235, 236, 239, 240, 241, 242, 243, 244, 245, 246, 247, 249, 250, 253, 254, 257, and 259.

100.   The Court advised the parties that it did not believe that this case was appropriate for summary judgment on the issue of single employer or the underlying merits of the unforeseeable business circumstances defense.   Exhibit 42 (Transcript of Proceedings on December 11, 2018 in the Instant Case at 21-24).

   **Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 100:**   Undisputed.

101. Patriarch Partners, LLC is a Delaware limited liability company with a principal place of business at 1 Liberty Street, 35th Floor, New York, New York. Ms. Tilton is the sole manager and ultimate indirect owner of Patriarch Partners. Exhibit 1 (JPTO, Stipulated Facts ¶ 4)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 101**: Undisputed.

102. Patriarch Partners Agency Services, LLC is a Delaware limited liability company with a principal place of business at 1 Liberty Street, 35th Floor, New York, New York. Ms. Tilton is the sole manager and ultimate indirect owner of PPAS. Exhibit 1 (JPTO, Stipulated Facts ¶ 3; Tilton Dep. Tr. II 18:22-25)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 102:** Undisputed, immaterial, and irrelevant. PPAS is not a party to this action. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

---

[31] Non-Debtor Defendants object to this heading. Plaintiffs have continually lumped all Non-Debtor Defendants together, referring to them as "Patriarch," the "Patriarch entities," or other undefined terms and making no attempt to distinguish between or among them. Plaintiffs carry the burden of proof for their claim that each of the Non-Debtor Defendants was an "employer" under the WARN Acts, and they repeat here their continued, persistent refusal to make any distinction as to the existence, purpose, action or inaction of each separate Defendant.

[32] Plaintiffs' ASOF is not supposed to be a legal brief; instead, it should concisely state material facts that are undisputed, supported with admissible evidence, and nothing more. Nevertheless, Plaintiffs continually use argumentative and conclusory language, not least of which is reflected in Plaintiffs' egregiously editorialized headings. Non-Debtor Defendants object to each and every heading set forth in Plaintiffs' ASOF.

103. Patriarch Partners Management Group, LLC is a Delaware limited liability company with a principal place of business at 1 Liberty Street, 35th Floor, New York, New York. Ms. Tilton is the sole manager and ultimate indirect owner of PPMG. Exhibit 1 (JPTO, Stipulated Facts ¶ 5; Tilton Dep. Tr. II 17:2-17.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 103:** Undisputed, immaterial, and irrelevant. PPMG is not a party to this action. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

104. Defendant Ark II CLO 2001-1, Limited is a Cayman Islands company with a principal place of business at 1 Liberty Street, 35th Floor, New York, New York. Ark II owns a 55.7% direct interest in TransCare. Ms. Tilton owns 99% of Ark II. Exhibit 1 (JPTO, Stipulated Facts ¶ 6)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 104:** Disputed in part, immaterial, and irrelevant. Ark II CLO 2001-1 is *not* a named defendant in Plaintiffs' March 1, 2016 Complaint. Non-Debtor Defendants do not dispute that Ark II CLO 2001-1 is a Cayman Islands company with a principal place of business at 1 Liberty Street, 35th Floor, New York, New York, nor the ownership interests represented in Plaintiffs' ASOF ¶ 104. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances

exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

105.	Transcendence Transit, Inc. and Transcendence Transit II, Inc. are both Delaware corporations.  Transcendence has a mailing address at 1 Liberty Street, 35th Floor, New York, New York.  Ms. Tilton is the sole director of both entities, and Transcendence is the parent of Transcendence II.  Exhibit 1 (JPTO, Stipulated Facts ¶ 7)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 105:**  Undisputed, duplicative of Non-Debtor Defendants' SOF Nos. 59, 60, 81, immaterial, and irrelevant.  Transcendence Transit, Inc. and Transcendence Transit II, Inc. (the "Transcendence Entities") are not parties to this action.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

106.	TransCare Corporation, as borrower, the Term Loan Lenders (as defined below), as lenders, and PPAS, as Administrative Agent, are parties to a Credit Agreement, dated as of August 4, 2003, and as amended (the "PPAS Credit Agreement").  During the Relevant Time Period, the lenders under the PPAS Credit Agreement were:  (i) AIP,[33] (ii) Zohar CDO 2003-1, Ltd., Zohar II 2005-1, Ltd., and Zohar III, Ltd.; (iii) Credit Suisse Alternative Capital, Inc.; and (iv) First Dominion Funding I.  Exhibit 1(JPTO, Stipulated Facts ¶ 10)

---

[33] In the JPTO, Ark Investment Partners II, L.P., is shortened to just "AIP," and that is the short form Plaintiffs have used here. (*See* JPTO, Plfs' Ex. 1, ¶ 9).  Non-Debtor Defendants use "AIP II" as the short form of Ark Investment Partners II, L.P. (*see* page 1, *supra*).  However, this entity is one and the same.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 106:** Undisputed, immaterial, and irrelevant. Plaintiffs, however, have not defined the "Term Loan Lenders" anywhere in this document, despite referencing that they are "defined below." Non-Debtor Defendants direct the Court to the definition of the Term Loan Lenders in the JPTO, Dkt. No. 85, *LaMonica v. Tilton, et al.* (18-01021), ¶ 10 (also attached as Pl. Ex. 1 herein). In that document, the Term Loan Lenders are defined as (i) AIP II, (ii) Zohar CDO 2003-1, Ltd., Zohar II 2005-1, Ltd., and Zohar III, Ltd. (the "Zohar Funds"); (iii) Credit Suisse Alternative Capital, Inc. ("Credit Suisse"); and (iv) First Dominion Funding I ("First Dominion"). The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

107. When asked which Patriarch entity employed Michael Greenberg, Pelissier indicated that he "He [Greenberg] worked under the umbrella of Patriarch. I don't know which one." Exhibit 3 (Pelissier Dep. Tr. 20:23).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 107:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The undisputed evidence shows that Michael Greenberg was an employee of Patriarch Partners, LLC. (Non-Debtor Defendants' SOF No. 17, *supra*.) The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts'

unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

108. Patriarch employees did not distinguish between the Patriarch entities in their dealings with Leland. Exhibit 2 (Leland I 52:10-53:3).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 108**: Disputed (*see* Non-Debtor Defendants' SOF Nos. 14, 17-20, *supra*), mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

109. There were no Patriarch entities that had managers other than Lynn Tilton during the relevant time period. Exhibit 43 (Tilton Dep. Tr. II 17:18-23).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 109**: Disputed in part (*see* Non-Debtor Defendants' SOF No. 17, *supra*), mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

110. Lynn Tilton made the decisions regarding funding TransCare regardless of the source of funds. Exhibit 4 (Greenberg Dep. Tr. 37:17-38:2).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 110:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

