UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:                                            :

                                                  :    Chapter 7

      TRANSCARE CORP., *et al.*,            :    Case No. 16-10407 (SMB)

                                                  :

                Debtors.    :    (Jointly Administered)

------------------------------------------------------X

SHAMEEKA IEN on behalf of herself and all    :
Others similarly situated,                        :

               Plaintiff,    :    Adv. Proc. No. 16-01033

                                                  :

      --against--                          :

                                                  :

TRANSCARE CORP., TRANSCARE            :
NEW YORK, INC., TRANSCARE ML, INC., TC :
AMBULANCE GROUP, INC., TRANSCARE     :
MANAGEMENT SERVICES, INC., TCBA      :
AMBULANCE, INC., TC BILLING AND       :
SERVICES CORP., TRANSCARE            :
WESTCHESTER, INC., TRANSCARE         :
MARYLAND, INC., TC AMBULANCE NORTH,  :
INC., TRANSCARE HARFORD COUNTY, INC.,:
LYNN TILTON, ARK II CLO 2001-1 LIMITED, :
ARK INVESTMENT PARTNERS II, L.P.,     :
PATRIARCH PARTNERS, LLC, and          :
PATRIARCH PARTNERS III, LLC,          :

                                                  :

           Defendants.    :

------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER GRANTING
IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**A P P E A R A N C E S :**

OUTTEN & GOLDEN LLP
*Attorneys for Plaintiff*
3 Park Avenue, 29th Floor
New York, NY 10016

      Jack A. Raisner, Esq.
      René S. Roupinian, Esq.
      Robert N. Fisher, Esq.
         Of Counsel

PROSKAUER ROSE LLP
*Attorneys for Non-Debtor Defendants*
Eleven Times Square
New York, NY 10036

> Nicole A. Eichberger, Esq.
> Gillian G. Egan, Esq.
> Kathleen M. McKenna, Esq.
>        Of Counsel

LAMONICA HERBST & MANISCALCO, LLP
*Attorneys for Debtor-Defendants*
3305 Jerusalem Avenue
Wantagh, NY 11793

> Joseph S. Maniscalco, Esq.
> Holly R. Holecek, Esq.
>        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

This class action concerns claims under the Worker Adjustment and Retraining Notification Act ("US WARN Act"), 29 U.S.C. § 2101 *et seq.*, and the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act"), New York Labor Law ("NYLL") § 860 *et seq.* (collectively, the "WARN Acts"), as well as unpaid wages under various state laws. The Plaintiff filed this motion for partial summary judgment, (*see Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment*, dated May 21, 2019 ("*Motion*") (ECF Doc. # 123)), contending that the notices sent to the Debtors' employees did not satisfy the requirements of the WARN Acts and, consequently, the Debtor Defendants and Non-Debtor Defendants cannot assert certain

statutory defenses discussed below.[1]  For the reasons that follow, the *Motion* is granted in part and denied in part.

## BACKGROUND

At all relevant times prior to February 24, 2016, TransCare Corporation and its subsidiaries ("TransCare" or "Debtor Defendants") provided ambulance and paratransit transportation services in New York, Pennsylvania, and Maryland.  The subsidiaries included TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corp., TransCare Westchester, Inc., TransCare Maryland, Inc., TransCare Harford County, Inc., and TC Ambulance North, Inc. (collectively, with TransCare Corporation, the "Initial Debtors") and TransCarePennsylvania, Inc., TC Ambulance Corporation, and TC Hudson Valley Ambulance Corp. (collectively, the "Subsequent Debtors").  Facing financial problems, TransCare and those who controlled it[2] embarked on a restructuring plan.  They would terminate the operations of the Initial Debtors and continue the operations of the Subsequent Debtors through the foreclosure of their assets and the assignment of those assets to two new entities: Transcendence Transit, Inc. and

---

[1]    The Plaintiff also contends that the WARN notices should have been sent sooner based primarily on evidence that employees of one or more of the Non-Debtor Defendants, defined in the next footnote, began thinking about the need for a WARN notice over two weeks before they were sent, (*see Declaration of Jack A. Raisner*, dated May 21, 2019 ("*Raisner Declaration*") (ECF Doc. # 123-2), Ex. C (ECF Doc. # 123-6), Ex. D (ECF Doc. # 123-7), Ex. E (ECF Doc. # 123-8)), and actually drafted a WARN notice nearly two weeks before they were sent (*see id.*, Ex. F (ECF Doc. # 123-9), Ex. G (ECF Doc. # 123-10)).  (*Motion* at 20-22.)  The question of timing is factual and disputed.  It is also irrelevant to the sole legal question — whether the February Notices meet the requirements of the WARN Act.

