## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*<br>TRANSCARE CORPORATION, *et al.*,[1]<br><div align="right">Debtors.</div> | Chapter 7<br>Case No. 16−10407 (DSJ)<br>(Jointly Administered) |
| SHAMEEKA IEN on behalf of herself and all others similarly situated,<br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br>TRANSCARE CORPORATION, TRANSCARE NEW YORK, INC., TRANSCARE ML, INC., TC AMBULANCE GROUP, INC., TRANSCARE MANAGEMENT SERVICES, INC., TCBA AMBULANCE, INC., TC BILLING AND SERVICES CORPORATION, TRANSCARE WESTCHESTER, INC., TRANSCARE MARYLAND, INC., TC AMBULANCE NORTH, INC. AND TRANSCARE HARFORD COUNTY, INC., LYNN TILTON, ARK CLO 2001-1 LIMITED, ARK INVESTMENT PARTNERS II, L.P., PATRIARCH PARTNERS, LLC, and PATRIARCH PARTNERS III, LLC,<br><div align="center">Defendants.</div> | Adv. Proc. No. 16−01033-dsj |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION IN LIMINE

---

[1] The Debtor Defendants are TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc., TransCare Harford County, Inc., TransCare Pennsylvania, Inc., TC Ambulance Corporation and TC Hudson Valley Ambulance Corporation (collectively, the "Debtors," "Debtor Defendants," or "TransCare").

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RESPONSE TO PROCEDURAL HISTORY .............................................................. 4

ARGUMENT ...................................................................................................................... 5

    I.    An Article III Judge Affirmed Judge Bernstein's Findings ................................. 5

    II.    The Four Factors Governing Whether Collateral Estoppel Applies are Met .................. 5

      A.    The Issues for Which Collateral Estoppel are Sought are Identical ........................... 5

      B.    The Issues Were Actually Litigated ......................................................... 8

      C.    Patriarch Partners had a Full and Fair Opportunity to Litigate ................................. 10

      D.    The Factual Findings Were Necessary to Support a Final Judgment ........................ 10

    III.    Application of Collateral Estoppel is Fair Here .............................................. 11

      A.    The Court's Findings Were Adopted by the District Court ....................................... 11

      B.    Plaintiff Does Not Seek Summary Judgment by This Motion .................................. 11

      C.    Inconsistent Prior Judgments ....................................................................... 12

      D.    Procedural Opportunities and Incentive to Raise ..................................................... 14

      E.    Scope and Complexity .................................................................................. 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
 825 F.2d 634 (2d Cir. 1987)............................................................................... 9

*Bifolck v. Philip Morris USA Inc.*,
 936 F.3d (2d Cir. 2019)............................................................................... passim

*Guippone v. BH S & B Holdings LLC*,
 737 F.3d 221 (2d Cir. 2013)............................................................................... 13

*In re Teltronics Servs., Inc.*,
 762 F.2d 185 (2d Cir. 1985)................................................................................. 8

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.*,
 937 F.2d 729 (2d Cir. 1991)................................................................................. 7

*Melwani v. Jain*,
 No. 02 CIV. 1224 (DF), 2004 WL 1900356 (S.D.N.Y. Aug. 24, 2004) ................... 9

*Metromedia Co. v. Fugazy*,
 983 F.2d 350 (2d Cir. 1992)................................................................................. 7

*Ruiz v. Comm'r of the Dep't of Transp.*,
 858 F.2d 898 (2d Cir.1988)................................................................................. 9

*Tecocoatzi-Ortiz v. Just Salad LLC*,
 No. 18CV7342 (JGK), 2019 WL 1585163 (S.D.N.Y. Apr. 12, 2019) ...................... 8

Statutes

29 U.S.C. § 152 (2) (NLRA)................................................................................ 13
29 U.S.C. § 2101(a)(1) ....................................................................................... 13

Regulations

20 C.F.R. 639.3(a)(2) .......................................................................................... 13

Other Authorities

*SEC v. Steinberg*, No. 99-CV-6050,
 2007 U.S. Dist. LEXIS 101372 (E.D.N.Y. Mar. 1, 2007)...................................... 7

## INTRODUCTION

Plaintiff's motion is based on the non-controversial idea that this Court should not be required to sit for a lengthy trial for Plaintiff to establish facts that were already established at trial in the Trustee's Adversary to which both Non-Debtor Defendants Ms. Tilton and Patriarch Partners were party.

