**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRANSCARE CORPORATION, *et al.*, | ) | Chapter 7 |
| | ) | Case No. 16-10407 (DSJ) |
| Debtors. | ) | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| SHAMEEKA IEN on behalf of herself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 16-1033 (DSJ) |
| v. | ) | |
| | ) | |
| TRANSCARE CORPORATION, | ) | |
| TRANSCARE NEW YORK, INC., | ) | |
| TRANSCARE ML, INC., TC | ) | |
| AMBULANCE GROUP, INC., | ) | |
| TRANSCARE MANAGEMENT | ) | |
| SERVICES, INC., TCBA AMBULANCE, | ) | |
| INC., TC BILLING AND SERVICES | ) | |
| CORPORATION, TRANSCARE | ) | |
| WESTCHESTER, INC., TRANSCARE | ) | |
| MARYLAND, INC., TC AMBULANCE | ) | |
| NORTH, INC. AND TRANSCARE | ) | |
| HARFORD COUNTY, INC., LYNN | ) | |
| TILTON, ARK II CLO 2001-1 LIMITED, | ) | |
| ARK INVESTMENT PARTNERS II, L.P., | ) | |
| PATRIARCH PARTNERS LLC, and | ) | |
| PATRIARCH PARTNERS III, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

-----------------------------------------------------------------

## MEMORANDUM DECISION AND ORDER RESOLVING
## PLAINTIFF'S MOTION IN LIMINE

**A P P E A R A N C E S :**

**RAISNER ROUPINIAN LLP**
*Counsel for Shameeka Ien, on behalf of herself and all others similarly situated*
270 Madison Avenue
Suite 1801

New York, NY 10016
By:     Rene S. Roupinian, Esq.
        Jack A. Raisner, Esq.

**PROSKAUER ROSE LLP**
*Counsel for Defendants Lynn Tilton, Ark II CLO 2001-1 Limited, Ark Investment Partners II,*
*L.P., Patriarch Partners, LLC, and Patriarch Partners III, LLC*
650 Poydras Street
Suite 1800
New Orleans, LA 70130
By:     Nicole A. Eichberger, Esq. .

and

Eleven Times Square
New York, NY 10036
By:     Kathleen M. McKenna, Esq.

**LAMONICA HERBST & MANISCALCO, LLP**
*Counsel for Salvatore LaMonica, te Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, NY 11793
By:     Holly R. Holecek, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE:**

In 2016, a network of paratransit and medical transit businesses commonly referred to as

TransCare abruptly failed and commenced the above-captioned Chapter 7 bankruptcy proceedings.

As a result, more than 1000 employees were terminated with essentially no notice.

A host of litigation ensued, including the adversary proceeding now before the Court, in

which Shameeka Ien ("**Ms**. **Ien**" or "**Plaintiff**"), a former employee of one of the debtors acting

on behalf of similarly situated individuals, asserts that the abrupt termination of Ms. Ien and other

employees violated federal and state laws that (subject to certain exceptions) protect employees

from being terminated with insufficient notice.  Ms. Ien's lawsuit names both debtor and non-

debtor defendants.  Following threshold motion practice and discovery, this Court entered partial

summary judgment concerning the state law claims in favor of plaintiffs and against defendant

2

Lynn Tilton ("Ms. **Tilton**"), who owned and controlled all debtors in these jointly administered bankruptcy proceedings, and who also controlled many or all of the non-debtor entity defendants. Claims against some other defendants have been dismissed. The case is essentially ready for trial as against the remaining non-debtor entity defendants, while claims against debtor defendants have been provisionally settled.

Ms. Ien moves *in limine* [the "**Motion**," ECF No. 191], seeking an order deeming non-debtor entity defendants to be bound under the doctrine of non-mutual offensive collateral estoppel by "the entirety" of the factual findings set forth in a prior 100-page decision of then-Judge Stuart M. Bernstein of this Court in a separate case arising from largely the same factual backdrop.

The earlier case from which Ms. Ien proposes to import binding determinations was an adversary proceeding commenced by the Chapter 7 Trustee against Ms. Tilton and various entities she controlled, asserting claims for breach of fiduciary duties by Ms. Tilton and seeking other relief against other entity defendants. After a multi-day bench trial in that case, Judge Bernstein issued his ruling, which the District Court has since adopted with minor modifications.

TransCare's failure also led to labor-law claims before the National Labor Relations Board ("**NLRB**"), which Plaintiff's initial motion papers did not acknowledge, and which were tried before an administrative law judge ("**ALJ**") who ruled in defendants' favor. The NLRB concluded that two debtor entities called "Transcendence Transit," which Ms. Tilton unsuccessfully attempted to launch to carry on profitable portions of TransCare's business, and two Tilton-controlled entities that were also defendants in the Trustee's action, were neither "single" nor "joint" employers under federal labor laws. When confronted with their failure to acknowledge the seemingly inconsistent outcome of the NLRB proceedings, Ms. Ien acknowledged in reply that any inconsistent findings by the NLRB would need to be taken into

3

account, but continued to contend that an unspecified subset of Judge Bernstein's findings binds the non-debtor entity defendants here.

For reasons set forth below, the Court **denies** the Motion.

First, non-mutual offensive collateral estoppel can be applied only as to defendants that have litigated an issue and lost to another plaintiff in a prior action, and then only if additional requirements are met. Here, Ms. Ien seeks to bind non-debtor entity defendants to findings that were issued in a prior case that they did not in fact lose. Those defendants, like many other parties that played a role in the TransCare saga, were fully owned and controlled by Ms. Tilton, but that alone does not justify deeming the specific entities at issue here to be bound by prior rulings against Ms. Tilton and other of her entities.

Even if that were not so, relevant case law instructs that non-mutual offensive collateral estoppel is to be applied only if each of four requirements is met, and, even then, is to be applied only if doing so would be "fair" in the circumstances. The Court is not satisfied that all four required elements are met here. In particular, the sheer volume of Judge Bernstein's findings makes it impossible to identify which of those findings was "necessary" to the case's ultimate outcome, a reality that is compounded by contradictory NLRB findings that, as discussed below, render some of Judge Bernstein's findings not an appropriate basis for estoppel. It also is unclear whether the remaining non-debtor entity defendants here had a full and fair opportunity to contest the issues that led to Judge Bernstein's prior rulings; defendant Ark Investment Partners II, L.P. was not even a defendant in the prior action, and the other three were not defendants on all claims, and prevailed on all claims against them.