111. Wells Fargo understood that Patriarch and its affiliates all served some need of the Patriarch organization's business and that Lynn Tilton "controlled, guided, and decided on behalf of those funds." Exhibit 8 (Husson Dep. Tr. I 125:2-20).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 111:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

### TransCare's Failing Operations[34]

112. Upon starting as CEO in early 2015, Glenn Leland discovered, that TransCare "was in an extreme accounts payable pressure and operating decline and that, in order to fix the

---

[34] *See* fn. 32, *supra.*

company, my analysis said that I estimated about $13 to $14 million of capital would need to be immediately infused into the company to arrest what appeared to be the situation and to prepare it for growth trajectory." He noted that "[a]ccounts payable was higher than tolerated in ambulance industry" and "they were having trouble acquiring supplies. Vehicles were also aged on average more than ten years, which is double the typical benchmark." Exhibit 2 (Leland Dep. Tr. I 53:5-56:19).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 112:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

113.    The "[s]upply constraints jeopardized and interrupted TransCare operations." Exhibit 2 (Leland Dep. Tr. I 57:25-58:2).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 113:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

114. TransCare even lost its ability to use EZ-Pass at times because of lack of payment. This affected the ability of the ambulances to bring patients to the hospital because the crews had to wait in the cash lanes. Exhibit 2 (Leland Dep. Tr. I 103:15-104:15).

**Non-Debtor Defendants' Response to Additional Statement of Fact No. 114:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

115. The ambulance "fleet was in a deplorable state. Of the 400 ambulances, only 250 would actually run on a daily basis. They were spending millions of dollars in tow charges to tow ambulances that couldn't make it to calls." Exhibit 2 (Leland Dep. Tr. I 67-68).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 115:** Disputed in part, mischaracterizes testimony, and immaterial and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

116. Leland was very strongly in favor of recapitalizing the business with a fresher fleet. Exhibit 2 (Leland Dep. Tr. I 69-70).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 116:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

117. Pelissier testified that Leland had sounded the alarm about TransCare's ability to continue operations from the first moment he took over. Exhibit 3 (Pelissier Dep. Tr. 62:24-63:12; 67:9-12)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 117:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

118. Wells Fargo's John Husson testified that in 2015 to 2016, TransCare was in a liquidity crisis that was "constant" that had to be relieved by Lynn Tilton injecting new capital on multiple occasions. Exhibit 8 (Husson Dep. Tr. I 16:25-17:13).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 118:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor

Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

119. On the other hand, Lynn Tilton was also taking around $3 million out of the company in interest and debt service payments. Exhibit 15 (Husson Dep. Tr. II 17:22-17:24)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 119:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

120. He recalled that payroll was delayed on multiple occasions and Lynn Tilton had to make infusions because "the business itself was faltering. They had previously lost some contracts and they were being -- the customers were trying to, I believe, move away from TransCare and find alternative providers because they were concerned about the company's sustainability. And also there was a fairly significant amount of debt service related to the term loan that was -- that was made by Patriarch and two other lenders that had to be serviced. So a combination of faltering business and debt service caused liquidity issues." Exhibit 8 (Husson Dep. Tr. I 17:23-18:17).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 120:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual

assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

121. Patriarchs' Michael Greenberg testified that a significant reason that led to the bankruptcy was the delay of payment of payroll in July of 2015. In addition, the company was behind on its payables including workers' compensation insurance, rent, payroll taxes, and other assorted matters. It was "not a surprise" that these liabilities existed. Exhibit 4 (Greenberg Dep. Tr. 141:15-143:24).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 121:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. It is undisputed that Michael Greenberg was a Patriarch Partners employee. (Non-Debtor Defendants' SOF No. 17, *supra*.) The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

122. "The company did not have the cash to make its insurance payments, and so there was a, on numerous occasions, the threat of loss of insurance, including ultimately losing Workers' Comp insurance." The insurance policies were "necessary to operate TransCare" Exhibit 2 (Leland Dep. Tr. I 61:3-14).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 122:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

123. In June or July of 2015 Lynn Tilton directed that Leland should stop sending her weekly reports on the companies finances because "she did not like what [Leland] was saying." Exhibit 2 (Leland Dep. Tr. I 63:2-64:16).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 123:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

124. Per Husson, the operation inefficiencies that TransCare had were caused by the fact that TransCare did not have enough capital investment to bring the fleet up to speed or replace its billing and dispatching systems and at times internally generated capital could not even cover the operating expenses. Exhibit 8 (Husson Dep. Tr. I 19:25-20:22).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 124:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual

assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

125.    He had dozens of conversations with management expressing the belief that more money needed to come in to the company "in order for it to be sustainable." Exhibit 8 (Husson Dep. Tr. I 27:6-16).

**Non-Debtor Defendants' Response to Additional Statement of Fact No. 125**: Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

126.    He determined that close to $6 million was needed to address outstanding issues. Exhibit 8 (Husson Dep. Tr. I 28:3-10).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 126**: Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

127.    On or about July 2, 2015, Wells Fargo informed TransCare that Wells Fargo was in an over-advanced position under the Wells Fargo Credit Facility. Wells Fargo also informed TransCare management that it would not provide TransCare with funding for payroll for the week ending July 4, 2015. Exhibit 1 (JPTO, Stipulated Facts ¶ 32)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 127:** Undisputed, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

128.    On June 29, 2015, Bonilla wrote to Leland that TransCare's Board had ordered the payment of interest that week despite his warning that doing so would place TransCare at high risk of being unable to make payroll. Exhibit 44 (TRANSCARE00008485)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 128:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 44 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-

Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

129.    On July 2, 2015, TransCare was unable to fund payroll and missed its payroll obligation to its employees and its payment of wages to employees was delayed. Exhibit 7 (Leland Dep. Tr. II 520:25-521:6.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 129**:   Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

130.    On July 6, 2015 Leland emailed a turnaround plan to Greenberg and another Patriarch employee which proposed that Patriarch make a loan of $5M to TransCare. It also requested permission to seek alternative sources of financing. Exhibit 45 (PP-TRBK0031071).