[2]    The "Non-Debtor Defendants" include Lynn Tilton, Ark II CLO 2001-1 Limited, Ark Investment Partners II, L.P., Patriarch Partners, LLC, and Patriarch Partners III, LLC.  There is a dispute among the parties regarding which Non-Debtor Defendants controlled the Debtors for purposes of the WARN Act and state wage claims.  The dispute is the subject of a separate summary judgment motion in this adversary proceeding and will be the subject of a separate decision.

Transcendence Transit II, Inc. (collectively, "Transcendence"). Under this plan, approximately 700 employees of the Subsequent Debtors would continue to work for Transcendence and it would be business as usual.

On February 24, 2016, the Initial Debtors filed for bankruptcy under chapter 7 of the Bankruptcy Code in this Court, and Salvatore LaMonica, Esq. was appointed chapter 7 trustee ("Trustee"). Earlier that day, the employees of the Initial Debtors had received[3] an email ("First February 24 Notice") that described the plan just mentioned. After explaining that the paratransit and Pittsburgh and Hudson Valley ambulance businesses would continue to operate through Transcendence and save 700 jobs, the email continued:

> Sadly, as a result of a decision by our senior lender to cease providing additional funding, the remaining operations (NYC 911, Core, Westchester and Maryland), which have continued to face significant challenges throughout the restructuring process, are being forced into liquidation under Chapter 7 of the Bankruptcy Code. The operations associated with these businesses will discontinue starting today and responsibility for their remaining assets will be transferred to the custody of a court-appointed trustee.

> For those at work currently or scheduled to work today, please continue your usual good service until such time as you hear from the court appointed Trustee. We expect the appointed trustee to be able to provide you with further direction and answers to your questions in the days ahead.

> Please know that we have worked hard for months now to restructure the entire business. Unfortunately, today's events made that impossible, and we are deeply sorry for the job losses and any service interruptions for the communities we have served.

(*Raisner Declaration*, Ex. K (ECF Doc. # 123-14); *accord* Ex. M (ECF Doc. #123-16).)

The First February 24 Notice was issued by Glen Youngblood, a TransCare vice

---

[3]    The Plaintiff does not concede that the notices discussed in the succeeding text were actually sent and received by the affected employees but assumes that they were solely for the purposes of the motion.

president, and signed "From the TransCare Management Team" but contained no

contact information.

Later that same day, after the Initial Debtors had filed their chapter 7 cases,

Youngblood drafted an "update" ("Second February 24 Notice") which was apparently

sent to all employees and held out the hope of continued employment with the Initial

Debtors for an indefinite period:

> We are writing to be certain that the information people are receiving
> about the TransCare restructuring is accurate.  As we noted in our earlier
> communication, we have been working for months to try to restructure the
> business and save the jobs of our valued employees.
>
> Unfortunately, one of our senior lenders decided to cease funding, and we
> have been forced to file certain of our business units -- the NYC 911, NYC
> Core, Westchester and Maryland businesses -- for Chapter 7 bankruptcy.
> **These businesses have NOT been immediately shut down.**
>
> Tomorrow certain assets of TransCare will be in the hands of a court
> appointed trustee who we expect will have the needed runway to effect an
> orderly wind down.
>
> As stated previously, TransCare's existing ambulance divisions in
> Pittsburgh and the Hudson Valley will be acquired by Transcendence
> Transit, Inc.  Aside from the name of the new legal entity, nothing will
> change operationally for these businesses or their respective employees.
>
> In addition, TransCare's paratransit business will be acquired by
> Transcendence Transit II, Inc.  No positions in this business will be
> eliminated as a result, and all employees of the paratransit business will be
> employed by this new legal entity.
>
> We believe that through these restructuring efforts we have been able to
> save 700 jobs.  While we are disappointed that we could not save all the
> business units and jobs, we are grateful that much of TransCare's history
> can live on.