The Non-Debtor Defendants attempt to obfuscate this obviously correct conclusion by undergoing a lengthy discussion of what issues and causes of action were asserted against which parties in which action. All of those efforts to confuse are, as explained below, merely smokescreens, which the Court can simply walk through to the inexorable conclusion that application of collateral estoppel is appropriate in this case. The only limit on the Court's adoption of facts here is the decision in the NLRB case,[2] which is less of an impediment to the Court's adoption of facts to streamline this action than it appears at first glance.

Non-Debtor Defendant's arguments are faulty and not supported by case law or have been rendered moot. First, the Non-Debtor Defendants argue that Judge Bernstein's Findings are not final and must be reviewed by a District Court. However, on September 29, 2021, Judge Kaplan issued his decision adopting Judge Bernstein's Findings. Exhibit A hereto.

Second, after going on a lengthy, irrelevant tour of their view of the meaning of the prior decisions in this case, the issues that remain to be tried, and issues that were tried before Judge Bernstein, the Non-Debtor Defendants argue that the issues in the two proceedings are not identical and were not actually litigated. Notably, Non-Debtor Defendants do not quote directly from any decision of the Court to support their characterization of this Court's Findings, nor do they cite to any law for what Plaintiff "must" establish at trial in this action.

---

[2] A copy of the NLRB's Decision and Order is annexed hereto as Exhibit C for the Court's convenience.

1

Regardless, the Non-Debtor Defendants' argument is utterly contradicted by the binding decision in *Bifolck*. Non-Debtor Defendants attempt to cabin collateral estoppel to cases in which identical causes of action and proof are required. But, where, as here, collateral estoppel is sought to establish facts and not legal conclusions, the Second Circuit clearly explained that the question of whether issues are identical deals "not with claims or cause causes of action as a whole" but rather "with *issues*—single, certain and material point[s] arising out of the allegations and contentions of the parties." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 81 (2d Cir. 2019).

Third, Patriarch Partners seeks refuge in the notion that Judge Bernstein's Findings are not against *it* but rather are against Ms. Tilton in causes of action against Ms. Tilton. But collateral estoppel applies not only to a party, but also to its privies – even when those privies are not present at the prior trial. Here, Patriarch Partners and Ms. Tilton are privies and they both mounted the same arguments represented by the same counsel in the same trial. There is no basis for finding that collateral estoppel cannot apply to Patriarch Partners in this case for factual findings that related to claims against Ms. Tilton. Moreover, the factual findings by Judge Bernstein did relate to claims against Patriarch Partners whose involvement and knowledge of the bankruptcy filings and events leading up to and occurring immediately thereafter were necessary components of the claims against Patriarch Partners itself.

Fourth, the Non-Debtor Defendants assert various "fairness" reasons why Judge Bernstein's Findings should not be applied to Patriarch. But, with one exception, these are merely rehashes of the faulty argument that collateral estoppel is tied to the ultimate issues and is limited to a party against whom specific identical claims are made.

Finally, as to the issue of inconsistent prior judgments, Plaintiff acknowledges that the NLRB's findings should have been discussed and synthesized in the opening brief. But, the

failure to do so was a matter of poor argumentation and not malicious. There was little doubt that Non-Debtor Defendants were aware of and would raise the issue of that decision as they were defendants in that proceeding and were represented by the same counsel in that proceeding. In any event, the NLRB's Administrative Law Judge's ("ALJ") findings are largely consistent with Judge Bernstein's Findings on many points regarding TransCare's demise. Plaintiff has outlined the consistencies and inconsistencies in a table found in Exhibit B hereto.