Finally, even if the four required elements were satisfied, applying non-mutual offensive collateral estoppel here would not be fair (as that term is used in the applicable legal standard).

4

First, the existence of inconsistent results from prior proceedings strongly indicates that applying non-mutual offensive collateral estoppel would be unfair, and the NLRB, following an administrative trial covering many of the same underlying events, reached conclusions that are inconsistent or at least in tension with many of Judge Bernstein's findings. The NLRB considered whether two Tilton-controlled entities – Patriarch Partners, LLC and a related company – were responsible for employment decisions of two Transcendence Transit entities. Finding that the Patriarch Partners entities before it had a limited to non-existent operational role at Tilton "portfolio" companies such as the Transcendence Transit entities, the NLRB concluded that the two Patriarch Partners entities in question were not "single" or "joint" employers with the Transcendence Transit entities. It seems likely that the NLRB would have reached the same conclusion about the TransCare entities.

The Court also is not persuaded that granting Ms. Ien's motion will advance another important consideration of the fairness inquiry, namely, efficiency. Ms. Ien's claims here require parsing complex corporate relationships and evaluating the potential liability of individual specific defendant entities. By contrast, Judge Bernstein's prior findings centered largely on Ms. Tilton's conduct, directly or indirectly, without necessarily focusing on the culpability of any particular Tilton-owned entity. Attempting to apply Judge Bernstein's findings here, while properly parsing and assessing the impact of the NLRB's inconsistent findings, thus would be a laborious and contentious process that may well prove less efficient than directly trying the case.

Thus, the Court concludes that it would be improper and unfair to apply non-mutual offensive collateral estoppel here.

## **BACKGROUND**

5

As noted, Ms. Ien brought this class action against debtor defendants TransCare Corporation ("**TransCare**") and its wholly-owned subsidiary debtors (collectively the "**Debtor Defendants**"), and against non-debtors Patriarch Partners, LLC and its subsidiaries and/or affiliates (respectively "**Patriarch Partners**" and the "**Non-Debtor Entity Defendants**"), as well as against Ms. Tilton, TransCare's principal (together with the Non-Debtor Entity Defendants, the "**Non-Debtor Defendants**").    The action's claims arise under the Worker Adjustment and Retraining Notification Act (the "**WARN Act**"), 29 U.S.C. § 2101 *et seq.*, the New York Worker Adjustment and Retraining Notification Act (the "**NY WARN Act**"), New York Labor Law § 860 *et seq.* (together, the "**WARN Acts**"), and the state wage payment laws of New York, Maryland, and Pennsylvania (the "**State Wage Payment Law Claims**").

### A.  TransCare's Bankruptcy

On February 24, 2016 (the "**Petition Date**"), faced with a loss of financing and an inability to meet payroll, TransCare Corporation and ten related entities filed voluntary Chapter 7 petitions in this Court.  [BK ECF No. 1].[1]  The Court appointed Salvatore LaMonica as Chapter 7 Trustee (the "**Trustee**").  [BK ECF 2/25/16 unnumbered entry].  The Court approved the Trustee's motion for joint administration, following a showing that TransCare either directly or indirectly owned 100 percent of the other debtors, and that the debtors operated as an integrated entity.  [BK ECF Nos. 6, 17 (March 1, 2016)].  As the Court later determined in a related action, soon before the TransCare filing, secured lenders had attempted to foreclose on certain commonly-owned businesses that provided paratransit and ambulance services, intending to begin to operate those businesses under a new corporate name ("**Transcendence**").  [Bankr. S.D.N.Y. 18-1021 ECF No. 138 at 21–22].  That effort failed and the newly formed Transcendence entities filed for bankruptcy

---

[1] Citations to "BK ECF No. __" refer to docket entries in Bankruptcy Case No. 16-10407.

soon after February 24. [*Id.* at 31–32]. Many TransCare employees were laid off on February 24, 2016, and employees who were briefly intended to be employed by Transcendence were laid off soon thereafter when Transcendence proved unable to commence operations. [*Id.* at 32–33].

A variety of litigation ensued, briefly described in this opinion's introduction and detailed below.

**B. Litigation Following TransCare's Collapse**

**1. The Trustee's Adversary Proceeding and District Court Proceedings**

On February 22, 2018, the Trustee commenced an adversary proceeding (the "**Trustee's Adversary Proceeding**") in this Court on behalf of the estate against Ms. Tilton, Patriarch Partners, Transcendence, and other Tilton-controlled entities. [BK ECF No. 573; the Trustee's Adversary Proceeding was assigned docket number 18-1021 ("Trustee AP Dkt.")].[2] The Trustee asserted the following claims for relief: (1) against Ms. Tilton for breach of the fiduciary duties of loyalty and good faith; (2) against all entity defendants (but not Ms. Tilton individually) for aiding and abetting breach of the fiduciary duty of loyalty; (3) equitable subordination "of all claims asserted by Patriarch" (against Patriarch Partners Agency Services, LLC; Ark II CLO 2001-1, Limited; Patriarch Partners Management Group, LLC; and Patriarch Partners, LLC); (4) "recharacterization of all claims asserted by Patriarch" in the bankruptcy case (against Patriarch Partners Agency Services, LLC and Ark II CLO 2001-1, Limited); (5) objections to claims, liens and security interests by various Patriarch Partners entities and affiliates; (6) "lender liability, common law breach of fiduciary duty, and common law assumption of control" (against the entity

---

[2] The defendants were: Ms. Tilton; Patriarch Partners Agency Services, LLC; Patriarch Partners, LLC; Patriarch Partners Management Group, LLC; Ark II CLO 2001-1, Limited; ARK Investment Partners II, L.P.; LD Investments, LLC; Patriarch Partners II, LLC; Patriarch Partners III, LLC; Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; Patriarch Partners XV, LLC; Transcendence Transit, Inc.; and Transcendence Transit II, Inc.

defendants); (7) actual fraudulent transfer (against all defendants); (8) recovery of avoided transfers (against all defendants); and (9) a finding that all defendants violated the automatic stay. [Trustee AP Dkt. No. 1].