**Non-Debtor Defendants' Response to Additional Statement of Fact No. 130**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 45 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether

Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

131. The plan further noted that "[i]n the absence of financing to accelerate plan execution, the only remaining options are bleak. If TransCare fails to find a way to continue operations and instead loses insurance, is evicted from critical facilities or otherwise forced to cease operations, the WARN act liability is approximately $19.4M." *Id.*

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 131:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 45 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

132. Husson testified that the only source of funds for TransCare was Patriarch because Patriarch did not seriously entertain selling the company's assets and the trade payables could not support more lending. It was "always about how much money Patriarch could put in." Exhibit 8 (Husson Dep. Tr. I 32:4-25).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 132:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

133.  Leland testified that throughout his time as CEO "each pay period was a struggle to fund because with the accumulation of the accounts payable and the interest payments to Patriarch, there was not enough cash to pay all the back accounts payable and the current payroll." He said that there were never reserves to pay payroll and there were never reserves to repay Patriarch loans.  Exhibit 2 (Leland Dep. Tr. I 124:10-125:17).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 133:**  Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

134.  Leland did not have authority to sell the company or get other sources of funding and was not given permission to do so.  Id.; Exhibit 2 (Leland Dep. Tr. I 148:24-149:3); Exhibit 7 (Leland Dep. Tr. II 604:7-15).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 134:**  Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant.  Non-Debtor Defendants do not dispute that Leland was required to follow the Authority Matrix.  (*See* Non-Debtor Defendants' SOF No. 13.)  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts'

unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

135. Leland was not allowed to retain counsel in connection with its interactions with Patriarch. Per the authority matrix, only the board could seek legal opinion and Leland's requests for counsel were ignored or denied. Exhibit 2 (Leland Dep. Tr. I 134:16-135:16).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 135:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. Non-Debtor Defendants do not dispute that Leland was required to follow the Authority Matrix. (*See* Non-Debtor Defendants' SOF No. 13.) The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

136. Patriarch never allowed TransCare to postpone interest payments. Exhibit 2 (Leland Dep. Tr. I 139:24-140:8).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 136:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

137. For example, in an email dated October 7, 2015, Greenberg instructed Leland to issue the interest payment to Patriarch immediately, despite "the fact that the company will not have adequate funds to make payroll tomorrow." Exhibit 46 (PP-TRBK0079362).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 137**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 46 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

138. In an October 2015 Progress Update, it was shown that TransCare's plans to stabilize had been failing. Exhibit 47 (TRANSCARE00006181).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 138**: Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 47 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

139. On October 8, 2015, TransCare required funding from Patriarch to make payroll. Exhibit 48 (TRANSCARE00019285).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 139:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 48 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

140. On November 16, 2015, Greenberg, Pelissier, Leland and Bonilla met with Wells Fargo to provide the presentation and discuss an extension of the December 31, 2015 maturity date of the Wells Fargo Credit Facility. On November 21, 2015, Leland reported on the meeting to Tilton including that more investment would be a prerequisite of a renewed ABL. Exhibit 49 (PP-TRBK0083106).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 140:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 49 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

141.	On December 3, 2015, Leland wrote that "[W]e are very close to the end of the breakthrough . . . we need $6.4m we don't have. . . . If Patriarch balks, the bank will be out and we cannot continue past January 31st.  Exhibit 50 (TRANSCARE00081229).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 141:**  Disputed in part, immaterial, and irrelevant.  Plaintiffs' Exhibit 50 speaks for itself and is itself the best evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

142.	On or about December 10, 2016, TransCare again missed payroll.  Exhibit 51 (TRANSCARE00005928); Exhibit 7 (Leland Dep. Tr. II 620:19-621:7.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 142:**  Disputed, mischaracterizes testimony, immaterial, and irrelevant.  Plaintiffs' Exhibit 51 speaks for itself and is itself the best evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

143.	Patriarch wired funds which helped to cover the payroll.  Exhibit 52 (TRANSCARE00072660).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 143:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 52 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

144. Leland understood based on the experience of July that missing payroll would create significant issues going forward and that TransCare needed on the order of $6.4 million to recapitalize, but was not allowed to seek funding from anybody but Patriarch. Exhibit 7 (Leland Dep. Tr. II 629-31).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 144:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

145. On December 11, 2016, Bonilla provided Greenberg with the updated 2016 financial projections for TransCare. Exhibit 53 (PP-TRBK0012490).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 145:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 53 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether:

(1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

146. On December 14, Leland advised Greenberg and Bonilla that he received a note from the MTA expressing concern about the missed payroll and cutting TransCare's routes. Exhibit 54 (TRANSCARE00210183).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 146:** Disputed, immaterial, inadmissible hearsay, and irrelevant. Plaintiffs' Exhibit 54 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

147. TransCare was unable to fill management roles because its reputation in the industry was that of "dead men walking." Exhibit 7 (Leland Dep. Tr. II 605-606:19).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 147:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

148.    Although Patriarch had infused capital into TransCare it did not fix the underlying problems because, "all the cash was used to solve emergency supply interruptions and not to bring down the overall balance on accounts payable.  We needed more cash for that, not the little bit that we got on emergencies only." Exhibit 7 (Leland Dep. Tr. II 613:17-614:20).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 148:**    Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

149.    Leland understood that the magnitude of the shortfall and issues facing TransCare at the end of 2015 were unlike what it had experienced previously because the issues had built up over time.  Exhibit 7 (Leland Dep. Tr. II 618:21-620:18).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 149:**    Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

150.    Leading into 2016, TransCare was at risk of losing its workers' compensation insurance at the start of the year because of nonpayment. TransCare could not operate without this insurance in place. Exhibit 55 (PP-TRBK0035626)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 150**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 55 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

151.    On December 28, 2015, Bonilla wrote that without funds, the company "likely will need to cease operations by first week of January." Exhibit 56 (TRANSCARE00005639).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 151**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 56 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

152. On January 1, 2016, Leland wrote that "Patriarch is still hoping Zurich [insurance broker] will change their mind and is opposing us sending out any notice until we hear back." Exhibit 57 (TRANSCARE00005336).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 152:** Disputed in part, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 57 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

153. On January 3, he indicated that the "Board refuses to be communicated with and only remaining channel of her own staff are afraid to deliver news she refuses to hear, acknowledge or will accept." Exhibit 58 (TRANSCARE00005261).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 153:** Disputed in part, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 58 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

154. On that same date Leland indicated that because of the delay in Patriarch determining whether to fund, the needs had increased to $7.8 million. Exhibit 59 (TRANSCARE00194962).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 154:** Disputed, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 59 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

155. Bonilla added that Patriarch had stripped $4 million a year from TransCare [in management fees and interest]. Id. He complained that for a year, "we have exhausted all means of communication with Board which resulted in insults lectures outlandish ideas she saw on TV, or telling us we need to find a way to be an ambulance company without ambulances." Id.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 155:** Disputed, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 59 does contain or reference the bracketed language inserted by Plaintiffs, speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether

Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

156. On January 4, 2016, Bonilla wrote that the current week had a shortfall of $1.950MM. Exhibit 60 (TRANSCARE00017158).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 156:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 60 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

157. On January 5, 2016, Leland asked for permission to send a letter to TransCare's employees but was told not to by Randy Jones. Exhibit 61 (TRANSCARE00005141); Exhibit 62 (PP-TRBK0014253).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 157:** Disputed, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibits 61 and 62 speak for themselves and are themselves the best evidence as to their content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

158. The next day, he set up a system to alert his team if TransCare had to shut down so that they could cease operations immediately. He was not allowed to consult an attorney as to how to proceed. Exhibit 7 (Leland Dep. Tr. II 657:25-659:23).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 158:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