(*Id.*, Ex. P (bold face in original) (ECF Doc. # 123-19).)  This email was also signed by

"The TransCare Management Team" with no other contact information.  Although the

Second February 24 Notice held out the prospect of continued employment, the Trustee

advised the employees the next day to return the vehicles to the garages because the

businesses were being shut down.  (*Id.*, Ex. Q. at 54:2-55:19 (ECF Doc. # 123-20).)

The plan to continue the remaining operations through Transcendence quickly

died.  On February 26, 2016, the employees of the Subsequent Debtors received the

following email ("February 26 Notice," and together with the First and Second February

24 Notices, the "February Notices") authored by Tom Fuchs, Vice President of Transit

Services:

> This is a sad day for all of us who have loved and respected the work of
> TransCare employees.  We were excited to have an opportunity to begin
> anew with our Hudson Valley, Pittsburg and Para-transit divisions in a
> new company to preserve 700 jobs.  Unfortunately, today Wells Fargo, the
> Carl Marks restructuring firm and the Trustee of the bankrupt estate have
> decided not to fund payroll for last week's payroll obligation.  This is
> particularly distressing given Wells Fargo's previous commitment to fund
> a proper wind down plan upon which we agreed to file for Chapter 7
> bankruptcy protection.  Regrettably, the Trustee disputes our claims to
> assets that were foreclosed upon earlier this week.  This action prevents
> our ability to operate these three divisions.  Consequently, we simply
> cannot effectively serve our customers and our communities with these
> restrictions.  We are devastated by today's decisions, but unfortunately our
> hands are tied.  This means we must cease our operations immediately.
> Please secure your vehicles and operations and await further instruction
> from the court appointed Trustee.

(*Id.*, Ex. S (ECF Doc. # 123-22); *accord* Ex. T (ECF Doc. # 123-23); *Declaration of*

*Nicole A. Eichberger, Esq. in Support of Non- Debtor Defendants' Motion for Summary*

*Judgment*, dated May 21, 2019 (ECF Doc. # 113), Ex. SSS, P000132 (ECF Doc.

# 113-71).)  The February 26 Notice included Fuchs' contact information.

The Subsequent Debtors filed chapter 7 petitions in this Court on April 25, 2016.

Mr. LaMonica was also appointed chapter 7 trustee in these cases, and all of the cases

filed by the Debtor-Defendants have been administratively consolidated.

## This Adversary Proceeding

According to her Complaint, (*see Complaint*, dated Mar. 1, 2016 (ECF Doc. # 1)), the Plaintiff was employed by the "Defendants." (¶ 11.)[4]  She alleges that on or about February 24, 2016, the Debtors and the Non-Debtor Defendants terminated her and other similarly situated employees without advance notice and seeks relief under the WARN Acts and unpaid wages under state law.  (*Id.* ¶ 2-4.)  On October 24, 2016, the Court issued an Order certifying two classes.  (ECF Doc. # 46.)  The WARN Class comprises:

> All persons who worked at or reported to a Facility of Debtors who (1) were terminated without cause on or about February 24, 2016 or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by Debtors covered by the Worker Adjustment and Retraining Notification ("WARN") Act on or about February 24, 2016, and (2) are affected employees within the meaning of 29 U.S.C. § 2101(a)(5).

The WARN Class also contains a New York State WARN Sub-Class that comprises:

> All persons who worked at or reported to a Facility of Debtors in New York State who (1) were terminated without cause on or about February 24, 2016, or within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of any mass layoff and/or plant closing by Debtors covered by the New York State Worker Adjustment and Retraining Notification ("NY WARN") Act on or about February 24, 2016, and (2) are affected employees within the meaning of NYLL § 860-A (1),(4) and (6).

The Plaintiff thereafter filed the *Motion* seeking to preclude the Defendants from asserting two statutory defenses to the WARN Acts claims, discussed below, based on the insufficiency of the February Notices.  The Non-Debtor Defendants opposed the *Motion*, contending, *inter alia*, that the February Notices were sufficient.  (*Non-Debtor*

---

[4]    By order dated Nov. 26, 2019, the Court granted Plaintiff's motion for leave to file an amended complaint, a red-lined copy of which is located at ECF Doc. # 145-2.  The amended complaint does not affect the motion for partial summary judgment.

*Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion For Partial Summary Judgment*, dated June 28, 2019, at 11-19 (ECF Doc. # 114).)  The Trustee filed a limited objection on behalf of the Debtor Defendants.  (*See Chapter 7 Trustee's Limited Objection to Plaintiff's Motion for Partial Summary Judgment*, dated June 28, 2019 ("*Trustee's Opposition*") (ECF Doc. # 117).)  He argued that he was not an employer required to send his own WARN Act notices,[5] but conceded that the Debtors did not send WARN notices that complied with the WARN Acts.  (*Id.* at ¶¶ 7, 9, 13.)

## DISCUSSION

**A.    US WARN Act**

Under the US WARN Act, employers must provide sixty days advance written notice of plant closings and mass layoffs.  29 U.S.C. § 2102(a).  The notice must "be written in language understandable to the employees," 20 C.F.R. § 639.7(d), and contain the following information:

> (1)  A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
>
> (2)  The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
>
> (3)  An indication whether or not bumping rights exist;
>
> (4)  The name and telephone number of a company official to contact for further information.
>
> The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.

---

[5]    I do not understand the Plaintiff to take this position.

*Id.* The notice requirement, both in terms of timing and content, "provides

protection to workers, their families and communities" and "some transition time to

adjust to the prospective loss of employment, to seek and obtain alternative jobs and,

if necessary, to enter skill training or retraining that will allow these workers to

successfully compete in the job market." 20 C.F.R. § 639.1(a).

The US WARN Act includes two pertinent exceptions to the sixty-day notice

requirement which the Defendants have invoked in their answers. The first,

sometimes referred to as the Faltering Company Exception, provides:

> (1) An employer may order the shutdown of a single site of employment
> before the conclusion of the 60-day period if as of the time that notice
> would have been required the employer was actively seeking capital or
> business which, if obtained, would have enabled the employer to avoid or
> postpone the shutdown and the employer reasonably and in good faith
> believed that giving the notice required would have precluded the
> employer from obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1). The second, known as the Unforeseeable Business

Circumstances Exception (and with the Faltering Company Exception, the

"Exceptions"), provides:

> An employer may order a plant closing or mass layoff before the
> conclusion of the 60-day period if the closing or mass layoff is caused by
> business circumstances that were not reasonably foreseeable as of the time
> that notice would have been required.

29 U.S.C. § 2102(b)(2)(A).

If the employer relies on either Exception, it must still "give as much notice as

is practicable and at that time shall give a brief statement of the basis for reducing the

notification period." 29 U.S.C. § 2102(b)(3). The statement must "give some

indication of the factual circumstances that made an exception to the statutory notice

requirement applicable, providing an adequate, specific explanation to affected

workers," *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 390 (9th Cir. 1994); *accord Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996), and must also satisfy the additional requirements of § 639.7. *See* 20 C.F.R. § 639.9; *Varela v. AE Liquidation, Inc.* (*In re AE Liquidation, Inc.*), 866 F.3d 515, 524 (3d Cir. 2017); *Alarcon*, 27 F.3d at 389; *Carlberg v. Guam Indus. Servs.*, No. 14 Civ. 00002, 2017 WL 4381667, at *3 (D. Guam Sept. 30, 2017). Furthermore, the shortened notice must also be in writing. *Conn v. Dewey & LeBoeuf LLP* (*In re Dewey & LeBoeuf LLP*), 507 B.R. 522, 531-34 (Bankr. S.D.N.Y. 2014); *In re Organogenesis Inc.,* 316 B.R. 574, 584 (Bankr. D. Mass. 2004) (employer that "admitted its failure to give *any* written notice whatsoever under the WARN Act to the Claimants" "cannot rely on the asserted defenses that require an employer to have given *reduced* notice as soon as practicable") (emphasis in original), *aff'd* 331 B.R. 500 (D. Mass. 2005); *Barnett v. Jamesway Corp.* (*In re Jamesway Corp.*), 235 B.R. 329, 342 (Bankr. S.D.N.Y. 1999) ("[T]he statute and regulations clearly provide that an employer cannot invoke either exception without giving some written WARN notice.").[6] The employer that fails to provide the brief statement for the shortened notice or the other information required by 20 C.F.R. § 639.7(d) cannot rely on the defenses afforded by the exceptions. *Jamesway*, 235 B.R. at 339-40 ("[W]hen an employer ceases operating due to 'not reasonably foreseeable business circumstances' or because it is a 'faltering company,' the employer can give less than 60 days' WARN notice, provided the