The NLRB and Judge Bernstein did differ in aspects of their findings as to Patriarch's involvement in the day-to-day operations of TransCare. Judge Bernstein made extensive findings regarding how Patriarch employees and Ms. Tilton were involved in the day-to-day operations and the ultimate disposition of TransCare and its assets and the termination of its employees.

Indeed, in this case, Judge Bernstein denied summary judgment to Patriarch on single employer liability based on similar evidence regarding such involvement. Dkt. No. 157 at 22-31. Based on a different record, the NLRB's ALJ concluded that Patriarch was not involved in day-to-day operations of TransCare and based on a different standard than the one applicable here, it concluded that Patriarch was not a joint employer with the Transcendence entities.

Plaintiff was not a party to the NLRB proceedings and was not a member of the union. The NLRB's decision is not binding on her, nor can it be used collaterally on her – indeed Non-Debtor Defendants implicitly acknowledge this by not asking for such application.

Ultimately, the facts regarding the demise of TransCare at the hands of the Non-Debtor Defendants need not be recreated. There is no daylight between the two decisions on the point that Ms. Tilton hatched a plan to transfer assets and employees from TransCare to

Transcendence and that the plan failed when she filed TransCare entities into bankruptcy without a payroll processing mechanism and without transferring the critical MTA contract to TransCare.

Plaintiff never moved for summary judgment on the two WARN Act liability issues that remain. Plaintiff only sought summary judgment on the sufficiency of WARN Notice, which was granted in part. The Court denied Patriarch's motion as to the WARN Act's unforeseeable business circumstances defense.

Because the Court found that the WARN Notice was not facially defective as to employees who were intended to work for Transcendence, the issue remains as to whether their termination was unforeseeable. There are sufficient consistent findings in Judge Bernstein's decision and in the NLRB decision to grant Plaintiff summary judgment on that issue. If the Court grants Plaintiff's current motion, at least in part, Plaintiff will seek leave to file a summary judgment motion on those issues for which summary judgment is appropriate to further streamline the issues for trial in this case.

## RESPONSE TO PROCEDURAL HISTORY

Non-Debtor Defendants attempt to turn this motion into an opportunity to pre-litigate issues for trial and put forth their own version of the law and the facts that have been and must be established. Judge Bernstein's decisions speak for themselves and the Non-Debtor Defendants' effort to paraphrase them favorably is simply irrelevant to this motion. Moreover, Judge Bernstein expressly denied Patriarch Partners' motion for summary judgment on the WARN Acts and extant wage liability claims and issued extensive findings regarding Non-Debtor Defendants' activities that are the subject of this motion. Plaintiff does not have the space in reply to rewrite Judge Bernstein's Findings in her own words. Plaintiff respectfully requests that

the Court ignore Non-Debtor Defendants' misleading gloss on Judge Bernstein's decisions and focus on the issue of collateral estoppel that is at hand.

<div align="center">

**ARGUMENT**
</div>

## I.     An Article III Judge Affirmed Judge Bernstein's Findings

Non-Debtor Defendants argue that Judge Bernstein's Findings are proposed and therefore not actually litigated or decided. Opp. at 25. Plaintiff addressed this argument in its opening brief, noting that final judgment in the res judicata concept does not require a final judgment to be signed, sealed, delivered and recorded on the judgment rolls.

Regardless, any of Judge Bernstein's Findings which were once proposed are now final as the District Court effectively adopted them. *See* Exhibit A.   This issue is moot.

## II.    The Four Factors Governing Whether Collateral Estoppel Applies are Met

### A.  The Issues for Which Collateral Estoppel are Sought are Identical

Non-Debtor Defendants contend that Plaintiffs seek to preclude them from relitigating whether Patriarch was a single employer with TransCare under the WARN Act, whether they were joint employers under relevant state wage statutes, and whether the WARN Act's unforeseeable business circumstances applies to a cadre of employees who were terminated after the initial bankruptcy filings. Opp. at 20.