After the Court granted an initial motion to dismiss certain claims but granted leave to amend [Trustee AP Dkt. No. 40], the Court granted in part and denied in part a motion to dismiss a subsequent amended complaint. [Trustee AP Dkt. No. 78 (dismissing Count VI of the amended complaint, which alleged claims against "Patriarch" on the theory that entity defendants owed and breached fiduciary duties to TransCare)]. A subsequent motion for partial summary judgment were adjourned *sine die*. [Trustee AP Dkt. No. 108].

The Court conducted a multi-day bench trial and, after post-trial submissions, entered post-trial findings of fact and conclusions of law on July 6, 2020, styled as proposed findings and conclusions that were subject to review by the District Court [the "**Findings**," Trustee AP Dkt. No. 138].

As to the merits of the breach of fiduciary duty claim against Ms. Tilton, Judge Bernstein made voluminous, detailed findings and legal conclusions not fully set forth herein, most centrally as follows. As the Trustee contended, Ms. Tilton breached her fiduciary duties of loyalty and good faith by failing to maximize the value of TransCare when she decided to sell the company, and by formulating and executing a so-called "Tilton Plan" to restructure the business's affairs through a foreclosure by secured lenders she controlled of certain assets to be transferred to Transcendence (which Ms. Tilton also controlled). [*Id.* at 41]. Ms. Tilton, as TransCare's sole director, owed fiduciary duties of loyalty as well as the duty of care to TransCare and its shareholders. [*Id.*]. A director who stands on both sides of a transaction has the burden of establishing the transaction's

entire fairness sufficiently to withstand careful court scrutiny, as opposed to the more lenient business judgment standard. [*Id.* at 42].

The parties agreed that the entire fairness standard governed the execution of the Tilton Plan, and Judge Bernstein determined that the business judgment standard applied to conduct that had occurred earlier, before Ms. Tilton's self-interested transactions. [*Id.* at 42–43]. Applying that more lenient standard, Judge Bernstein determined that the Trustee failed to overcome the business judgment rule and prove that Ms. Tilton failed to maximize the value of TransCare during the period from December 2015 (when Ms. Tilton determined TransCare should be sold) through the formulation of the Tilton Plan. [*Id.* at 43–44].

Conversely, the Court found, "[t]here was nothing fair about the process through which Tilton effectuated the part of the Tilton Plan that involved the strict foreclosure and the sale to Transcendence." [*Id.* at 48–50]. Given the tainted process and absence of an independent analysis of the Tilton Plan, Ms. Tilton did not carry her burden of showing the fairness of the $10 million asset sale price that was central to the transaction she directed. [*Id.* at 51–53]. Ms. Tilton also made numerous errors in calculating the values of Transcendence's assets. [*Id.* at 53–54]. Because she failed to sustain her burden of proving the entire fairness of the Tilton Plan including the strict foreclosure and sale to Transcendence, the Court concluded that Ms. Tilton breached her fiduciary duties of loyalty and good faith owed to TransCare. [*Id.* at 54].

The Findings recommended entry of judgment against Ms. Tilton in the base amount of $41.8 million. [Trustee AP Dkt. No. 138 at 1]. Judgment against certain other defendants in the amount of $45,225,523.29 (which included $6,025,523.29 in pre-judgment interest), plus post-judgment interest, was entered on July 15, 2020, in favor of the Trustee and against defendants Patriarch Partners Agency Services, LLC; Transcendence Transit, Inc.; and Trancendence Transit

II, Inc., jointly and severally.  [Trustee AP Dkt. No. 141].  The judgment also disallowed a claim that had been filed by Patriarch Partners Agency Services, LLC ("**PPAS**"), and avoided certain security interests and liens of PPAS.  [*Id.* at ¶¶ 2, 3].  This Court also awarded judgment in favor of the Trustee against Patriarch Partners Agency Services, LLC and the two Transcendence entities on the Trustee's claim seeking avoidance of the transfers.  [Trustee AP Dkt. Nos. 138 (Findings) at 2, 141 ¶ 1].  Judge Bernstein also concluded that "the lien granted to the insider must be avoided and preserved for the benefit of the Estate."  [Trustee AP Dkt. No. 138 at 2].

However, the judgment directed that "Plaintiff shall recover nothing from Defendants Patriarch Partners, LLC, Patriarch Partners Management Group, LLC and Ark II CLO 2001-1 Limited," and allowed as unsecured claims the claims that had been filed by Defendants Patriarch Partners, LLC, Patriarch Partners Management Group, LLC.  [Trustee AP Dkt. No. 141 ¶ 4].

Patriarch Partners and Transcendence appealed the final judgment entered against them on the case's core claims [Trustee AP Dkt. No. 146], and Ms. Tilton objected to the proposed findings and conclusions as to the non-core claim.  [S.D.N.Y. 20-cv-06274 (LAK), ECF No. 16 at 3; also docketed at Trustee AP Dkt. No. 167 at 3 ("**D. Ct. Opinion**") (summarizing procedural history)].

The District Court, in a decision dated September 29, 2021, affirmed and adopted Judge Bernstein's assessment of the fairness, or lack thereof, of the Tilton Plan.  [D. Ct. Opinion at 21–22].  The District Court noted, *inter alia*, that Ms. Tilton stood on every side and controlled every aspect of the transaction, she presented no evidence of any true arm's-length bargaining designed to protect the interests of the company and/or the minority shareholders, and she did not retain a financial advisor to seek out third parties that might have considered purchasing TransCare's assets.  [*Id.* at 22–23].  The District Court largely agreed with the Judge Bernstein's damages computation, but modified the award to $38.2 million.  [*Id.* at 29–37].