159. On January 7, 2016, the MTA sent Glenn Leland a letter indicating that they were concerned about TransCare's operations, including the potential loss of insurance and that they would be reducing the number of vehicles and trips assigned to TransCare. Exhibit 63 (TRANSCARE00107385)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 159:** Disputed in part, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 63 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

160. Ultimately, Lynn Tilton extended funds to TransCare to allow it to obtain insurance to continue operations. Exhibit 43 (Tilton Dep. Tr. II 60:19-25)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 160:** Disputed in part, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

161. At that point in time, the only source of additional funds for TransCare was Lynn Tilton making personal loans as the lender of last resort. Exhibit 43 (Tilton Dep. Tr. II 61:6-12)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 161:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

### WELLS FARGO'S STRAINED RELATIONSHIP WITH TRANSCARE[35]

162. In February of 2015, Wells Fargo downgraded TransCare to a 5 because of various issues that it had including, an aged vehicle fleet, weak IT systems, and payments agents sub debt

---

[35] *See* fn. 32, *supra.*

~90% of which is owned by Patriarch continues to be required totaling $7.5m over 2 years. Exhibit 64 (WF000000920)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 162:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 64 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

163. TransCare now had Wells Fargo's worst possible credit rating. Exhibit 15 (Husson Dep. Tr. II 108:14-24.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 163:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

164. Wells Fargo's relationship with TransCare became very strained because of TransCare's financial issues. Exhibit 15 (Husson Dep. Tr. II 20:3-13)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 164:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual

assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

165. From the beginning of his time at TransCare, Leland was told by Wells Fargo that "TransCare and [Wells Fargo's] relationship with Patriarch" was "its worst account." They were unhappy with the "chronic under investment in the infrastructure," "the accounts payable," and the fact that "cash consumption consumed all of the borrowing capacity on a weekly basis." They were "concerned about the stability of the company's ability to repay the loans." Exhibit 7 (Leland Dep. Tr. II 602:15-603:10).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 165:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

166. Wells Fargo desired a sale because its capital was invested and the only choice was for Patriarch to invest a large sum of money or sell, and it had demonstrated unwillingness to invest. Exhibit 8 (Husson Dep. Tr. I 36:4-20).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 166:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual

assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

167. As of December 10, 2015 John Husson believed that $6 million was required to address outstanding issues. Exhibit 65 (PPTC00002174).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 167:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 65 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

168. Wells Fargo had significant concerns with various payables that were coming due and TransCare had hidden from them that it was not fulling[36] paying payroll taxes. Id.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 168:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 65 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business

---

[36] Non-Debtor Defendants presume this should read "fully."

circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

169. On December 16, 2015, Wells Fargo learned that TransCare was in arrears on payroll taxes and froze the line of credit. Without the line, TransCare would be unable to make that weeks payroll. Glenn Leland noted that TransCare was "coming to a natural point of cessation of operations without an investment." Exhibit 66 (TRANSCARE00081368).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 169:** Disputed in part, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 66 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

170. Leland understood that when Wells Fargo instituted a reserve and expressed frustration with "lies" it was signaling to Patriarch that it wanted a change moving forward. Exhibit 7 (Leland Dep. Tr. II 638-40).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 170:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

171. He indicated that it was an ongoing concern of Wells Fargo that Patriarch was being paid interest ahead of other obligations like payroll. Exhibit 7 (Leland Dep. Tr. II 641:3-25).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 171:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

172. On December 29, 2015, Wells Fargo wrote to Michael Greenberg and Jean Luc Pelissier the terms under which it would extend lending to January 8, 2016. Exhibit 67 (PPTC00020588).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 172:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 67 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

173. On January 6, 2016 Wells Fargo wrote that it was covering an overdraft to allow payroll to be paid but "[t]his will be the last time we can make this accommodation." Exhibit 68 (TRANSCARE00011702).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 173:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 68 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

174. Towards the end of TransCare, Lynn Tilton complained of spending time on TransCare but Husson perceived that Lynn Tilton had "injected [her]self into the situation" she had "demanded that [management] get everything approved through [her]" and the fact that she was spending significant time on TransCare's issues was "an indictment on her management style." Exhibit 15 (Husson Dep. Tr. II 48:2-10).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 174:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

175.    On February 5, 2015, Leland reported to Pelissier and Brad Schneider, a Director of

Portfolio Management at Patriarch Partners, that he was "approached by National Express"

to acquire TransCare's paratransit contract for $15 to $18 million, and that National

Express was "confident they could provide a $1.7 million deposit on Monday, if we elect

to move forward." Exhibit 69 (TRANSCARE00195417).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 175**:    Disputed in part,

inadmissible hearsay, immaterial, and irrelevant.   Plaintiffs' Exhibit 69 speaks for itself

and is itself the best evidence as to its content.   The factual assertions are immaterial to

creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a

single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN

Acts' unforeseen business circumstances exception.   The factual assertions are also

irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of

Plaintiffs' claims as a matter of law.

176.    On February 10, 2015, Richmond County Ambulances Services ("RCA") sent Tilton an

email "to inquire if you and the TransCare team had any interest in either a sale or

management takeover to operate the company in NYC as well as outside of the NYC

territory." Exhibit 70 (PP-TRBK0033571).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 176**:    Disputed in part,

immaterial, and irrelevant.   Plaintiffs' Exhibit 70 speaks for itself and is itself the best

evidence as to its content.   The factual assertions are immaterial to creating a dispute of

fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or

---

[37] *See* fn. 32, *supra*.

(2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

177. On March 7, 2015, Leland reported to Tilton that National Express is "interested in buying our MTA business and have suggested an immediate purchase of $14 to $18 million." He also reported that "National Express is prepared to make an immediate down payment this week" and is "willing to buy all the assets of TransCare." Exhibit 71 (PP-TRBK0071446).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 177:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 71 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

178. On March 7, 2015, Leland reported to Tilton that RCA "are interested to buy TransCare and have sent an email proposing $60 to $80MM as valuation." Id.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 178:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 71 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business

circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

179. On July 8, 2015, RCA sent a follow-up email to Tilton "to inquire if you and the TransCare team had any interest in either a sale or management takeover to operate the company in NYC as well as outside of the NYC territory." Exhibit 72 (PP-TRBK0090478).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 179:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 72 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

180. On July 10, 2015, National Express sent Leland Letter of Intent signed by its CEO David Duke offering to buy TransCare's paratransit contract and adult care shuttle business for $6 to $7 million, plus assumption of up to $2 million in liabilities. Exhibit 73 (PP-TRBK0030759).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 180:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 73 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business

circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

181. On July 13, 2015, Vincent DeVito, a portfolio manager at PPMG, emailed Greenberg to inform him that he had "received a call from Alluence Capital Advisors, representing a UK transport Co, National Express with an interest in acquiring TC Paratransit piece of TransCare." Exhibit 74 (PP-TRBK0064341).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 181:** Disputed in part, immaterial, and irrelevant. It is undisputed that Vincent DeVito and Michael Greenberg were Patriarch Partners employees. (*See* Plaintiffs' Ex. 74; *see also* Non-Debtor Defendants' SOF No. 17, *supra*.) Plaintiffs' Exhibit 74 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