---

[6]    One bankruptcy court has concluded that the shortened notice does not have to be in writing. *See Richards v. Advanced Accessory Sys., LLC* (*In re Advanced Accessory Sys., LLC*), 443 B.R. 756, 767 (Bankr. E.D. Mich. 2011). For the reasons explained by the *Dewey & LeBoeuf* Court, I agree that *Advanced Accessory* is unpersuasive on this point. In any event, the Non-Debtor Defendants do not contend that they gave oral notice that satisfied the WARN Acts.

notice contains certain 'basic' information, *see* 20 C.F.R. § 639.7, and an explanation

why the employer could not provide the full 60 days' notice.").

### B.    NY WARN Act

Under the NY WARN Act, employers must provide ninety-day written advance

notice of mass layoffs, relocation, or employment loss.  NYLL § 860-b(1).  The "[n]otice

must be specific," 12 N.Y. C.R.R. § 921-2.1(f), and "in a language understandable to the

employee." 12 N.Y. C.R.R. § 921-2.3.  In addition, it must contain the following

information:

(1)    The expected date of the first separation of employees and the date when the individual employee will be separated;

(2)    A statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed.  If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

(3)    A statement as to whether bumping rights exist;

(4)    The name and telephone number of an employer representative to contact for further information;

(5)    Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible.  Such information shall, at a minimum, include the following notice:

"You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment.  Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends.  If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance."

12 N.Y.C.R.R. § 921-2.3(b).

The NY WARN Act and regulations largely mirror the US WARN Act and regulations. *See* NYLL § 860-b(2) ("An employer required to give notice of any mass layoff, relocation, or employment loss under this article shall include in its notice the elements required by the federal Worker Adjustment and Retraining Notification Act (29 U.S.C. 2101 et seq.).").  The Plaintiff contends that the NY WARN Act "is stricter in several respects," (*Motion* at 4), but aside from the ninety-day notice requirement, does not identify the stricter provisions.  (*Id.* at 5).  In addition, the *Motion* relies exclusively on the requirements of the US WARN Act.  (*Id.* ("Given the consistency between the two Acts with regard to the issues raised here, this brief refers to the two laws collectively as the 'WARN Act,' however, references to 60 days' notice means 90 days' notice for New York employees.").)  Accordingly, the *Motion* will be decided based on the US WARN Act and accompanying regulations.

## C.    The *Motion*

The *Defendants'* answers include affirmative defenses that incorporate the Exceptions.  S*ee Answer* [of Non-Debtor Defendants] *to Adversary Class Action Complaint*, dated Apr. 22, 2016 ("*Non-Debtor Defendants' Answer*"), at pp. 17-19 (Tenth Affirmative Defense, Eleventh Affirmative Defense, Thirteenth Affirmative, Fourteenth Affirmative Defense) (ECF Doc. # 18); *Answer* [of Debtor Defendants] *to Adversary Class Action Complaint*, dated June 3, 2016 ("*Debtor Defendants' Answer*"), at pp. 18-20 (Seventh Affirmative Defense, Eighth Affirmative Defense, Tenth Affirmative Defense, Eleventh Affirmative Defense) (ECF Doc. # 24).

The Plaintiff seeks to strike those affirmative defenses on the ground that the Defendants failed to give sufficient WARN Act notices.

The *Motion* is granted as against the Debtor Defendants in light of their concession that "the Debtors did not send WARN notices in compliance with either the federal or New York WARN Acts." (*Trustee's Opposition* at ¶ 7.)  The Non-Debtor Defendants contend that the February Notices were sufficient.  I disagree as to the February 24 Notices but agree as to the February 26 Notice.

### 1.    February 24 Notices

An employer is entitled to combine multiple communications to cure ambiguities in earlier notices and argue that when read together, the communications provided sufficient notice under the WARN Act.  *See AE Liquidation*, 866 F.3d at 525 n.6; *Kalwaytis v. Preferred Meal Sys., Inc.,* 78 F.3d 117, 122 (3d Cir. 1996).  The opposite should also be true.  Where the communications combine to sow confusion and ambiguity with respect to critical information, they do not satisfy the WARN Act.