That is not what Plaintiff seeks to do.   Plaintiff set out facts from Judge Bernstein's Findings *in haec verba.* She now seeks the Court to adopt those specific factual findings. These facts will bear upon the causes of action and ultimate issues in this case, but no findings as to ultimate issues are sought in this motion. Rather, the motion seeks to settle for purposes of this action certain facts that have already been highly litigated and definitively established regarding TransCare's demise.

Non-Debtor Defendants engage in this exercise of mental gymnastics, bringing in the ultimate issues where nothing regarding the ultimate issues is sought to be decided, because the law is so clearly inconsistent with their opposition. In her opening brief, Plaintiff discussed the controlling decision of *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74 (2d Cir. 2019), which clearly refutes Non-Debtor Defendants' arguments on this score.

As the Court held in *Bifolck*, where "the issue to which the plaintiff seeks to give preclusive effect concerns only the existence or non-existence of certain facts, and not the legal significance of those facts, it need only deal with the same past events as the previously-decided issue to be considered identical." *Id.* at 81 (cleaned up). The Court further explained that "[i]n such cases, the 'legal standards to be applied' need not be identical." *Id.* (citation omitted). The Court noted that in a prior decision it had "distinguished between a hearing officer's ultimate conclusion . . . which was 'guided by [a] particular legal framework," from "[t]he *factual* findings supporting [this conclusion].'" *Id.* at 81 (citation omitted).

The Court also rejected the notion that the ultimate issue at trial must be the same as the issue for which the Plaintiff seeks to apply preclusion. The Court expressly stated that "[t]o the extent [defendant] contends that the identicality prong requires that the issue to which a plaintiff seeks to give preclusive effect be identical to an issue the plaintiff must ultimately prove at trial, [defendant] is mistaken on the law." *Id*. at 82.

Finally, and critically, the Court also expressly indicated that "**the identicality standard does not require either that the two cases have the same scope or that they involve the same causes of action**. . . . Rather, it is met, as here, so long as the *issues* are identical." *Id*. (Bold emphasis added).

The *Bifolck* court therefore imported "factual findings made in a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") case against Philip Morris" into an action under the "Connecticut Product Liability Act ("CPLA"), alleging that . . . Marlboro and Marlboro Lights cigarettes (collectively, "Marlboros") were negligently designed and caused [appellant's] lung cancer and subsequent death at the age of 42." *Bifolck*, 936 F.3d at 77.

Here, where Plaintiff seeks simply to import specific factual findings as to the "same past events" without any gloss as to the ultimate issue to which they apply, the "issues" in the two cases are clearly the same for collateral estoppel purposes, indeed they are identical – a factual record established at trial.

Non-Debtor Defendants point to the decision in *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992), for the proposition that "[i]ssues are not identical when the legal standards governing their resolution are significantly different." Opp. at 20. But that decision only recites that legal principle. Tracing the proposition to its root in the case cited in *Metromedia*, the decision in *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729 (2d Cir. 1991), offers little help to Non-Debtor Defendants. There, the Court held in a trademark action that "[t]hough worded similarly, the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement." *Id*. at 734.

That is, the *Jim Beam* decision stands for the uncontroversial proposition that two issues are not the same just because they bear the same name if the operative legal terminology means two different things in context.[3]

---

[3] Non-Debtor Defendants also cite *SEC v. Steinberg*, No. 99-CV-6050, 2007 U.S. Dist. LEXIS 101372 (E.D.N.Y. Mar. 1, 2007) on this point. In that case, the only disputed issue was whether there was a full and fair opportunity to litigate because defendants appeared *pro se*. It is unclear what relationship that decision has on this matter.

But here, Plaintiff simply seeks to import the factual record that was established after trial before Judge Bernstein on the events leading to and immediately after TransCare's initial bankruptcy filings. This is precisely the type of use of collateral estoppel that promotes efficiency and can be done without controversy because there is no question that TransCare's factual history has not changed.