### 2.    NLRB Proceedings

In addition to the litigation in this Court and the District Court, the NLRB considered a charge brought by a union that represented TransCare employees who were told they would be employed by Transcendence but then were almost immediately laid off, in asserted violation of the National Labor Relations Act.  [Bankr. S.D.N.Y. 16-1033 ("ECF") No. 193-3 at 1 (copy of NLRB post-hearing decision on charge)].  The respondents before the NLRB were Transcendence Transit II, Inc.; Transcendence Transit, Inc.; Patriarch Partners, LLC; and Patriarch Partners Agency Services, LLC.  [*Id.*]  The complaint alleged that the respondent entities "constitute a single employer and/or have been joint employers of the employees of Respondent Transcendence II."  [*Id.* at 2].  Following a trial before an ALJ, the NLRB made extensive factual findings on matters also addressed by Judge Bernstein's findings, including Ms. Tilton's ownership and management role in Patriarch Partners-related entities and portfolio companies including TransCare and Transcendence [*id.* at 2–4]; the financing of TransCare, its operations, and events leading to its closing [*id.* at 3–5]; the termination of many TransCare workers [*id.* at 7]; and TransCare's bankruptcy [*id.* at 7–8].  The NLRB concluded that Transcendence II is "not a successor to TransCare NY" [*id.* at 8–10]; that "Patriarch, PPAS, Transcendence, and Transcendence II are not joint employers" [*id.* at 10–13]; and that "Patriarch, PPAS, Transcendence, and Transcendence II is not a single employer" [*id.* at 13–14].  The NLRB cited factors including that there was no interrelation of operations or common management or centralized control of labor relations as between Patriarch Partners and PPAS, on the one hand, and the Transcendence entities on the other [*id.* at 13–14].  While the NLRB did not have cause to assess whether there was interrelation of operations between Patriarch Partners entities and TransCare entities, the NLRB's reasoning (that Patriarch Partners entities provided legal and

financial services in support of Ms. Tilton's portfolio entities, but did not have an operational role

at least at the Transcendence portfolio company) suggests that, had the issue been before it, the

NLRB may well have reached a similar conclusion as to the TransCare entities, which, like

Transcendence, were portfolio companies owned directly or indirectly by Ms. Tilton.

## C. Ms. Ien's WARN Act Proceeding

### 1. Claims Raised and Class Certification

As noted, the matter giving rise to the motion now before the Court is the WARN ACT

Proceeding, which Ms. Ien commenced in March 2016. [BK ECF No. 21; ECF No. 1]. Ms. Ien

brought the adversary proceeding on behalf of herself and similarly situated former employees of

Debtors. [ECF No. 1 at 1]. She sued Debtors and several non-debtor defendants,[3] along with Ms.

Tilton (collectively, "**Defendants**"). [*Id.* at 1–2].

Ms. Ien alleged that she and the putative class members were peremptorily terminated and

lost their benefits, without prior warning, starting on or about the Petition Date. [*Id.* at 2]. She

asserted a cause of action under the WARN Act on behalf of those terminated without cause on or

about the Petition Date, and those terminated as a reasonably foreseeable consequence of the mass

layoffs and/or facility closings ordered by Debtors (the "**WARN Class**"). [*Id.* at 9–11]. Ms. Ien

also asserted a cause of action for violation of the NY WARN Act on behalf of herself and a class

of similarly situated persons who worked for a Debtor-controlled entity in New York (the "**NY**

**WARN Subclass**"). [*Id.* at 12–14]. She raised these claims against all of the Defendants except

for Ms. Tilton. [*Id.* at 15–17]. She also brought State Wage Payment Law Claims under the laws

---

[3] The named defendants were: TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc. and TransCare Harford County, Inc., ARK CLO 2001-1 Limited, ARK Investment Partners II, L.P., Patriarch Partners LLC, and Patriarch Partners III, LLC.

of New York, Pennsylvania, and Maryland. [*Id.* at 17–19]. She asked for, *inter alia*, class certification, designation as class representative, damages, treatment of all damage claims as first priority administrative expenses under 11 U.S.C. § 503 or alternatively priority status under 11 U.S.C. § 507(a)(4) or (5), and attorney's fees. [*Id.* at 19–20].

The Non-Debtor Defendants, including Ms. Tilton, and the Trustee, acting on Debtors' behalf, timely answered the complaint. [ECF Nos. 18, 24].

Ms. Ien moved for class certification of the WARN Class and the NY WARN Subclass. [ECF Nos. 36, 37]. She also sought certification of a third class consisting of all persons employed by Debtors and terminated on or about the Petition Date who were not paid the wage amounts they were entitled to under the laws of the state in which they worked (the "**Wage Class**"). [ECF No. 37 at 4]. The motion was unopposed. In October 2016, the Court certified the WARN Class, the New York WARN Subclass, and the Wage Class (collectively, the "**Class Members**") and certified Ms. Ien as the class representative for each class. [ECF No. 46 at 1–2].

In May 2019, Ms. Ien, as class representative, moved for partial summary judgment, seeking to preclude the Defendants from asserting defenses based on the WARN Act and NY WARN Act notice requirements. [ECF No. 100]. These notice defenses focused on an email sent on February 24, 2016 to most of the Class Members and an email sent to the remaining Class Members on February 26, 2016, both of which informed the Class Members that their businesses were ceasing operations, but neither of which expressly informed them of their termination. [ECF No. 123 at 11–13]. Ms. Ien argued that none of the Class Members, on either date, received written WARN notice, required under both the federal and state statute, because the notices did not advise the employees of their termination and the notices did not adequately explain why such notice

13

could not have been given. [*Id.* at 10–24]. The Non-Debtor Defendants cross-moved for summary judgment shortly thereafter. [ECF Nos. 108, 109].

In September 2019, the Court granted the Non-Debtor Defendants' cross-motion in part, dismissing all claims against defendant Ark CLO 2001-1 Limited from the action, while reserving judgment as to the remaining Non-Debtor Defendants. [ECF No. 132]. The Court subsequently granted Ms. Ien leave to amend the complaint. [ECF Nos. 134-1 (Amended Complaint), 147]. The amended complaint added Non-Debtor Defendant Ark II CLO 2001-1 Limited ("**ARK II**") to the case. [ECF No. 134-1]. In January 2020, the Court granted Ms. Ien's motion in part as to the February 24 notice, and denied it in part as to the February 26 notice. [ECF No. 154]. Accordingly, the Court struck Debtors' and Non-Debtor Defendants' affirmative defenses to the extent that they pertained to the February 24 notice. [*Id.* at 16].