182. On December 8, 2015, Leland reported to Pelissier and Greenberg that National Express had "contacted me again this morning, to see if there is any interest in selling [the paratransit] contract." Exhibit 75 (TRANSCARE00005981).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 182:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 75 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of

fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

183. On December 16, 2015, Leland reported to Greenberg, Stephen, Pelissier and Bonilla that National Express had called him "a few times" that day to reiterate that their offer to buy TransCare's paratransit contract was "still out there." Exhibit 76 (PP-TRBK0080070).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 183**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 76 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

184. As noted, Leland, did not have authority to sell the company or get other sources of funding and was never given permission to do so. *Id*.; Exhibit 2 (Leland Dep. Tr. I 148:24-149:3); Exhibit 7 (Leland Dep. Tr. II 604:7-15).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 184**: Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants

are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

**TRANSCARE'S DEMISE AT THE HANDS OF PATRIARCH[38]**

185. Over the weekend of December 12-13, 2015, Tilton determined that "we would either need to sell, file for bankruptcy, unwind, or do some sort of transaction" with respect to TransCare, according to her deposition testimony. Exhibit 43 (Tilton Dep. Tr. II 164:8-21).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 185**: Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

186. On December 17, 2015, Melissa Provost emailed Pelissier and Greenberg a summary of forbearance terms that had been "verbally agreed upon" that day in connection with a requested extension. Exhibit 77 (PP-TRBK0046849).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 186**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 77 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business

---

[38] *See* fn. 32, *supra*.

circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

187.   Pursuant to a Forbearance Agreement dated December 22, 2015, Wells Fargo and TransCare agreed to extend the maturity date of the Wells Fargo Credit Facility, but only to January 8, 2016. See ¶ 23. Leland testified that he was instructed by Patriarch to sign the agreement. Exhibit 15 (Leland Dep. Tr. II 642:10-18).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 187:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

188.   On January 2, 2016, Bonilla emailed an updated version of TransCare's 2016 financial projections to Greenberg and Pelissier and indicated that substantial investment was needed. Exhibit 78 (PP-TRBK0021793).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 188:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 78 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-

Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

189. As Bonilla explained to Leland in an email dated the next day, "for six weeks they have delayed, asked for more data, and finally so much time elapsed we had to refresh all the numbers...," Exhibit 58 (TRANSCARE00005261).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 189:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 58 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

190. Lynn Tilton was unhappy with Carl Marks presentation because it showed "an immediate material need for cash and at that point there was no longer term-plan that would indicate that any cash infusion would necessarily make sense for an investor." Exhibit 16 (Landeck Dep. Tr. 23:21-24:9).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 190:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual

assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

191. Carl Marks indicated that "after three days of work we have reached some preliminary conclusions which unfortunately require a substantial amount of funding if the business is going to survive. These are not wish list amounts that might have asked of you in the past, but absolutely necessary in order to keep the business as an ongoing enterprise." Exhibit 79 (PPTC00024893 at 896). They also indicated that employees had been buying part on their own credit cards and all insurance companies had issued cancellation notices for the upcoming days. *Id*. They further indicated that TransCare managers were tired of "fighting a losing battle with customers and vendors and have lost most hope that a turnaround can be effected." *Id*.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 191:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 79 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

192. On January 15, 2016, Carl Marks prepared a short presentation that emphasized the "immediate need to fund critical payments to prevent significant disruption to the business. Exhibit 80 (PPTC00009078).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 192:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 80 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

193. On January 15, 2016, PPAS wired $1,172,757.53 to TransCare's insurance companies. Exhibit 81 (PP-TRBK0049959); Exhibit 82 (PP-TRBK0018276). TransCare did not have sufficient money to make these payments and Landeck was told that "Patriarch" made a cash infusion. Exhibit 16 (Landeck Dep. Tr. 34:11-35:18).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 193:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibits 81 and 82 speak for themselves and are themselves the best evidence as to their content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

194. On January 27, 2016, Carl Marks sent to Greenberg, Pelissier and Jones 2016 financial projections for TransCare. The materials including an executive summary outlining all of TransCare's current operational issues and indicating specifically that $7.5 million was

needed from Patriarch to have a "chance of turnaround." Exhibit 83 (PPTC00021566 at 571).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 194:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 83 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

195. Landeck indicated that none of TransCare's issues improved during the relevant time frame and that overall $8.7m was what was needed to execute Carl Marks' plan over the course of 2016. Exhibit 16 (Landeck Dep. Tr. 57:12-66:5).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 195:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

196. In Landeck's estimation, TransCare had no semblance of a "control environment" and that put it in jeopardy of its existence. Exhibit 16 (Landeck Dep. Tr. 71:6-23).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 196:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

197. On January 29, 2016, PPAS wired $690,168.24 to certain of TransCare's creditors, including $613,000 to the New York State Insurance Fund. Exhibit 84 (PP-TRBK0004196)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 197:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 84 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

198. Landeck indicated that he recalled "how dire the situation with the company was in February 2, 3, 2016." Exhibit 16 (Landeck Dep. Tr. 74:4-7). At that point he could not write checks because there was no probability that they would be funded and he did not want to incur personal liability. *Id*. (82:6-21).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 198:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

199. At that time, Carl Marks wrote that "we are all at the 24th hour. Without funding of critical requirements, company cannot last through next week." Exhibit 85 (PPTC00021459).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 199:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 85 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

200. On February 9, 2016, Pelissier emailed the MTA asking about re-issuing the MTA Contract to "a different legal entity" and explaining that he was working with "the ownership representative of TransCare and our bank...." Exhibit 86 (PP-TRBK0088190).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 200:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 86 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of

fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

201. Husson testified that by February 9, 2016, things had reached "critical mass" and Wells Fargo requested a wind down budget plan. Exhibit 8 (Husson I 59:12-60:15).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 201:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

202. Lynn Tilton and her Patriarch employees analyzed the costs associated with each TransCare employee and executive as part of their plans for a NewCo. Tilton expressly forbid this analysis from being shared with the "TransCare team." Exhibit 87 (PPTC00003573); Exhibit 88 (PPTC00003563).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 202:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibits 87 and 88 speak for themselves and are themselves the best evidence as to their content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN

Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

203. Lynn Tilton directed the formation of the Transcendence Transit entities on February 10, 2016 and was the manager of Transcendence. (Stephen Dep. Tr. 66:17-74; Tilton Dep. Tr. II 291:22-24); Exhibit 1 (JPTO, Stipulated Facts ¶ 37)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 203:** Undisputed and duplicative of Non-Debtor Defendants' SOF Nos. 59, 60, and 81.