Such is the problem with the February 24 Notices.  Although the First February 24 Notice lamented the job losses, it also told the employees to report to work and await instructions from the chapter 7 trustee.  Having encouraged the employees to report for work, the First February 24 Notice failed to state the date when the mass layoff would occur and the employees would actually be terminated.  More important, the Second February 24 Notice, sent post-petition, indicated that the Initial Debtors would not immediately shut down and stated that the chapter 7

trustee "will have the needed runway to effect an orderly wind down." Assuming that this was understandable to the average employee, he or she still would not have known whether to show up for work the next day or for how long that employment would last. Reading the February 24 Notices together, they failed to provide the type of specific information regarding the first date of separation and the schedule of separations required by 20 C.F.R. § 639.7(d)(2).

The February 24 Notices suffered from other fatal omissions. They did not provide any contact information, *see* 20 C.F.R. § 639.7(d)(4), and instead, were simply signed by the "The TransCare Management Team." They did not identify the members of the team or provide any contact information. Furthermore, although the Second February 24 Notice was sent post-petition and the Trustee was appointed the next day, TransCare never sent out another notice providing the contact information for the Trustee who was supposed to continue their employment, at least temporarily, to effect an orderly wind down. Lastly, the February 24 Notices failed to mention bumping rights, 20 C.F.R. § 639.7(d)(3), *i.e.*, whether any of the affected employees were entitled to take the place of a soon-to-be Transcendence employee based on seniority or some other criteria. In short, even if the Court could overlook technical deficiencies with A WARN notice, *see Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 561 (6th Cir. 1996); *Schmelzer v. Office of Compliance*, 155 F.3d 1364, 1369 (Fed. Cir. 1998) (courts "have looked to the purposes underlying the WARN Act and determined whether those purposes were satisfied under the circumstances by the notice that was given to the employees") (citing cases); *see also Kalwaytis*, 78 F.3d at 121-22 ("Fairly read, the regulations require a practical and realistic appraisal of the information given to affected

14

employees."), the February 24 Notices failed to apprise the affected employees in understandable language whether they were still working and if so, for how long.

### 2.    February 26 Notice

In contrast, the February 26 Notice was sufficient.  It explained the specific circumstances why the remaining divisions — the Hudson, Pittsburgh and para-transit companies — could no longer operate and why shortened notice was being given.   That very day, Wells Fargo, the Carl Marks restructuring firm and the Trustee had decided not to fund last week's payroll and the Trustee (appointed the previous day) disputed Transcendence's right to operate their assets.  Thus, it included a brief statement explaining the reason for the shortened notice required by 29 U.S.C. § 2102(b)(3) and 20 C.F.R. § 639.9, and described circumstances beyond the Subsequent Debtors' control.  20 C.F.R. § 639.9(b)(1).  Any employee reading this statement would understand that even if she was one of the 700 slated to continue working for Transcendence, that possibility had ended, and her employment had terminated that day.  20 C.F.R. § 639.7(d)(1), (2).  The reference to awaiting instructions from the Trustee did not concern continued employment.  It related to what to do with the vehicles the employees were directed to secure.  In addition, this notice provided Fuchs' contact information and any employee with a question could reach out to him.  *Id.*, § 639.7(d)(4).  Finally, although the February 26 Notice did not mention bumping rights, the entire business was now shut down, all employees were terminated, and even if bumping rights existed, there were no jobs or anyone to bump from those jobs. Accordingly, the February 26 Notice satisfied the notification requirements under the WARN Acts and regulations.

15

In conclusion, the *Motion* is granted to the extent of striking the Debtors'
Seventh, Eighth, Tenth, and Eleventh Affirmative Defenses and the Non-Debtors' Tenth,
Eleventh, Thirteenth, and Fourteenth Affirmative Defenses with respect to those
members of the class affected by the February 24 Notices, but is otherwise denied.  The
Court has considered the other arguments made by the parties and concludes that they
lack merit or are rendered moot by the disposition of the *Motion*.  Settle order on notice.

Dated:  New York, New York
   January 10, 2020

        /s/ *Stuart M. Bernstein*
         STUART M. BERNSTEIN
       United States Bankruptcy Judge