## B. The Issues Were Actually Litigated

Non-Debtor Defendants contend that the issues in the matter were not actually litigated because "facts and liability found as to Ms. Tilton" cannot be "imputed to Patriarch Partners." Opp. at 25.

Non-Debtor Defendants do not cite to any authority for this proposition. The closest they come is a later cite to *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18CV7342 (JGK), 2019 WL 1585163, at *3 (S.D.N.Y. Apr. 12, 2019). Opp. at 26. That case is wholly inapposite. There, the Court allowed plaintiffs to pursue claims against Just Salad because those plaintiffs had not been plaintiffs in a prior case and therefore had no opportunity whatsoever to litigate the merits of their claim. *Tecocoatzi-Ortiz,* at *3.

Moreover, Patriarch Partners actually litigated these issues at trial. Even if it had not, the law is clear that res judicata applies to parties *and their privies* and that such privies can include corporate entities and their owners. *See In re Teltronics Servs., Inc.*, 762 F.2d 185, 191 (2d Cir. 1985) ("A judgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case.").

"[A] finding of privity between a shareholder and the corporation depends on whether, under the circumstances, the interests of the nonparty were adequately represented."

*Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987). Here, not only was Patriarch adequately represented in the action by Ms. Tilton, Patriarch itself appeared in the action and was defended by the same attorneys, cementing the application of res judicata to Patriarch Partners. *See Melwani v. Jain*, No. 02 CIV. 1224 (DF), 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) ("the fact that the parties in the prior and current litigation had the same attorney is of 'singular significance' in the privity analysis") (quoting *Ruiz v. Comm'r of the Dep't of Transp.,* 858 F.2d 898, 903 (2d Cir.1988)). Moreover, as noted, there is more than just privity here, Patriarch actually litigated the issues.

Further, while Non-Debtor Defendants make extensive arguments about which claims were against which parties, they cannot at bottom explain why Patriarch would not have had every incentive to establish the correct factual record as to the events that caused TransCare's demise and the failure of Transcendence, including Patriarch Partner's knowledge of and involvement in those events. Indeed, Non-Debtor Defendants expressly indicate that those were issues to be determined at trial. For example, Non-Debtor Defendants specify that the Court had to decide "[d]id Patriarch Partners exercise day-to-day control over TransCare or control its finances?"; "[w]as Patriarch Partners an insider by virtue of Ms. Tilton's ownership and/or control of that entity?; and "[d]id Patriarch Partners involvement in the restructuring result in any injuries to TransCare's creditors. . . ?" Opp. at 12.

What daylight is there between the facts necessary to decide those issues and the facts that the Court found? None. Even if there were some daylight, as discussed, Patriarch Partners actually appeared at trial and put on the same case as Ms. Tilton with the same attorneys.

Moreover, Non-Debtor Defendants' repeated suggestion that collateral estoppel is inappropriate here because the ultimate issues are different in this case, does nothing to shield it

from the fact that the factual history of TransCare's demise has been set in stone by Judge Bernstein and adopted by Judge Kaplan and those issue can be adopted by this Court without having to rehear the evidence. *See Bifolck*, 936 F.3d at 81-82.

### C. Patriarch Partners had a Full and Fair Opportunity to Litigate

Patriarch echoes its refrain when it argues that it did not have a full and fair opportunity to litigate because the ultimate issues in this case are not the same as those in the Trustee's Adversary. Opp. at 27. That argument fails, as explained extensively above.

Patriarch also argues that it was a defendant only as to equitable subordination and violation of the automatic stay claims. Opp. at 26. But again, as explained above, Patriarch had every opportunity to create the proper factual record regarding the demise of TransCare and it actually litigated those issues at trial alongside Ms. Tilton with the same counsel.