In May 2020, the Court granted in part and denied in part the Non-Debtor Defendants' motion for summary judgment, dismissing the WARN Act Claims against Patriarch III, Ark II, and AIP II. [ECF No. 157 at 31–32]. The Court also granted the Class Representative partial summary judgment as to Ms. Tilton on the New York wage claim, but denied it as to defendants Patriarch Partners, Patriarch Partners III, Ark II, and Ark Investment Partners II, L.P. [*Id.* at 41–43]. It issued the same ruling as to the Maryland and Pennsylvania wage claims. [*Id.* at 43–45].

Thus, the remaining unresolved claims are those against the Non-Debtor Entity Defendants: Patriarch Partners, Patriarch Partners III, LLC (hereinafter "**Patriarch III**"), Ark II, and Ark Investment Partners II, L.P. (hereinafter "**AIP**").

### 2. Ms. Ien's WARN Act Claims Against the Estate

Separately, Ms. Ien pursued a WARN Act claim against the estate, which has been provisionally settled as follows. In satisfaction of all their claims against the Estate, the Class shall

have an Allowed Claim against the Debtors' estates with priority set forth in Section 507(a)(4) of the Bankruptcy Code. [ECF No. 172 at 5]. In the event that the Class fully prevails in establishing the WARN and State Wage Payment Law Claims against the Non-Debtor Entity Defendants, the amount of the Allowed Claim shall equal the total amount of the Class WARN and wage claims established at trial against the Non-Debtor Entity Defendants; however, to the extent that the Class does not fully establish its claims against the Non-Debtor Entity Defendants, the Parties are to confer within 30 days regarding the appropriate amount of an Allowed Claim. [*Id.*]

At the hearing on the settlement approval motion concerning Ms. Ien's claims against the Debtor Defendants, class counsel and counsel for the Non-Debtor Defendants summarized the remaining matters scheduled for trial: (1) as to the Non-Debtor Defendants, liability under the federal and New York WARN Acts, and liability under the New York and Maryland wage statutes; (2) as to Ms. Tilton, the quantum of damages under the New York, Maryland, and Pennsylvania wage statutes, with liability having been established against her at summary judgment; and (3) in general, the extent to which there is any joint or single employer liability under the WARN Act or the State Wage Payment Law Claims, which could lead to issues of contribution between the Non-Debtor Entity Defendants. [ECF No. 178 (hearing transcript) at 16–18, 28–30]. The Court preliminarily and, later, finally approved the Settlement Agreement between the Class and the Debtor Defendants. [ECF Nos. 177, 188].

### 3. The Motion *in Limine*

In support of her motion *in limine*, Ms. Ien contends as follows.[4] [ECF No. 191]. She seeks to establish at trial, and the Court found following bench trial in the Trustee's Adversary

---

[4] Both the motion *in limine* and the opposition were filed before the District Court issued its September 29, 2021 decision. Ms. Ien filed her reply after that decision.

Proceeding, that Ms. Tilton sought to split TransCare's employees and fire many of them while retaining some for her own purposes in launching Transcendence. [*Id.* at 1]. Ms. Ien characterizes the two major issues for trial as being (1) whether Patriarch Partners is the employer of the Class Members within the meaning of the WARN Acts, and (2) whether Patriarch Partners can avail itself of the WARN Acts' unforeseeable business circumstances defenses. [*Id.* at 3]. According to Plaintiff, both of these issues turn on Ms. Tilton's actions, which were already the subject of the trial in the Trustee's Adversary Proceeding; in Plaintiff's view, the level of control Ms. Tilton was found to have exercised over TransCare through Patriarch Partners is more than enough to attach single-employer liability to Patriarch Partners. [*Id.*].

Ms. Ien also contends that the Findings conclusively establish that the termination of the February 26, 2016 layoff group of employees (*i.e.*, those initially informed they would be employed by a newly created Transcendence entity) was not caused by events outside of Patriarch Partners' control, but that Ms. Tilton caused them through her Patriarch Partners entities [*Id.*]. Further, Plaintiff suggests, if the Court rules that the Findings have preclusive effect here, no trial on the WARN Act Claims or the State Wage Payment Law Claims will be required, because (in Ms. Ien's view) the Court will be able to enter summary judgment as to merits issues and then hold a trial solely as to damages. [*Id.*].

Ms. Ien argues that she has met the test applicable to assertions of non-mutual offensive collateral estoppel. First, she contends that the issues in her case and in the Trustee's Adversary Proceeding are identical because: (a) the facts in both cases deal with the same past events; (b) to establish that Patriarch Partners is the employer of the WARN Act Class Members, Ms. Ien must show Patriarch Partners exerted *de facto* control over TransCare, which the Findings demonstrate; and (c) the facts establishing that Ms. Tilton breached her fiduciary duty to TransCare will also

establish that the WARN Act's unforeseeable business circumstances defense does not apply.  [*Id.* at 14–15].  Second, Ms. Ien contends that the issues were actually litigated and actually decided against Patriarch Partners and Ms. Tilton by Judge Bernstein's post-trial Findings.  [*Id.* at 15].  Third, Ms. Ien asserts that all defendants had a full and fair opportunity to litigate the issues through extensive proceedings that culminated in trial.  [*Id.*].  Fourth, and finally, the outcome in the trial actually hinged on the issues decided.  [*Id.* at 16].  Ms. Ien also contends that non-mutual offensive collateral estoppel can be fairly applied here, because both Ms. Tilton and Patriarch Partners had every incentive to litigate in the Trustee's Adversary Proceeding, there assertedly are no prior inconsistent judgments, and, since this action is taking place in the same court as the Trustee's Adversary Proceeding, there are no procedural opportunities here that were not present in the prior proceeding.  [*Id.* at 18].