204. Lynn Tilton was prepared to transfer $10 million dollars of her own funds to Transcendence to capitalize it. Exhibit 43 (Tilton Dep. Tr. II 167:3-21.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 204:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

205. Lynn Tilton was to own a majority of Transcendence indirectly through one of her funds. Exhibit 43 (Tilton Dep. Tr. II 111:6-8.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 205:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are

entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

206. Lynn Tilton directed that PPAS foreclose on assets of TransCare and that those assets be transferred to Transcendence. Exhibit 43 (Tilton Dep. Tr. II 112:23-113:7.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 206**: Disputed. The evidence cited by Plaintiffs does not support this fact.

207. Lynn Tilton planned for Transcendence to become operational with the Westchester, Pennsylvania, and MTA paratransit contract, along with the transfer of 700 TransCare employees to Transcendence. Exhibit 89 (Tilton Dep. Tr. I 48:9-49:10.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 207**: Disputed in part. Non-Debtors' SOF No. 56 sets forth the undisputed fact with cited evidence.

208. Patriarch Managing Director, Human Resources Platform, John Pothin prepared employment transfer letters to be issued to the TransCare employees who were planned to be transferred to Transcendence. Exhibit 90 (PPTC00003373).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 208**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 90 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

209. TransCare did not have independent counsel with respect to the foreclosure upon its assets by PPAS. Exhibit 6 (Stephen Dep. Tr. 103:23-104:11; 111:24-112:9.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 209:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

210. In an email dated February 10, 2016, Greenberg directed Wolf to execute loan documents back-dated to January 15, 2016. Exhibit 91 (PP-TRBK0047307).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 210:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 91 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

211. Pelissier testified that problems that had plagued TransCare for a long time had continued into February of 2016 – on "a number of things that . . . needed to be implemented" and they had to "save what can be saved." Exhibit 3 (Pelissier 107:22-108:11).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 211:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are

immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

212. By February 11, 2016, Pelissier understood that "some business re not going to make, some business are going to be making it" and Ms. Tilton "is making a decision . . . about what can be saved and how it can be saved." Exhibit 3 (Pelissier 109:8-20; 110:15-17).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 212:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

213. Landeck noted that TransCare's deterioration was accelerating as of on or around February 11, 2016, but it was not a rapid decline. TransCare had "been in decline for an extended period of time." Nothing unexpected was occurring. Exhibit 16 (Landeck Dep. Tr. 108:20-110:2).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 213:** Disputed, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants

are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

214. On February 12, 2016, Wells Fargo's attorney asked Patriarch, Ms. Tilton, and TransCare's bankruptcy counsel, "When is the anticipated filing date . . . [h]ow long are the TransCare employees for both the filed and non filed to be paid in order not to incur WARN Act liability." Exhibit 92 (CM_TC2018_0008737).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 214:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 92 does not contain the quoted language, speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

215. On February 13, 2016, Lynn Tilton reviewed a "Transendence go Forward Model" and noted that it would "take $10mm of new money, which is a big number." Exhibit 93 (PPTC00027671).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 215:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 93 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business

circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

216. On February 14, 2016, counsel for Patriarch Partners drafted a Transition Services Agreement, which provided for TransCare's (1) MTA Contract, (2) telecommunications equipment and services, (3) insurance premiums, (4) EPCR equipment and tablets and (4) five of Hudson Valley's ambulances to be transferred to Transcendence with the assistance of various TransCare personnel. Exhibit 94 (PP-TRBK0044218).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 216:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 94 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

217. On February 14, 2016, Marc Pfefferle of Carl Marks wrote to TransCare's bankruptcy counsel that he is "very sensitive" about the language to be used in bankruptcy motions since "we have WARN" and the "base language is presuming continuing operations which is not the case." Exhibit 95 (CM_TC2018_0008737).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 217:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 95 is not a February 14, 2016 email from Marc Pfefferle, speaks for itself and is itself the best evidence as to its content. The factual assertions are

immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

218.     Also on February 14, 2016, Pelissier sent a "Progress and Action List" to Patriarch and TransCare officials – including Tilton – setting forth various steps for TransCare's bankruptcy filings and the Transcendence transaction, which included "Issu[ing] Worker Adjustment and Training Notification ("WARN") notice to all Old Co employees." Exhibit 96 (TRANSCARE00005928).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 218:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 96 is not a February 14, 2016 email from Pelissier, speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

219.     On February 15, 2016, Lynn Tilton wrote that she would not put any money in going into bankruptcy unless it was "rolled into the DIP as first cash out." Exhibit 97 (CM_TC2018_0008781).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 219:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 97 speaks for itself and is itself the best

evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

220. On February 16, 2016, Carl Landeck of Carl Marks circulated a DIP budget to TransCare's bankruptcy counsel. He noted that it contained two scenarios, "[t]he first treats WARN as a general unsecured claim. The second contemplates administrative expense status." Exhibit 98 (CM_TC2018_0002899).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 220:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 98 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

221. On February 17, 2016, Wells Fargo advised Lynn Tilton that they had yet to receive a viable plan, and absent that, they are not approved to extend financing which had expired the previous day. Exhibit 99 (WF_TC_00000046)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 221:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 99 speaks for itself and is itself the best

evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

222.    On February 18, 2016, Carl Marks reviewed Patriarch plan for NewCo that had been shared with them. They noted that the "[m]odel appears to assume significant immediate terminations" and asked "what are the assumptions regarding 90 day WARN considerations? Is a Chapter 7 filing anticipated?" Exhibit 100 (CM_TC2018_0003083 at 3085).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 222:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 100 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

223.    On February 19, 2016, Carl Marks advised Tilton that TransCare lacked the funds necessary to pay payroll, 401(k) obligations and outstanding payroll taxes from earlier pay dates, as well as other critical expenses. In response, Tilton told Carl Marks to "make

decisions on what needs to be paid." Tilton did not instruct TransCare or Carl Marks to pay the payroll taxes.  Exhibit 101 (PP-TRBK0051609).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 223:**  Disputed, immaterial, and irrelevant.  Plaintiffs' Exhibit 101 speaks for itself and is itself the best evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

224.  On February 19, 2016, counsel for Wells Fargo emailed Tilton to inquire about the timing of sending WARN notices to TransCare employees prior to the foreclosure.  In response, Tilton told Wells Fargo's counsel that "[n]otice cannot be given prior to a foreclosure on NEWCO or there will be no NEWCO." Exhibit 38 (PP-TRBK0047828).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 224:**  Disputed in part, immaterial, and irrelevant.  Plaintiffs' Exhibit 38 speaks for itself and is itself the best evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

225. On February 19, Wells Fargo sent a proposal for funding of NewCo that included a requirement that TransCare issue WARN notices by on or before February 26, 2016. Exhibit 102 (PPTC00011487).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 225:** Disputed in part, mischaracterizes evidence, duplicative of Non-Debtor Defendants' SOF No. 72. Further, Plaintiffs' Exhibit 102 speaks for itself and is itself the best evidence as to its content.