### D. The Factual Findings Were Necessary to Support a Final Judgment

Singing the same tune, Patriarch argues that the factual findings Plaintiff seeks this Court to adopt had nothing to do with the Court's decision as to Patriarch and that there is no identity of claims between these two actions. Opp. at 28. Patriarch cites no authority in this section of its argument and certainly none for the principle that a court's findings only have preclusive effect on a claim-by-claim basis against each party. Patriarch, as repeatedly noted, was actually present at trial and actually defending. The issues for which preclusion is sought are not the ultimate issues of liability, but rather factual findings as to the events that transpired.

Ultimately, Patriarch's argument that Judge Bernstein's Findings that Plaintiff seeks to adopt were not "necessary to the Court's dismissal of Patriarch Partners or its proposed finding of liability as to Ms. Tilton," Opp. at 28, is simply divorced from reality. Judge Bernstein issued findings about Ms. Tilton and Patriarch's actions in bringing TransCare to bankruptcy and trying

to transfer assets to Transcendence in painstaking detail precisely because it supported his legal conclusions that, *inter alia*, Ms. Tilton breached her fiduciary duty to TransCare.

The reason for the requirement that an issue is necessary to support a final judgment, as Plaintiff explained in her opening brief, is that it "protect[s] against unfairness[ ] by ensuring that the issue [was] really disputed and that the loser ... put out his best efforts." *Bifolck*, 936 F.3d at 82. It cannot be legitimately argued that Patriarch and Ms. Tilton did not put out their best efforts to establish their own version of the events leading to TransCare's demise and the failure of Transcendence. Indeed, for example, the question of what Patriarch employees were doing after the bankruptcy filing to run Transcendence bears on the claim against Patriarch that it violated the automatic stay. The issues for which preclusive effect is sought are not ancillary issues, the entire purpose of the lengthy trial held by Judge Bernstein was to make findings on these issues to decide the claims that it had at hand.

### III.  Application of Collateral Estoppel is Fair Here

### A.  The Court's Findings Were Adopted by the District Court

As explained above, the question of finality is moot. All proposed findings are no longer proposed.

### B.  Plaintiff Does Not Seek Summary Judgment by This Motion

Non-Debtor Defendants argue that Patriarch is "entitled to offer evidence" as to the issues of the unforeseeable business circumstances defense and single and joint employer under the WARN Acts and wage laws. But Plaintiff does not seek immediate summary judgment in its favor. Rather, Plaintiff never filed a motion for summary judgment on either of these issues – the merits of the WARN Act defense or single and joint employer liability. Plaintiff defended

against Patriarch and Ms. Tilton's motion on those issues and Plaintiff was granted summary judgment *sua sponte* on certain joint employer wage liability claims against Ms. Tilton.

Plaintiff believes that if the Court grants this motion in part or in full, it would be extremely efficient to allow Plaintiff to move for summary judgment on some or perhaps all of these issues rather than proceeding immediately to trial. For example, if the Court grants preclusive effect to Judge Bernstein's decision regarding the events that caused Transcendence to fail, such as Non-Debtor Defendants' failure to transfer the MTA contract to Transcendence, establish a payroll mechanism, or procure funds to pay payroll before filing TransCare into bankruptcy, it will establish that the resulting shutdown was self-inflicted and not caused by unforeseeable outside circumstances.

Plaintiff declined to move for summary judgment on this defense precisely because she knew that those events would be disputed. Now that they have been established at trial, summary judgment is appropriate.

### C. Inconsistent Prior Judgments

Contrary to Non-Debtor Defendants' suggestion, Plaintiff was not called and did not give testimony in the NLRB proceeding. She was not a party to that proceeding, made no appearance, nor was she represented there, as she was not a member of the union that was involved in the proceeding. The proceeding has no preclusive effects on her and Patriarch does not seek to apply it here. As explained, and as demonstrated in the attached table, Exhibit B, the ALJ's findings are largely consistent with Judge Bernstein except as to some critical points regarding Judge Bernstein's extensive findings on the day-to-day involvement of Patriarch employees in running TransCare. Plaintiff acknowledges that this represents an impediment to the application of collateral estoppel on those specific findings.