### 4.  The Opposition and Reply

The Non-Debtor Defendants—again, consisting of the Non-Debtor Entity Defendants accompanied by Ms. Tilton—argue as follows.  [ECF No. 192].  Ms. Ien has not satisfied the four conditions necessary for the application of non-mutual offensive collateral estoppel.  [*Id.* at 20–28].  First, the issues tried in the Trustee's Adversary Proceeding are not identical to the issues here because Patriarch Partners was not a party to the breach of fiduciary duty claim against Ms. Tilton that led to the findings Ms. Ien seeks to import; the only claims against Patriarch Partners that Judge Bernstein tried were for equitable subordination and violation of the automatic stay, and the Court dismissed those claims.  [*Id.* at 21].  Moreover, the legal standards for those claims are so dissimilar that the Court's holdings that pertained to Patriarch Partners cannot be imported to this proceeding.  [*Id.* at 21–22].  Further, in assessing whether Ms. Tilton was liable for breach of fiduciary duty, Judge Bernstein's Findings did not discuss a single one of the five factors that

courts consider in determining WARN Act liability.  [*Id.* at 22–24].  The Non-Debtor Defendants

further object, among other things, that Patriarch Partners did not have a full and fair opportunity

in the Trustee's Adversary Proceeding to litigate issues that pertain to Ms. Ien's claims, again

because Patriarch Partners was not a party to the Trustee's action other than as to unrelated claims

on which Judge Bernstein ruled for defendants.  [*Id.* at 26–27].  And as to the fourth element of

the applicable test, issues relevant to the WARN Act Claims and State Wage Payment Law Claims

were not litigated in the prior proceeding; thus, the resulting findings are not necessary to support

the judgment in the Trustee's Adversary Proceeding.  [*Id.* at 27–28].  The Non-Debtor Defendants

also argue that application of non-mutual offensive collateral estoppel would not be fair both

because the Findings were not final (an issue that they concede has been eliminated by the District

Court's adoption of Judge Bernstein's ruling [ECF No. 167 at 4]), and application of Judge

Bernstein's Findings here would not promote judicial efficiency.  [*Id.* at 30–32].

The Non-Debtor Defendants also object that Ms. Ien entirely failed to bring to the Court's

attention the NLRB's inconsistent judgment.  [*Id.* at 33–34].  As discussed, the NLRB concluded

that a subset of Tilton-controlled entities, namely Patriarch Partners and PPAS, were not a joint or

single employer along with the Transcendence entities, and found that the Patriarch Partners

entities at issue did not actively participate in operational or personnel decisions of the

Transcendence entities, which were Tilton "portfolio" companies.  [*Id.* at 16–18].

The Non-Debtor Defendants also argue that, contrary to Ms. Ien's contentions, there is no

basis to impute facts and liability found as to Ms. Tilton in the Trustee's Adversary Proceeding to

Patriarch Partners, which was not a named defendant in connection with the Trustee's breach of

fiduciary claims and so did not have a full and fair opportunity to litigate issues relevant to the

WARN Act Claims and State Wage Payment Law Claims.  [*Id.* at 25–28].

In her reply, Ms. Ien argues (as is conceded) that the Findings are now final, having been adopted by an Article III judge. Ms. Ien further argues that the dissimilarity of her claims to those of the Trustee is immaterial because all she seeks is to deem facts established for purposes of the trial of her claims. [ECF No. 193 at 5–6]. Further, Ms. Ien notes, the NLRB proceeding has no preclusive effect on her because she was not a party to that proceeding. [*Id.* at 12]. She acknowledges that the holding in the NLRB matter "represents an impediment to the application of collateral estoppel" as it relates to "the day-to-day involvement of Patriarch employees in running TransCare." [*Id.*]. Nevertheless, based on Judge Bernstein's findings, collateral estoppel remains viable because the NLRB's joint employer test materially differs from the WARN Act's test, in that the former focuses heavily on the day-to-day exercise of control over terms and conditions of employment. [*Id.* at 13]. Ms. Ien also argues that the NLRB decision erred by crediting testimony that conflicted with the testimony given at the bench trial in the Trustee's Adversary Proceeding. [*Id.* at 13].

## I. Discussion

### A. Jurisdiction

This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157, 1334, and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). The complaint asserts that this is a core proceeding over which the Court has jurisdiction. [ECF No. 1 ¶ 8]. The Non-Debtor Defendants' amended answer denies this contention [ECF No. 148 ¶ 8], but the Court does not understand those defendants to be challenging, at a minimum, the existence of "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). Neither party has asserted any jurisdictional impediment to this Court's consideration and resolution of the Motion.

19

## B. Legal Standard

Non-mutual offensive collateral estoppel is a "species" of collateral estoppel, also known as issue preclusion, that "'preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.'" *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 77 n.1 (2d Cir. 2019) (quoting *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)). To successfully invoke this doctrine, a plaintiff must satisfy four conditions: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding; and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *Id.* at 79–80.

As to factor (2), non-mutual offensive collateral estoppel can apply to the same issue of "fact or law" that a court litigated and resolved in a valid court determination essential to that first judgment. *Grosso v. AT&T Pension Benefits Plan*, No. 18 Civ. 6448 (LGS), 2019 WL 4805809, at *5 (S.D.N.Y. Sept. 30, 2019) (quoting *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019) (per curiam)). The doctrine extends to issues that do not constitute complete claims or causes of action. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014). Rather:

> [w]here, as here, the issue to which the plaintiff seeks to give preclusive effect concerns only the existence or non-existence of certain facts, and not to the legal significance of those facts, [it] need only deal with the same past events [as the previously-decided issue] to be considered identical. In such cases, the legal standards to be applied need not be identical.

*Bifolck*, 936 F.3d at 81 (internal citations, quotation marks, ellipsis, and parenthesis omitted).

In addition to the four-factor test described above, in an effort to "blunt the fear that non-mutual offensive collateral estoppel may be unfair," *id.* at 80, a court must ensure that the implementation of the doctrine is not unfair. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331

(1979).  One important criterion is that unfairness arises where the judgment that forms the basis

for the estoppel is inconsistent with one or more previous judgments in the defendant's favor.  *Id.*at

330; *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 600 n.2 (2d Cir. 2021).

In general, the Court has broad discretion in determining whether or not collateral estoppel

should be applied in a given case.  *See Bear Stearns Secs. Corp. v. 1109580 Ontario, Inc.*, 409

F.3d 87, 91 (2d Cir. 2005).  Assessment of the applicable four-part test is a question of law that is

subject to de novo review on appeal, while the Court's fairness assessment is an exercise of

discretion that, on appeal, is reviewed for abuse of discretion.  *See Bifolck*, 936 F.3d at 80.