226. On February 21, 2016, Lynn Tilton responded to a proposal for which NewCo divisions and employees to keep from Michael Greenberg indicating that "the cost of doing this deal remains way too high." Exhibit 103 (PPTC00027515).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 226:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 103 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

227. On February 22, 2016, Pelissier emailed the MTA to request a meeting "on where we are with our plans for TransCare and the MTA, following up on our face to face meeting a few weeks ago." Exhibit 104 (PPTRBK-0080845)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 227:** Disputed in part, mischaracterizes evidence. Further, Plaintiffs' Exhibit 104 speaks for itself and is itself the best evidence as to its content.

228.  On February 22, 2016, at 9:51 AM, Marc Pfefferle of Carl Marks wrote to his team that "[c]ounsel has advised us not to engage in a back and forth email battle with Lynn over her unfounded email attacks." He further indicated that "[t]he only relationship issues that exist derive from frustration over critical needs for case to run the business and the lack of funding to make those payments. Lynn has been well aware of those needs since we started and it is irresponsible at best for the Company to issue checks where there is no agreement by the parties to cover those checks." Exhibit 105 (CM_TC_2018_00089756).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 228**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 105 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

229.  This email was in response to communications in which Wells Fargo had agreed to immediately process $102,000 in critical needs and $450,000 in payroll. Id.

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 229**: Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 105 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-

Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

230. During a meeting with the MTA, Matt Nolan learned that the MTA was concerned with "corporate/ownership problems" for TransCare and that the owner would continue to "suck the division dry." Exhibit 106 (PPTC00014989).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 230:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 106 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

231. Also on February 22, 2016, Stephen indicated that he was concerned that Transcendence could not operate if a Chapter 7 were filed. He wrote counsel, "If TransCare executes a Transition Services Agreement and then goes into Chapter 7, is the trustee likely to allow the company to provide services under that agreement? We have previously discussed the Transition Services Agreement in connection with a Chapter 11 or other wind down scenarios and I'm not sure it works in a Chapter 7 context." Counsel responded that "that would be negotiated with the Chapter 7 trustee" and later added that, "[o]nce the trustee takes over, he or she is in total control of the assets. Given the nature of this company we intend to meet with the trustee before the filing." There is no evidence that any such meeting took place. Exhibit 108 (PP-TRBK0047786).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 231:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 108 is not an email to or from Brian Stephen, does not state any of the quoted language set forth in Plaintiffs' ASOF No. 231, speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

232. On February 23, Peter Wolf asked for a call with Jean Luc Pelissier to make sure that TransCare's management understood what Patriarch was planning. Exhibit 109 (PPTC00014979).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 232:** Disputed, immaterial, and irrelevant. Plaintiffs' Exhibit 109 is not an email from Peter Wolf, does not state what is alleged in Plaintiffs' ASOF No. 232, speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

233. Jean Luc Pelissier distributed a NewCo employee announcement to TransCare employee Matt Nolan and Peter Wolf for distribution on February 24, 2016. Exhibit 110 (PPTC 00002443).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 233:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 110 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

234. Mr. Pelissier also scripted for Mr. Nolan what he should tell customers who Patriarch hoped to retain for NewCo. Exhibit 111 (PPTC00022442).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 234:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 111 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

235. He also sent him what he should tell the employees who Patriarch planned to retain. Exhibit 112 (PPTC00022443).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 235:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 112 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of

fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

236. On February 24, 2016 at 12:07 a.m., Stephen e-mailed the Notice of Default and a three-paragraph "Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation" drafted by him and dated February 24, 2016 to Wolf. The Notice of Default was executed by Tilton on behalf of PPAS, the Zohar Funds, and AIP. Exhibit 113 (PP-TRBK0043305).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 236:** Disputed in part, duplicative of Non-Debtor Defendants' SOF No. 80, immaterial, and irrelevant. Plaintiffs' Exhibit 113 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

237. At 7:46 AM on February 24, 2016, Jonathan Killion of Carl Marks wrote to another Carl Marks employee that he would be in Brooklyn that day because Wells Fargo's attorneys told them late the night before that TransCare will be filing for Chapter 7 at some point today and "Wells is concerned that Lynn [Tilton] could try and grab some of the assets and use in a spin off concept." Exhibit 114 (CM_TC2018_0009039).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 237:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 114 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

238. During the day on February 24, 2016, Lynn Tilton sent an email to TransCare's bankruptcy counsel complaining that "I have funded payroll all year. Wells has taken my money and not made payroll." She attached a list of over $9 million in funding from her various funds to TransCare. Exhibit 115 (PP-TRBK0047615).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 238:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 115 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

239. At 6:33 on the evening of February 24, 2016, Wells Fargo's attorney sent an email to Carl Marks team asking them to "confirm an 8:30 PM call tonight to discuss a budget/strategy for the Chapter 7 liquidation." Exhibit 116 (CM_TC2018_0009065).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 239:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 116 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

240. Earlier that day, Matt Nolan, a TransCare VP asked Jean Luc Pelissier if he could have employees to work in the new division, i.e., Transcendence and what process would be required. Exhibit 117 (PPTC00025613).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 240:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 117 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

241. As of February 26, 2016, Wells Fargo still had not developed a shut down budget. Exhibit 118 (TRANSCARE00224060).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 241:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 118 speaks for itself and is itself the best

evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

242.  TransCare had approximately 1800 employees at the time of the terminations.  Exhibit 119 (TRANSCARE00224075).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 242:**  Disputed, immaterial, and irrelevant.  Plaintiffs' Exhibit 119 speaks for itself and is itself the best evidence as to its content.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

243.  The Trustee's recollection of the events is that "Patriarch or Randy Creswell's client did the strict foreclosure on midnight before the filing date and took possession of three debtors or the assets of some debtors – being Hudson Valley, Westchester, and Pennsylvania and the paratransit -- and that didn't work out the way they wanted it to work out and dumped it on my lap on the evening of Friday the 26th where they told everybody, 'You're not getting paid.  Bring the buses back.' And they dumped it on my lap." Exhibit 31 (LaMonica Dep. Tr. II 66:10-67:2)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 243:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

244. The Trustee attended a meeting on February 25, the first day after TransCare's bankruptcy filing with counsel for Patriarch, TransCare, and Wells Fargo. Exhibit 120 (LaMonica Dep. Tr. I 48:25-49:6)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 244:** Disputed in part, mischaracterizes testimony. Non-Debtor Defendants do not dispute that certain stakeholders met regarding TransCare. (Non-Debtor Defendants' SOF ¶¶ 95-96, *supra*.)