Additionally, though Patriarch suggests that the NLRB's findings have special import here, it is important to recognize that the NLRB's joint employer test differs in a critical manner from the WARN Act test. While the NLRB decision focuses heavily on the day-to-day exercise of control over terms and conditions of employment, WARN liability is different.

That is because the National Labor Relations Act's definition of "employer" ("includes any person acting as an agent of an employer, directly or indirectly"), is markedly different from that of the WARN Act ("any business enterprise"). 29 U.S.C. § 152 (2) (NLRA), 29 U.S.C. § 2101(a)(1) (WARN). The statutes attach employer liability to a parent based on different factors. The NLRB test focuses strictly on whether some integration exists within the organizational structures and day-to-day operations, not on whether one entity controlled the actions that triggered the statutory violation.[4] The WARN Act regulation's de facto control factor focuses on whether the parent made the complained-of shutdown decision and allows a finding of single employer liability even when the other WARN Act integrated enterprise factors such as "unity of personnel policies emanating from a common source," 20 C.F.R. 639.3(a)(2), are totally absent.

Thus, in *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221 (2d Cir. 2013), the Court held in the WARN Act context that where a parent company rendered the subsidiary "not free to implement its own decisions, and that the layoffs were, in fact, directed by [the parent company]," that this was a "particularly striking" exercise of control for which "liability might be warranted even in the absence of the other factors." *Id*. at 228.

Additionally, the NLRB decision is limited in scope to those employees who Ms. Tilton sought to retain as Transcendence employees. It makes no analysis of the employer for those

---

[4] "The Board focuses on four factors in determining whether entities constitute a single employer: (1) interrelations of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." Exhibit C at 13.

employees who were terminated when Ms. Tilton filed TransCare's initial Chapter 7 Petitions. The Court has already found that the unforeseeable business circumstance defense is inapplicable to these employees. Dkt No. 154 at 13-15; Dkt No. 159.

Finally and respectfully, the NLRB decision was erroneous. The NLRB's ALJ credited testimony for which there was significant inconsistent material in the record developed in Judge Bernstein's Court at trial and as to which he made lengthy findings which are not consistent with the much shorter recitation of facts in the NLRB decision. For example, the NLRB does not address the Authority Matrix that limited TransCare's ability to engage in actions including a reduction in force without express permission from Ms. Tilton. *See* Mov. Br. at 7.

In all events, as previously explained, none of the NLRB's decision are binding on Ms. Ien, the plaintiff in this action, who was not involved in the NLRB trial other than observation without appearance by her counsel and who was not part of the union that was before the NLRB.

Ultimately, as explained above, the NLRB decision may preclude this Court from adopting certain specific findings made by Judge Bernstein regarding Patriarch's involvement in day-to-day operations at TransCare, but it does nothing to preclude this Court from adopting the bulk of Judge Bernstein's findings and it does not preclude this Court from making the same findings as Judge Bernstein on the issues that concern de facto control and the other relevant factors for WARN Act single employer liability.

### D. Procedural Opportunities and Incentive to Raise

Non-Debtor Defendants suggest that they will not have an opportunity to raise issues or present evidence if this motion is granted. Opp. at 34. That simply is not the case. As explained, Plaintiff is not seeking summary judgment here but only that the Court give preclusive effect to factual findings that were integral to Judge Bernstein's decision.

14

Moreover, as discussed above, the Court may tailor its order to give preclusive effect to the substantial set of facts that Judge Bernstein and the NLRB agree on or that the NLRB decision is not inconsistent with while reserving certain specific issues regarding Patriarch's involvement in labor and employment decisions for trial. Such an order would create significant efficiencies while steering clear of any issue on which the NLRB and Judge Bernstein disagreed.