**C.  Analysis**

Much of the parties' briefing focused on the applicable four-part test and the "fairness"

requirement, but the Court first considers a more fundamental question:  whether, as is required

for application of non-mutual offensive collateral estoppel, the defendants against whom Ms. Ien

invokes the doctrine in fact "previously litigated and lost to another plaintiff."  *Bifolck*, 936 F.3d

at 77 n.1; *Faulkner*, 409 F.3d at 37.

The remaining defendants that are the subject of the Motion are the Non-Debtor Entity

Defendants: Patriarch Partners; Patriarch Partners III; Ark II; and AIP.  *See supra* at 12–13; [ECF

192 at 1].  All except AIP were defendants in the Trustee's Adversary Proceeding, but Judge

Bernstein granted a motion to dismiss claims in Count VI of the amended complaint that

"Patriarch" owed and breached fiduciary duties to TransCare.  Thus, as to those claims, entities

that the decision referred to as "Patriarch" prevailed.  Further, following trial, the Court entered a

judgment that stated, "Plaintiff shall recover nothing from Defendants Patriarch Partners, LLC,

Patriarch Partners Management Group, LLC, and Ark II CLO 2001-1 Limited," while further

noting, "this Court dismissed Plaintiff's claims against Defendants Patriarch Partners, LLC and

Patriarch Partners Management Group, LLC, and allowed those entities' claims." [Trustee AP Dkt. No. 141 (Judgment) ¶ 4].[5]  Thus, of the four Non-Debtor Defendants at issue on this Motion, three actually prevailed in the Trustee's prior case before Judge Bernstein, and the fourth, AIP, was not a party to that action.

Responding to objections that it seeks to bind defendants who did not in fact "lose" during the trial or prior proceedings in the Trustee's Adversary Proceeding, Ms. Ien objects that, given Ms. Tilton's complete control of all of the involved entities, and given that all defendants in the Trustee's Adversary Proceeding were represented by the same legal team at trial, the remaining Non-Debtor Entity defendants are "privies" of Ms. Tilton and can fairly be bound by findings made in the course of ruling against her and other of her entities.  [*See* ECF Nos. 193 at 2, 8, 196 at 20–22 (Hearing on Motion)]  But this contention is not backed by law suggesting that non-mutual offensive collateral estoppel can be applied in comparable circumstances.  And there is no logical basis to do so here, because the focus of the prior trial before Judge Bernstein was on Ms. Tilton's breach of her fiduciary duties, and, to the extent the role of specific Tilton-controlled entities was considered, the result was a judgment in favor of the entities Ms. Ien seeks to estop coupled with a judgment against other entities that are not parties here — belying the idea that Judge Bernstein's Findings justify lumping all "Patriarch" entities together as equally culpable players in the conduct at issue.  Thus, although much of the factual backdrop detailed by Judge Bernstein's extensive Findings will also be relevant in Ms. Ien's action, those findings were not rendered against the entities that Ms. Ien seeks to bind here.

---

[5] The Court also entered judgment against entities that are not the subject of Ms. Ien's Motion (PPAS; Transcendence Transit, Inc.; and Transcendence Transit II, Inc.), and disallowed those entities' claims.  [*Id.*].

Thus, the Court concludes that the threshold requirement for application of non-mutual offensive collateral estoppel is not present here: the parties against whom Ms. Ien invokes the doctrine have not "previously litigated and lost to another plaintiff."

Even if this were not so, Ms. Ien has failed to establish that all the requirements of the applicable four-part test are met here.

Beginning with what the case law typically lists as the fourth requirement, whether the prior finding or ruling was "necessary" to the court's conclusion, here it is impossible to tell which findings, individually or in combination, were necessary to Judge Bernstein's conclusion or the outcome of the case before him. Ms. Ien's motion proposed binding the Non-Debtor Entity Defendants to the "entirety" of the factual findings in Judge Bernstein's 100-page decision, including 41 detailed findings that consume six single-spaced pages of Ms. Ien's initial memorandum of law. It is simply impossible to determine which of these findings were "necessary" to Judge Bernstein's ruling, especially because, under the applicable case law, an issue is "necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009); *Bifolck*, 936 F.3d at 82. In the Trustee's Adversary Proceeding, Judge Bernstein's ruling was based on the totality of a large and complex set of circumstances, culminating in critical part in the conclusion that Ms. Tilton breached fiduciary duties and entered into a self-interested transaction that did not meet the "entire fairness" test. Courts including the Second Circuit have recognized that the sheer volume of findings can make it impossible to identify any one finding or any particular mix of findings as "necessary" to the case's final outcome. *See, e.g.*, *Bifolck*, 936 F.3d at 83 (where plaintiff sought to import factual findings from a voluminous prior civil RICO action, the Second Circuit "agree[d] with the district court that it is virtually impossible to determine which, if any, factual findings were necessary to the finding of liability"). And, while

the Second Circuit in *Bifolck* went on to hold that a finding embedded in a remedial requirement at the conclusion of the prior action was a "necessary" ruling of that court, *id.*, here that is not an option, because Ms. Ien identifies no such discrete issue or finding.

Ms. Ien's difficulty in satisfying the "necessary" to the outcome requirement is compounded by the NLRB's decision, and by Ms. Ien's acknowledgment that an unspecified subset of facts addressed in both the NLRB's decision and Judge Bernstein's cannot appropriately be deemed binding by operation of collateral estoppel given the two tribunal's different conclusions. It would be exceedingly difficult to isolate the subset of Judge Bernstein's findings that are not contradicted or at least made nonbinding by the NLRB's own extensive findings leading to the agency's ruling in favor of the respondents. And even if such an exercise could be reliably completed, it would be impossible to say whether some or all of the remaining, uncontradicted findings were "necessary" (or sufficient) to the outcome of the Trustee's Adversary Proceeding.