245. The purpose of that meeting was to determine whether payroll funding could be obtained to keep operating and the outcome of the meeting was that there was no source for payroll. Exhibit 120 (LaMonica Dep. Tr. I 51:15-24.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 245:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

246.    Neither Patriarch nor Wells Fargo gave the Trustee assurances that the upcoming payroll that was due could be satisfied.  Exhibit 120 (LaMonica Dep. Tr. I 52:17-24.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 246:**  Disputed in part, mischaracterizes testimony, inadmissible hearsay, and immaterial.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.

247.    After that meeting, the Trustee directed the dispatcher to tell the ambulance drivers to return the ambulances to the Hamilton Avenue location, the facility they were dispatched from or any local firehouse.  The employees were told that the business was shut down.  The employees were insisting on getting paid but learned that payroll wasn't going to be made.  After learning that payroll wasn't going to be made they stopped coming to work.  Exhibit 120 (LaMonica Dep. Tr. I 54:2-55:19.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 247:**  Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant.  The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.  The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

248.    At 10:53 p.m. on February 25, 2016, Stephen emailed TransCare's executives and directed them to move and secure for themselves as many as possible.  He told them, the "senior

lenders for TransCare foreclosed on all of its assets and those assets were sold to Transcendence Transit." Exhibit 121 (PP-TRBK0076712).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 248:** Disputed in part, inadmissible hearsay, immaterial, and irrelevant. Plaintiffs' Exhibit 121 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

249. At 11:23 p.m. on February 25, 2016, Pelissier emailed a plan to Stephen, Greenberg, Jones, John Pothin and Transcendence to take TransCare's server to allow for the continued operation of the MTA paratransit business segment and to provide for the continued operation of the Hudson Valley and Pittsburgh business segments. Exhibit 122 (PP-TRBK0076839).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 249:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 122 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

250. The MTA paratransit employees and the Hudson Valley and Pennsylvania employees were not told by the Trustee to stop coming to work because they worked for entities that were subject to the strict foreclosure. Exhibit 120 (LaMonica Dep. Tr. I 55:21-56:12.)

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 250:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

251. Tom Fuchs was told by Transcendence to send all the paratransit employees home and advise them that they were not receiving paychecks. Exhibit 31 (LaMonica Dep. Tr. II 43:25-44:7).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 251:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. Non-Debtor Defendants dispute Transcendence was ever operational. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

252. At 2:00 p.m. on February 26, 2016, PPAS' counsel called the Trustee's counsel to seek the Trustee's consent to the termination of the MTA Contract to allow for Transcendence II to

enter into a new paratransit services agreement with the MTA. Exhibit 123 (TRANSCARE00224900).

**<u>Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 252</u>:** Disputed in part and immaterial. Plaintiffs' Exhibit 123 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.

253.   At 2:00 p.m. on February 26, 2016, PPAS' counsel emailed the Trustee to ask him to consent to the termination of the MTA Contract. *Id*.

**<u>Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 253</u>:** Disputed in part and immaterial. Plaintiffs' Exhibit 123 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.

254.   At 2:09 p.m. on February 26, 2016, Stephen emailed the MTA for confirmation that Transcendence II can bill and receive payment for services while the process of issuing a new paratransit services contract to Transcendence II was completed. Exhibit 124 (PP-TRBK0043520).

**<u>Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 254</u>:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 124 is not a 2:09 pm email from Stephen. does not state what is alleged in Plaintiffs' ASOF No. 254, speaks for itself and is itself the

best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

255. At 5:07 p.m. on February 26, 2016, the Trustee provided his consent to the termination of the MTA Contract to PPAS' counsel with the proviso that the termination be without prejudice to the amounts owing to TransCare under the MTA Contract. Exhibit 123 (TRANSCARE00224900).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 255:** Disputed in part and immaterial. Plaintiffs' Exhibit 123 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception.

256. At 7:00 p.m. on February 26, 2016, Stephen emailed the MTA that Transcendence will be unable to provide services to the MTA because the employees had been told that operations were being discontinued. Exhibit 125 (PP-TRBK0043516).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 256:** Disputed in part, immaterial, and irrelevant. Plaintiffs' Exhibit 125 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or

(2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

257. Lynn Tilton testified that the concern of the Trustee consenting to the MTA contract transfer only arose after the Chapter 7 filing when the MTA felt they needed the Trustee's approval. Exhibit 43 (Tilton Dep. Tr. II 309:17-25).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 257:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

258. Landeck testified that NewCo "wasn't set up to be able to last" and lacked all of the elements necessary to succeed because it was "just thrown together." Exhibit 16 (Landeck Dep. Tr. 150:7-151:3). Indeed Patriarch asked the Trustee to use TransCare's payroll system to pay the Transcendence employees because they had not established a payroll mechanism. Exhibit 31 (LaMonica Dep. Tr. II 35-36).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 258:** Disputed in part, mischaracterizes testimony, inadmissible hearsay, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants

are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

259. Lynn Tilton was aware of what a WARN notice is and indicated that no WARN notice was sent to TransCare's employees, including those who were to become Transcendence Transit employees. Exhibit 89 (Tilton Dep. Tr. I 139:19-141:14; Exhibit 43 (Tilton Dep. Tr. II 322:7-11).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 259:** Disputed, mischaracterizes testimony, immaterial, and irrelevant. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

260. TransCare did not have independent representation of counsel during this time period. (Stephen Dep. Tr. 61:17-62:10). On Wednesday February 24, 2016, Stephen wrote "No idea . . . who these attorney are that are supposedly there to help TransCare." Exhibit 126 (PPTC00027442).

**Non-Debtor Defendants' Response to Plaintiffs' ASOF No. 260:** Disputed in part, mischaracterizes testimony, immaterial, and irrelevant. Plaintiffs' Exhibit 126 speaks for itself and is itself the best evidence as to its content. The factual assertions are immaterial to creating a dispute of fact as to whether: (1) each Non-Debtor Entity Defendant is not a single employer; and/or (2) the Non-Debtor Entity Defendants are entitled to the WARN

Acts' unforeseen business circumstances exception. The factual assertions are also irrelevant as to whether Non-Debtor Defendants are entitled summary judgment on all of Plaintiffs' claims as a matter of law.

DATED: July 31, 2019
New York, New York

PROSKAUER ROSE LLP

By: */s/ Nicole A. Eichberger*
Nicole A. Eichberger*
Gillian G. Egan*
650 Poydras Street, Suite 1800
Poydras Center
New Orleans, LA 70130
Tel.: (504) 310-2024
Fax : (504) 310-2022
Email: neichberger@proskauer.com
gegan@proskauer.com

Kathleen M. McKenna
Eleven Times Square
New York, New York 10036
Tel.: (212) 969-3000
Fax: (212) 929-2900
Email: kmckenna@proskauer.com

*Attorneys for Non-Debtor Defendants Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners III, LLC, Ark CLO 2001-1 Limited, and Ark Investment Partners II, L.P.*

*\*Admitted pro hac vice*