**E.  Scope and Complexity**

Non-Debtor Defendants suggest that the scope and complexity of the two cases is different. This is just another variety of Non-Debtor Defendants' faulty argument that res judicata is inappropriate because the ultimate legal issues are different in the two cases. Again, the Court's factual recitation of the leadup to TransCare's bankruptcy and its immediate aftermath is not going to change based on what claims are asserted in what action. Judge Bernstein presided over a lengthy trial and issued extensive findings that have now been adopted by an Article III judge (as to those findings that were proposed). There is simply no reason for this Court to hold a trial on all of those same events so that Patriarch can seek to establish an alternate history. Rather than the parties wasting the Court's time at trial on facts that have already been established, the issues for trial should be significantly narrowed by reliance on the time-tested principles of res judicata.

**CONCLUSION**

Wherefore, the Court should grant Plaintiff's motion and give Plaintiff an opportunity to explain why allowing Plaintiff to move for summary judgment on certain outstanding issues is appropriate to further streamline the issues for trial.

Dated: October 6, 2021

By:  /s/ Jack A. Raisner
Jack A. Raisner

René S. Roupinian
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, NY  10016
Telephone: (212) 221-1747
Facsimile:  (212) 221-1747
E-mail:      jar@raisnerroupinian.com
                   rsr@raisnerroupinian.com

*Attorneys for Plaintiff Shameeka Ien and the Certified Class*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,[5] | Bankr. Case No. 16-10407-DSJ<br>Chapter 7<br>(Jointly Administered) |
| SHAMEEKA IEN on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSCARE CORPORATION, TRANSCARE NEW YORK, INC., TRANSCARE ML, INC., TC AMBULANCE GROUP, INC., TRANSCARE MANAGEMENT SERVICES, INC., TCBA AMBULANCE, INC., TC BILLING AND SERVICES CORPORATION, TRANSCARE WESTCHESTER, INC., TRANSCARE MARYLAND, INC., TC AMBULANCE NORTH, INC. AND TRANSCARE HARFORD COUNTY, INC., LYNN TILTON, ARK CLO 2001-1 LIMITED, ARK INVESTMENT PARTNERS II, L.P., PATRIARCH PARTNERS, LLC, and PATRIARCH PARTNERS III, LLC,<br><br>Defendants. | **Adv. Case No. 16-01033-dsj** |

## CERTIFICATE OF SERVICE

I, Jenny Hoxha under penalties of perjury, certify the following as true and correct:  I am

not a party to this action and I am over 18 years of age.  I further certify that true and correct copies

---

[5] The debtors consist of TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc., TransCare Harford County, Inc., TransCare Pennsylvania, Inc., TC Ambulance Corporation and TC Hudson Valley Ambulance Corporation (collectively, the "Debtors" or "TransCare").

of the *Plaintiff's Reply in Support of Motion in Limine, Exhibits A -C* with this *Certificate of Service* were served on the 6th day of October 2021 via e-mail on the parties in the service list below:

Dated: October 6, 2021

New York, New York

/s/ Jenny Hoxha_____
JENNY HOXHA

**SERVICE LIST**

Nicole A. Eichberger
Gillian G. Egan
**Proskauer Rose LLP**
650 Poydras Street, Suite 1800
Poydras Center
New Orleans, LA 70130
E-mail: neichberger@proskauer.com
gegan@proskauer.com

Kathleen M. McKenna, Esq.
Allan S. Bloom, Esq.
Andrew E. Rice, Esq.
Nayirie Kuyumjian, Esq.
**Proskauer Rose LLP**
Eleven Times Square
New York, New York 10036
E-mail: kmckenna@proskauer.com
abloom@proskauer.com
arice@proskauer.com
nkuyumjian@proskauer.com

*Counsel to non-Debtor Defendants Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners III, LLC, Ark Clo 2001-1 Limited, and Ark Investment Partners II, L.P.*

Holly R. Holecek, Esq.
**LaMonica Herbst & Maniscalco, LLP**
3305 Jerusalem Avenue
Wantagh, NY 11793
E-mail: hrh@lhmlawfirm.com

*Counsel to Trustee*