Further undermining Ms. Ien's contention that Judge Bernstein's findings were "necessary" as to the case's "final outcome," *see Bobby*, 556 U.S. at 835, is the fact that Judge Bernstein's "outcome" was *in favor of* the four Non-Debtor Entity Defendants now before the Court. Although this consideration more directly speaks to the potential applicability at all of non-mutual offensive collateral estoppel, it also makes the necessity element all but impossible to deem satisfied here as to these defendants.

In addition, AIP was not even a defendant in the Trustee's Adversary Proceeding, and so cannot have had a "full and fair opportunity" to litigate the issues in that action. It also is questionable whether the three other Non-Debtor Entity Defendants here had such an opportunity because claims against them for breach of fiduciary duty were dismissed before trial. [Trustee Ap.

24

Dkt. No. 78]. Therefore, although they fully participated in the trial, they had no individualized reason to contest a substantial amount of the evidence on which Judge Bernstein later relied.

Although not warranting a ruling in her favor, the Court does agree with Ms. Ien that some subset of Judge Bernstein's findings constitute decisions of issues that are "identical" to fact questions also raised by Ms. Ien's lawsuit, notwithstanding Non-Debtor Defendants' objection that the prior case and the current case involve materially different causes of action. Judge Bernstein made detailed factual findings on topics relevant to Ms. Ien's claims, including at a minimum the nature and operations of Ms. Tilton's businesses and the failure of TransCare. As noted, isolated factual findings can satisfy the "identicality" requirement of the non-mutual offensive collateral estoppel doctrine, because the doctrine is concerned "not with 'claims or . . . causes of action as a whole, but with issues – 'single, certain and material points arising out of the allegations and contentions of the parties.'" *Bifolck*, 936 F.3d at 81 (quoting *Matusick.*, 757 F.3d at 48). These can include simply "'the existence or non-existence of certain facts'" or "'the same past events.'" *Bifolck*, 936 F.3d 81 (quoting *Matusick*, 757 F.3d at 48)). The Non-Debtor Defendants rightly observe that Judge Bernstein's findings arise from his consideration of different causes of action with different elements, and it may be that some findings were interrelated with legal conclusions not at issue here, but "the identicality standard does not require either that the two cases have the same scope or that they have the same causes of action." *Bifolck*, 936 F.3d at 82 (citing *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013)).

Finally, even if the absence of a prior judgment against the Non-Debtor Entity Defendants were not dispositive and the four required elements were satisfied, the Court cannot conclude that applying the doctrine here would be "fair" as that term is used in the applicable legal standard, and as is required by *Bifolck* and cases going back to *Parklane Hosiery*, 439 U.S. at 331. This inquiry

"reflects judicial wariness of nonmutual offensive collateral estoppel." *Bifolck*, 936 F.3d at 84 (citing *Parklane Hosiery* and *Jack Faucett Assocs. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984) (offensive collateral estoppel is "detailed, difficult, and potentially dangerous")).

First, inconsistent results in prior proceedings can mean that applying non-mutual offensive collateral estoppel would be unfair, *see Homaidan*, 3 F.4th at 600 n.2 ("[u]nfairness arises 'if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more prior judgments in favor of the defendant'") (citing *Parklane Hosiery*). As noted, the NLRB, following an administrative trial covering essentially the same underlying events, reached conclusions that are inconsistent or at least in tension with many of Judge Bernstein's findings. The NLRB considered whether two Tilton-controlled entities – one of the Non-Debtor Entity Defendants here, Patriarch Partners, LLC, and a related company – were "single" or "joint" employers of individuals who ostensibly worked for two Transcendence Transit entities. Focusing on what it found to be the limited to non-existent operational role that Patriarch Partners entities had at Tilton "portfolio" companies such as the Transcendence Transit businesses, the NLRB concluded that these entities were not "single" or "joint" employers. [NLRB Decision (ECF No. 193-3) at 10–14]. Based on its assessment of the role of the Patriarch Partners entities, it seems likely that the NLRB would have reached the same conclusion as to Patriarch Partners' relationship with other TransCare entities. Thus, the Court concludes it would not be "fair" to bind the Non-Debtor Entity Defendants here by findings of Judge Bernstein that are contradicted or called into question by the NLRB's findings and conclusions. Indeed, even Ms. Ien's Reply acknowledges that, as to "some critical points regarding Judge Bernstein's extensive findings on the day-to-day involvement of Patriarch employees in running TransCare," Plaintiff "acknowledges that this

represents an impediment to the application of collateral estoppel on those specific findings." [Reply at 12].[6]

Another frequent consideration of the fairness inquiry, whether applying collateral estoppel would result in efficiency gains, also does not favor applying collateral estoppel here given the complex claims and corporate relationships involved, and the difficulty of parsing and determining the potential preclusive effect of each of Judge Bernstein's prior findings while taking the NLRB's findings into account. The Court acknowledges Ms. Ien's hope to streamline or even avoid trial by importing extensive factual findings that Judge Bernstein has made, but, even setting aside the legal impediments described above, the Court is not confident that the case will be more efficiently resolved through application of offensive collateral estoppel. The likelihood of fact-by-fact legal wrangling about what fact-findings could be imported and what could not, and for what purpose, and subject to what if any rebuttal evidence or justifying explanations, all strongly suggests that conducting a trial in which each side presents its complete factual narrative will be the most efficient way to resolve Ms. Ien's claims against the Non-Debtor Entity Defendants. *Cf. Jack Faucett Assocs.*, 744 F.2d at 124 (applying offensive collateral estoppel can be "detailed" and "difficult"). As trial approaches, the Court will direct the parties to explore time-saving stipulations of fact or other efficiency-promoting measures, but it is not confident that granting Ms. Ien's Motion will serve the interests of efficiency.

---

[6] Certain other of Ms. Ien's responses to the NLRB's holding are unpersuasive. Ms. Ien's disagreement with the NLRB's findings and her objection that the NLRB's decision does not bind her do not diminish the inconsistency of the NLRB's and Judge Bernstein's findings, and it is that inconsistency that undermines the potential applicability of non-mutual offensive collateral estoppel.

## CONCLUSION

For the foregoing reasons, the Motion is denied.

**IT IS SO ORDERED.**


Dated: New York, New York
      February 17, 2022

                               *s/ David S. Jones*
                             Honorable David S. Jones
                             United States Bankruptcy Judge